# 25-2539

## United States Court of Appeals for the Second Circuit

SHERRY ANN MURRAY,

*Plaintiff-Appellant,*

-against-

NEWREZ LLC DBA Shellpoint Mortgage Servicing,
PHH MORTGAGE CORPORATION DBA PHH Mortgage Services,

*Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

# APPELLANT'S APPENDIX
# VOLUME I OF III (PAGES A1-A185)

PETROFF AMSHEN LLP
*Attorneys for Plaintiff-Appellant*
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
(718) 336-4200
*jtierney@petroffamshen.com*

Dick Bailey Service INC
APPELLATE SERVICES
www.dickbailey.com

# TABLE OF CONTENTS

*Page(s)*

U.S. District Court Docket Sheet. .......... A1-A6

Complaint, dated September 4, 2024 .......... A7-A23

Civil Cover Sheet, dated September 4, 2024 .......... A24-A25

Proposed Summons .......... A26-A27

Exhibit 1 – Mortgage, dated February 9, 2005 .......... A28-A42

Exhibit 2 – Loan Modification Agreement, dated October 1, 2011 .......... A43-A55

Exhibit 3 – Qualified Written Request to Newrez, dated May 6, 2024 .......... A56-A59

Exhibit 4 – Qualified Written Request to PHH, dated May 6, 2024 .......... A60-A63

Exhibit 5 – Second Qualified Written Request to Newrez, dated June 18, 2024 .......... A64-A66

Exhibit 6 – Second Qualified Written Request to PHH, dated June 18, 2024 .......... A67-A69

First Amended Complaint, dated November 22, 2024 .......... A70-A92

Exhibit 1 – Mortgage, dated February 9, 2005 (reproduced at A28-A42)

Exhibit 2 – Loan Modification Agreement, dated October 1, 2011 (reproduced at A43-A55)

Exhibit 3 – Qualified Written Request to Newrez, dated May 6, 2024 (reproduced at A56-A59)

*Table of Contents (cont'd)* *Page(s)*

Exhibit 4 – Qualified Written Request to PHH, dated May 6, 2024 (reproduced at A60-A63)

Exhibit 5 – Second Qualified Written Request to Newrez, dated June 18, 2024 (reproduced at A64-A66)

Exhibit 6 – Second Qualified Written Request to PHH, dated June 18, 2024 (reproduced at A67-A69)

Defendants' Notice of Motion to Dismiss, dated December 20, 2024 .......... A93-A94

Declaration of Sherry Xia in support of Defendants' Motion to Dismiss, dated December 20, 2024 .......... A95-A97

Exhibit A – Foreclosure Action Summons and Complaint for Index No. 6670/2010, dated March 15, 2010 .......... A98-A112

Exhibit B – Foreclosure Action Notice of Appearance, dated May 23, 2021 .......... A113-A114

Exhibit C – Web Civil Supreme – Foreclosure Appearance Detail for Index No. 6670/2010 .......... A115

Exhibit D – Stipulation Discontinuing Foreclosure Action, Index No. 6670/2010, dated July 29, 2011 .......... A116-A121

Memorandum of Law Supporting Defendants' Motion to Dismiss, dated December 20, 2024 .......... A122-A139

Letter to Defendants, dated January 13, 2025 .......... A140

*Table of Contents (cont'd)* *Page(s)*

Cover Letter to Court, dated January 13, 2025 .................................................. A141

Certificate of Service, dated January 13, 2025 .................................................. A142

Declaration of Steven Amshen in Opposition to Defendants' Motion to Dismiss, dated January 13, 2025 ........................... A143-A144

Exhibit A – Civil Docket for Case #: 1:24-cv-06160-ARR-TAM ........................................................................ A145-A147

Exhibit B – Complaint, dated September 4, 2024, with Supporting Documents (reproduced at A7-A69)

Exhibit C – Letter Requesting Pre-Motion Conference to File Rule 12(b)(1) and (6) Dismissal Motion, dated October 31, 2024, with Supporting Exhibits (partially reproduced A98-A121) ....................................... A148-A150

Exhibit D – Plaintiff's Response to Defendants' Letter Requesting Pre-Motion Conference, dated November 7, 2024 ...................................................................... A151-A152

Exhibit E – First Amended Complaint, dated November 22, 2024, with Supporting Exhibits (reproduced at A28-A92)

Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated January 13, 2025 ............................................... A153-A185

Certificate of Service, dated January 13, 2025 .................................................. A186

Reply in Further Support of Defendants' Motion to Dismiss, dated January 28, 2025 ................................................................ A187-A196

*Table of Contents (cont'd)* *Page(s)*

Opinion and Order of the Hon. Allyne R. Ross, dated April 21, 2025 .......... A197-A219

Judgment, dated April 22, 2025 .......... A220

Second Amended Complaint, dated April 25, 2025 .......... A221-A241

Exhibit 1 – Mortgage, dated February 9, 2005 (reproduced at A28-A42)

Exhibit 2 – Loan Modification Agreement, dated October 1, 2011 (reproduced at A43-A55)

Exhibit 3 – Qualified Written Request to Newrez, dated May 6, 2024 (reproduced at A56-A59)

Exhibit 4 – Qualified Written Request to PHH, dated May 6, 2024 (reproduced at A60-A63)

Exhibit 5 – Second Qualified Written Request to Newrez, dated June 18, 2024 (reproduced at A64-A66)

Exhibit 6 – Second Qualified Written Request to PHH, dated June 18, 2024 (reproduced at A67-A69)

Vacatur of Judgment, dated April 28, 2025 .......... A242

Defendants' Notice of Motion to Dismiss, dated June 25, 2025 .......... A243-A244

Declaration of Ali Degan, Esq. in Support of Defendants' Motion to Dismiss, dated June 25, 2025 .......... A245-A248

*Table of Contents (cont'd)* *Page(s)*

Exhibit A – Foreclosure Action Summons and Complaint for Index No. 6670/2010, dated March 15, 2010 (reproduced at A98-A112)

Exhibit B – Foreclosure Action Notice of Appearance for Index No. 6670/2010, dated May 23, 2021 (reproduced at A113-A114)

Exhibit C – Web Civil Supreme – Foreclosure Action Appearance Detail for Index No. 6670/2010 (reproduced at A115)

Exhibit D – Stipulation Discontinuing Foreclosure Action, Index No. 6670/2010 (reproduced at A116-A121)

Memorandum of Law in Support of Defendants' Motion to Dismiss, dated June 25, 2025 ........ A249-A263

Declaration of Steven Amshen, Esq. in Opposition to Defendants' Second Motion to Dismiss, dated July 14, 2025 ........ A264-A267

Exhibit A – Civil Docket for Case #: 1:24-cv-06160-ARR-TAM ........ A268-A271

Exhibit B – Complaint, dated September 4, 2024, with Supporting Documents (reproduced at A7-A92)

Exhibit C – First Amended Complaint, dated November 22, 2024, with Exhibits (A28-A69 and A70-A92)

Exhibit C – Defendants' Notice of Motion to Dismiss, dated December 20, 2024, with Supporting Documents (reproduced at A93-A139)

Exhibit E – Plaintiff's Opposition to Defendants' Motion to Dismiss, dated January 13, 2025, with Supporting Documents ........ A272-A491

Exhibit F – Reply in Further Support of Defendants' Motion to Dismiss, dated January 28, 2025 (reproduced at A187-A196)

Exhibit G – Opinion and Order of the Hon. Allyne R. Ross, dated April 21, 2025, and Judgment, dated April 22, 2025 (reproduced at A197-A220)

Exhibit H – Second Amended Complaint, dated April 25, 2025, with Exhibits (reproduced at A28-A69 and A221-A241)

Exhibit I – Vacatur of Judgment, dated April 28, 2025 (reproduced at A242)

Memorandum of Law in Opposition to Defendants' Second Motion to Dismiss, dated July 14, 2025 ........ A492-A525

Certificate of Service, dated July 14, 2025 ........ A526

Reply in Further Support of Defendants' Motion to Dismiss, dated July 31, 2025 ........ A527-A534

APPEAL,ACO,DJI

# U.S. District Court
# Eastern District of New York (Brooklyn)
# CIVIL DOCKET FOR CASE #: 1:24-cv-06160-ARR-TAM

Murray v. Newrez LLC et al
Assigned to: Judge Allyne R. Ross
Referred to: Magistrate Judge Taryn A. Merkl
Cause: 28:1331 Fed. Question

Date Filed: 09/04/2024
Date Terminated: 09/30/2025
Jury Demand: Plaintiff
Nature of Suit: 480 Consumer Credit
Jurisdiction: Federal Question

**Plaintiff**

**Sherry Ann Murray** represented by

**Jill Cori Schaefer**
Petroff Amshen
1795 Coney Island Avenue, 3rd Floor
Ste 3rd Floor
Brooklyn, NY 11230
718-336-4200
Email: jschaefer@petroffamshen.com
*ATTORNEY TO BE NOTICED*

**Steven Amshen**
Petroff Amshen LLP
1795 Coney Island Avenue, 3rd Floor
Brooklyn, NY 11230
718-336-4200
Fax: 718-336-4242
Email: samshen@petroffamshen.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Newrez LLC**
*doing business as*
Shellpoint Mortgage Servicing
represented by

**Ali Degan**
Hinshaw & Culbertson, LLP
800 Third Avenue
13th Floor
New York, NY 10022
212-655-3889
Email: Adegan@hinshawlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sirui Sherry Xia**
Hinshaw & Culbertson LLP
800 Third Avenue
13th Floor
New York, NY 10022

212-471-6201
Fax: 212-935-1166
Email: shernator@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**PHH Mortgage Corporation**
*doing business as*
PHH Mortgage Services

represented by **Ali Degan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sirui Sherry Xia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/04/2024 | 1 | COMPLAINT against All Defendants filing fee $ 405, receipt number ANYEDC-18239118 Was the Disclosure Statement on Civil Cover Sheet completed -NO,, filed by Sherry Ann Murray. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons with Rider, # 3 Exhibit 1 - Mortgage dated February 9, 2005, # 4 Exhibit 2 - Loan Modification Agreement dated October 1, 2011, # 5 Exhibit 3 - QWR to Newrez dated May 6, 2024, # 6 Exhibit 4 - QWR to PHH dated May 6, 2024, # 7 Exhibit 5 - Second QWR to Newrez dated June 18, 2024, # 8 Exhibit 6 - Second QWR to PHH dated June 18, 2024) (Amshen, Steven) (Entered: 09/04/2024) |
| 09/04/2024 | | Case Assigned to Judge Allyne R. Ross and Magistrate Judge Taryn A. Merkl. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (CV) (Entered: 09/04/2024) |
| 09/04/2024 | 2 | Clerk's Notice Re: Consent. A United States Magistrate Judge has been assigned to this case and is available to conduct all proceedings. In accordance with Rule 73 of the Federal Rules of Civil Procedure, Local Rule 73.1, the parties are notified that if all parties consent, the assigned Magistrate Judge is available to conduct all proceedings in this action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to this Notice is a blank copy of the consent form that should be filled out, signed and filed electronically only if all parties wish to consent. Any party may withhold its consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent.The form may also be accessed at the following link: https://img.nyed.uscourts.gov/files/forms/MJConsentForm.pdf (CV) (Entered: 09/04/2024) |
| 09/04/2024 | 3 | Summons Issued as to Newrez LLC, PHH Mortgage Corporation. (CV) (Entered: 09/04/2024) |
| 09/04/2024 | 4 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (CV) (Entered: 09/04/2024) |
| 09/19/2024 | 5 | SUMMONS Returned Executed by Sherry Ann Murray. Newrez LLC served on 9/10/2024, answer due 10/1/2024. (Amshen, Steven) (Entered: 09/19/2024) |
| 09/19/2024 | 6 | SUMMONS Returned Executed by Sherry Ann Murray. PHH Mortgage Corporation served on 9/10/2024, answer due 10/1/2024. (Amshen, Steven) (Entered: 09/19/2024) |

| | | |
|---|---|---|
| 09/24/2024 | 7 | NOTICE of Appearance by Sirui Sherry Xia on behalf of PHH Mortgage Corporation (aty to be noticed) (Xia, Sirui) (Entered: 09/24/2024) |
| 09/24/2024 | 8 | Letter MOTION for Extension of Time to File Answer re 1 Complaint,, by PHH Mortgage Corporation. (Xia, Sirui) (Entered: 09/24/2024) |
| 09/25/2024 | | ORDER: The motion for extension of time 8 is granted, on consent. Defendant PHH Mortgage Corporation is respectfully directed to answer or otherwise respond to the complaint by **10/31/2024**. The parties are reminded that any motion practice must be initiated in accordance with the Individual Rules of the assigned District Judge. Ordered by Magistrate Judge Taryn A. Merkl on 9/25/2024. (ES) (Entered: 09/25/2024) |
| 10/03/2024 | | ORDER: On 9/4/2024, Plaintiff filed a complaint 1 . On 9/19/2024, Plaintiff filed proof of service indicating that Defendant Newrez LLC was served on 9/19/2024, rendering its answer due 10/1/2024. To date, Defendant has not answered or otherwise appeared. Defendants time to answer is extended to **10/24/2024**, and Plaintiff is directed to provide this order to Defendants, and to file proof of same on ECF by **10/10/2024**. In the absence of a response from Defendant, Plaintiff is directed to file a status report advising the Court on the current status of the case and anticipated next steps by **10/31/2024**. Ordered by Magistrate Judge Taryn A. Merkl on 10/3/2024. (ES) (Entered: 10/03/2024) |
| 10/03/2024 | 9 | AFFIDAVIT/AFFIRMATION re Order,, *Certificate of Service* by Sherry Ann Murray (Amshen, Steven) (Entered: 10/03/2024) |
| 10/16/2024 | 10 | NOTICE of Appearance by Sirui Sherry Xia on behalf of Newrez LLC (aty to be noticed) (Xia, Sirui) (Entered: 10/16/2024) |
| 10/16/2024 | 11 | Letter MOTION for Extension of Time to File Answer re 1 Complaint,, by Newrez LLC. (Xia, Sirui) (Entered: 10/16/2024) |
| 10/17/2024 | | ORDER: The motion for extension of time to file answer 11 is granted, on consent. Defendant shall file an answer or otherwise respond to the complaint by **10/31/2024**. The parties are respectfully reminded that any motion practice must be initiated in accordance with the Individual Rules of the assigned District Judge. Ordered by Magistrate Judge Taryn A. Merkl on 10/17/2024. (ERT) (Entered: 10/17/2024) |
| 10/31/2024 | 12 | Letter *Requesting a Pre-Motion Conference* by Newrez LLC, PHH Mortgage Corporation (Attachments: # 1 Exhibit A - Foreclosure Complaint, # 2 Exhibit B - Petroff Foreclosure Appearance, # 3 Exhibit C - WebCivil Supreme - Appearance Detail, # 4 Exhibit D - Stipulation of Discontinuance) (Xia, Sirui) (Entered: 10/31/2024) |
| 10/31/2024 | | NOTICE: Defendants have submitted a letter 12 requesting a pre-motion conference regarding an anticipated motion to dismiss. Plaintiff's counsel is reminded that, under Judge Ross's Individual Motion Practices, plaintiff is required to file a responsive letter addressing the legal and factual bases of the anticipated motion within seven business days from service of defendants' letter, on or before November 12, 2024. (AL) (Entered: 10/31/2024) |
| 11/07/2024 | 13 | Letter *Response to Defendants' Request for Pre-Motion Conference (ECF 12)* by Sherry Ann Murray (Amshen, Steven) (Entered: 11/07/2024) |
| 11/08/2024 | | ORDER: The court has reviewed the parties' pre-motion letters concerning defendants' anticipated motion to dismiss and determined that a pre-motion conference is not necessary. The court grants plaintiff leave to amend her complaint, if she so desires, no later than November 22, 2024. In the event no amended complaint is filed, the court grants defendants permission to bring the proposed motion according to the following briefing schedule: defendants' motion and supporting papers shall be served no later than December 6, 2024; plaintiff's opposition papers shall be served no later than December 20, 2024; |

| | | |
|---|---|---|
| | | defendants' reply papers, if any, shall be served no later than December 27, 2024. The fully briefed motion shall be filed in accordance with chambers rules, including courtesy copies for chambers, no later than December 27, 2024. This schedule may be altered only with the permission of the court. Ordered by Judge Allyne R. Ross on 11/8/2024. (AL) (Entered: 11/08/2024) |
| 11/22/2024 | 14 | AMENDED COMPLAINT *with leave of Court* against Newrez LLC, PHH Mortgage Corporation, filed by Sherry Ann Murray. (Attachments: # 1 Exhibit Ex. 1 - Mortgage, # 2 Exhibit Ex. 2 - Loan Modification Agreement, # 3 Exhibit Ex. 3 - QWR to Newrez, # 4 Exhibit Ex. 4 - QWR to PHH, # 5 Exhibit Ex. 5 - Second QWR to Newrez, # 6 Exhibit Ex. 6 - Second QWR to PHH) (Amshen, Steven) (Entered: 11/22/2024) |
| 11/27/2024 | 15 | Letter MOTION for Extension of Time to File *[LETTER MOTION FOR EXTENSION OF TIME AS TO THE BRIEFING SCHEDULE RE DEFENDANT'S MOTION TO DISMISS]* by Newrez LLC, PHH Mortgage Corporation. (Xia, Sirui) (Entered: 11/27/2024) |
| 11/27/2024 | | ORDER granting 15 Motion for Extension of Time to File. Defendants' motion and supporting papers shall be served no later than December 20, 2024; plaintiff's opposition papers shall be served no later than January 14, 2025; defendants' reply papers, if any, shall be served no later than January 28, 2025. The fully briefed motion shall be filed in accordance with chambers rules, including courtesy copies for chambers, no later than January 28, 2025. This schedule may be altered only with the permission of the court. Ordered by Judge Allyne R. Ross on 11/27/2024. (AL) (Entered: 11/27/2024) |
| 12/20/2024 | 16 | MOTION to Dismiss for Failure to State a Claim by Newrez LLC, PHH Mortgage Corporation. (Attachments: # 1 Declaration of Sherry Xia Supporting Defendants' Motion to Dismiss, # 2 Exhibit A - Foreclosure Action Complaint, # 3 Exhibit B - Foreclosure Action Appearance, # 4 Exhibit C - WebCivil Supreme - Appearance Detail, # 5 Exhibit D - Foreclosure Action Stipulation of Discontinuance) (Xia, Sirui) (Entered: 12/20/2024) |
| 12/20/2024 | 17 | MEMORANDUM in Support re 16 MOTION to Dismiss for Failure to State a Claim filed by Newrez LLC, PHH Mortgage Corporation. (Xia, Sirui) (Entered: 12/20/2024) |
| 01/13/2025 | 18 | Letter *Serving Plaintiff's Opposition Papers to Defendants' Motion to Dismiss* by Sherry Ann Murray (Attachments: # 1 Cover Letter to Court Serving Courtesy Copy of Opposition Papers, # 2 Certificate of Service Proof of Service of Opposition Papers) (Amshen, Steven) (Entered: 01/13/2025) |
| 01/23/2025 | 19 | AFFIDAVIT/DECLARATION in Opposition re 16 MOTION to Dismiss for Failure to State a Claim filed by Sherry Ann Murray. (Attachments: # 1 Exhibit A - PACER Docket Report as of 2025.01.10, # 2 Exhibit B - Complaint, # 3 Exhibit C - Defendants' Pre-Motion Letter, # 4 Exhibit D - Plaintiff's Response to Pre-Motion Letter, # 5 Exhibit E - Amended Complaint, # 6 Memorandum in Opposition, # 7 Certificate of Service) (Amshen, Steven) (Entered: 01/23/2025) |
| 01/28/2025 | 20 | REPLY in Support *Reply Further Supporting Defendants' Motion to Dismiss* filed by Newrez LLC, PHH Mortgage Corporation. (Xia, Sirui) (Entered: 01/28/2025) |
| 04/21/2025 | 21 | ORDER granting 16 Motion to Dismiss for Failure to State a Claim. For the reasons set forth in the attached Opinion and Order, I GRANT 16 defendants' Motion to Dismiss and dismiss plaintiff's claims without prejudice. Ordered by Judge Allyne R. Ross on 4/21/2025. (KCC) (Entered: 04/21/2025) |
| 04/22/2025 | 22 | **VACATED** CLERK'S JUDGMENT: that defendants' motion to dismiss is granted without prejudice as to plaintiff's claims. Signed by Deputy Clerk, Jalitza Poveda, on behalf of Clerk of Court, Brenna B. Mahoney, on 4/22/2025. (JP) Modified on 4/28/2025 (JP). (Entered: 04/22/2025) |

| | | |
|---|---|---|
| 04/25/2025 | 23 | AMENDED COMPLAINT *Second Amended Complaint, with leave of court (see ECF 21 at p. 19)* against Newrez LLC, PHH Mortgage Corporation, filed by Sherry Ann Murray. (Attachments: # 1 Exhibit 1 - Mortgage, # 2 Exhibit 2 - Loan Modification Agreement, # 3 Exhibit 3 - Newrez QWR, # 4 Exhibit 4 - PHH QWR, # 5 Exhibit 5 - Second Newrez QWR, # 6 Exhibit 6 - Second PHH QWR) (Amshen, Steven) (Entered: 04/25/2025) |
| 04/28/2025 | 24 | VACATUR OF JUDGMENT: The Clerk's Judgment having been entered on April 22, 2025 is hereby vacated pursuant to Rule 60(a) of the Federal Rules of Civil Procedure. Signed by Deputy Clerk, Jalitza Poveda, on behalf of Clerk of Court, Brenna B. Mahoney, on 4/28/2025. (JP) (Entered: 04/28/2025) |
| 05/09/2025 | 25 | Letter *Requesting a Pre-Motion Conference* by Newrez LLC, PHH Mortgage Corporation (Attachments: # 1 Exhibit A - Foreclosure Complaint, # 2 Exhibit B - Petroff Foreclosure Appearance, # 3 Exhibit C - WebCivil Supreme - Appearance Detail, # 4 Exhibit D - Stipulation of Discontinuance) (Xia, Sirui) (Entered: 05/09/2025) |
| 05/15/2025 | 26 | Letter *Response to Defendants' Request for Pre-Motion Conference [ECF 25]* by Sherry Ann Murray (Amshen, Steven) (Entered: 05/15/2025) |
| 05/20/2025 | | ORDER. The court has reviewed the parties' pre-motion letters concerning defendants' anticipated motion to dismiss and determined that a pre-motion conference is not necessary. The court grants defendants permission to bring the proposed motion according to the following briefing schedule: defendants' motion and supporting papers shall be served no later than June 3, 2025; plaintiff's opposition papers shall be served no later than June 17, 2025; defendants' reply papers, if any, shall be served no later than June 24, 2025. The fully briefed motion shall be filed in accordance with chambers rules, including courtesy copies for chambers, no later than June 24, 2025. This schedule may be altered only with the permission of the court. Ordered by Judge Allyne R. Ross on 5/20/2025. (KCC) (Entered: 05/20/2025) |
| 05/20/2025 | 27 | MOTION for Extension of Time to File Response/Reply as to Order,,, by Newrez LLC, PHH Mortgage Corporation. (Xia, Sirui) (Entered: 05/20/2025) |
| 05/21/2025 | | ORDER granting 27 Motion for Extension of Time to File Response/Reply. Granted. Defendants' motion shall be served by June 25, 2025; plaintiff's opposition papers shall be served no later than July 16, 2025; defendants' reply papers, if any, shall be served no later than July 31, 2025. Ordered by Judge Allyne R. Ross on 5/21/2025. (KCC) (Entered: 05/21/2025) |
| 05/23/2025 | 28 | NOTICE of Appearance by Jill Cori Schaefer on behalf of Sherry Ann Murray (aty to be noticed) (Schaefer, Jill) (Entered: 05/23/2025) |
| 06/25/2025 | 29 | NOTICE of Appearance by Ali Degan on behalf of All Defendants (aty to be noticed) (Degan, Ali) (Entered: 06/25/2025) |
| 06/25/2025 | 30 | Second MOTION to Dismiss for Failure to State a Claim *FRCP 12(b)(6)* by Newrez LLC, PHH Mortgage Corporation. (Attachments: # 1 Declaration of Ali Degan Supporting Defendants' Motion to Dismiss, # 2 Exhibit A - Foreclosure Action Complaint, # 3 Exhibit B - Foreclosure Action Appearance, # 4 Exhibit C - WebCivil Supreme - Appearance Detail, # 5 Exhibit D - Foreclosure Action Stipulation of Discontinuance, # 6 Memorandum in Support) (Degan, Ali) (Entered: 06/25/2025) |
| 07/14/2025 | 31 | AFFIDAVIT/DECLARATION in Opposition re 30 Second MOTION to Dismiss for Failure to State a Claim *FRCP 12(b)(6)* filed by Sherry Ann Murray. (Attachments: # 1 Exhibit A - PACER Docket Report as of June 30, 2025, # 2 Exhibit B - Complaint, # 3 Exhibit C - First Amended Complaint, # 4 Exhibit D - Defendants' First MTD, # 5 Exhibit E - Plaintiff's Opposition to First MTD to, # 6 Exhibit F - Defendants' First MTD Reply, # 7 Exhibit G - Dismissal Order and Clerk's Judgment, # 8 Exhibit H - Second Amended |

| | | |
|---|---|---|
| | | Complaint, # 9 Exhibit I - Vacatur of Judgment, # 10 Memorandum in Opposition Plaintiff's Memorandum of Law in Opposition to Defendants' Second MTD, # 11 Certificate of Service) (Amshen, Steven) (Entered: 07/14/2025) |
| 07/31/2025 | 32 | REPLY in Support re 30 Second MOTION to Dismiss for Failure to State a Claim *FRCP 12(b)(6)* filed by Newrez LLC, PHH Mortgage Corporation. (Degan, Ali) (Entered: 07/31/2025) |
| 09/29/2025 | 33 | ORDER granting 30 Motion to Dismiss for Failure to State a Claim. For the reasons set forth in the attached Opinion and Order, I GRANT 30 defendants' Motion to Dismiss and dismiss plaintiff's claims with prejudice. Ordered by Judge Allyne R. Ross on 9/29/2025. (KCC) (Entered: 09/29/2025) |
| 09/30/2025 | 34 | CLERK'S JUDGMENT: that defendants' motion to dismiss is granted as to plaintiff's remaining RESPA claim without leave to amend. Signed by Deputy Clerk, Jalitza Poveda, on behalf of Clerk of Court, Brenna B. Mahoney, on 9/30/2025. (JP) (Entered: 09/30/2025) |
| 10/14/2025 | 35 | NOTICE OF APPEAL as to 33 Order on Motion to Dismiss for Failure to State a Claim, 34 Clerk's Judgment by Sherry Ann Murray. Filing fee $ 605, receipt number ANYEDC-19531039. Appeal Record due by 10/28/2025. (Amshen, Steven) (Entered: 10/14/2025) |
| 10/14/2025 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 35 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 10/14/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 11/14/2025 12:28:14 | | | |
| **PACER Login:** | Db00092016 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:24-cv-06160-ARR-TAM |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERRY ANN MURRAY,<br><br>Plaintiff,<br><br>-against-<br><br>NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING; and PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES,<br><br>Defendants. | Civil Action<br>Case No.: 1:24-cv-6160<br><br>**COMPLAINT** |

Plaintiff Sherry Ann Murray ("Plaintiff"), by and through her attorneys, Petroff Amshen LLP, as and for her complaint against the defendants named herein (collectively, "Defendants"), hereby alleges the following upon personal knowledge, review of public record, and/or otherwise upon information and belief:

1. Plaintiff brings this action for damages arising under the Real Estate Settlement Procedures Act ("RESPA") and its implementing Regulation X (12 U.S.C. § 2601, *et seq.* and 12 C.F.R. § 1024.1, *et seq.*), and N.Y. Real Property Law, resulting from the Defendants' failure to respond to Plaintiff's qualified written requests for information related to her mortgage loan account, failure to disclose finance charges and other fees added to Plaintiff's mortgage loan balance, and other practices prohibited by federal and state consumer protection laws.

**PARTIES**

2. Plaintiff is an individual and resident of the State of New York, Kings County, residing at 87 Blake Avenue, Brooklyn, New York 11212.

3. Defendant Newrez LLC ("Newrez") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 601 Office Center Drive,

Suite 100, Fort Washington, Pennsylvania 19034, and registered agent for service in New York c/o Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

4. Newrez is a mortgage loan servicer operating in New York under exempt mortgage loan servicer registration number S000537. Newrez also does business in New York under the trade name Shellpoint Mortgage Servicing ("Shellpoint").

5. Upon information and belief, Newrez is a wholly-owned subsidiary of New Residential Investment Corp. ("New Residential").

6. Defendant PHH Mortgage Corporation ("PHH") is a corporation organized under the laws of the State of New Jersey, with its principal place of business at 2000 Midlantic Drive, Suite 410-A, Mount Laurel, New Jersey 08054, and registered agent for service in New York c/o Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

7. PHH is a mortgage loan servicer operating in New York under exempt mortgage loan servicer registration number S000102-2726. PHH also does business in New York using the trade name PHH Mortgage Services.

8. Upon information and belief, pursuant to a Master Agreement and Transfer Agreement dated on or about July 23, 2017, Ocwen Financial Corporation ("Ocwen") sold its nearly $110 billion portfolio of mortgage loan servicing rights (including Plaintiff's loan) to New Residential, and/or various of its affiliates and/or subsidiaries including Newrez, but continued servicing the loans until the servicing rights could be formally transferred.

9. Upon further information and belief, PHH is or was a wholly-owned subsidiary of Ocwen, which merged with PHH on or about October 4, 2018, and began conducting its mortgage servicing business under the PHH tradename.

10. Upon information and belief, pursuant to a subservicing agreement between Ocwen and New Residential, PHH has been the servicer or subservicer of Plaintiff's Mortgage loan account since in or about 2018.

11. Upon further information and belief, Newrez has been the master servicer of Plaintiff's Mortgage since on or about April 4, 2019.

## JURISDICTION

12. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims substantially arise under federal law.

13. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to Plaintiff's claims occurred in this district, and the mortgaged property underlying Plaintiff's claims is situated in this district.

## STATEMENT OF FACTS

14. Plaintiff is the owner of real property located at 87 Blake Avenue, Brooklyn, New York 11212 (the "Property").

15. Plaintiff is the obligor on a mortgage dated February 9, 2005, securing repayment of a loan in the original principal amount of $440,325.00, executed in favor of Professional Mortgage Bankers Corp. (the "Mortgage"). The Mortgage was recorded as a lien against the Property on March 2, 2005, under CRFN 2005000124847. A true and correct copy of the recorded Mortgage is annexed hereto as **Exhibit 1**.

16. The Mortgage was subsequently modified via a loan modification agreement between Plaintiff and GMAC Mortgage, LLC dated October 1, 2011 (the "Modification"), which was recorded on November 14, 2011, under CRFN 2011000395248. A true and correct copy of the recorded Modification is annexed hereto as **Exhibit 2**.

17. The Modification includes a balloon payment disclosure advising that a balloon payment in the amount of $131,717.67, representing the "Deferred Principal Balance" of the loan, will be due at maturity. *See* Ex. 2.

18. The Modification provides no information regarding the amounts included in either the "Deferred Principal Balance," or the "New Principal Balance," of Plaintiff's loan. *See id.*

19. Upon information and belief, the Modification capitalized fees, advances, and other amounts into Plaintiff's loan balance, which were excessive, illegal, and/or improper. The nature of these fees and other capitalized amounts was not fully or properly disclosed to Plaintiff or her attorneys in connection with the Modification.

20. Plaintiff did not receive notice of any servicing transfers related to her Mortgage loan account following execution of the Modification and, upon information and belief, no such notices were ever sent.

21. Accordingly, on May 6, 2024, on Plaintiff's behalf, Plaintiff's attorneys mailed separate Qualified Written Requests (the "QWRs") to Newrez (the "Newrez QWR") and PHH (the "PHH QWR"), to obtain information about the servicing of her Mortgage loan account, and clarity regarding the amounts included in the modified loan balance. True and correct copies of the QWRs, with proofs of service, are annexed hereto as **Exhibit 3** and **Exhibit 4**.

22. Because Plaintiff never received notice of any servicing transfers, the QWRs specifically sought copies of all servicing transfer notices, to allow Plaintiff to identify the entities involved in the servicing of her loan. The QWRs also requested complete loan and escrow histories, and an itemization and explanation of all fees and other amounts charged to Plaintiff's account and/or added to the loan balance since origination. *See* Exs. 3, 4.

23. Newrez never acknowledged receipt of the Newrez QWR and, to date, it has not provided a written response (or a response of any kind).

24. PHH never acknowledged receipt of the PHH QWR and, to date, it has not provided a written response (or a response of any kind).

25. Still in the dark regarding crucial information related to the loan account, on June 18, 2024, on Plaintiff's behalf, Plaintiff's attorneys mailed a second QWR to Newrez (the "Second Newrez QWR"), and a second QWR to PHH (the "Second PHH QWR"), again seeking servicing information, loan and escrow histories, and an itemization and explanation of fees and other charges added to the loan balance. True and correct copies of the Second Newrez QWR and the Second PHH QWR, with proofs of service, are annexed hereto as **Exhibit 5** and **Exhibit 6**.

26. Newrez never acknowledged receipt of the Second Newrez QWR and, to date, it has not provided a written response (or a response of any kind).

27. PHH never acknowledged receipt of the Second PHH QWR and, to date, it has not provided a written response (or a response of any kind).

28. Each Defendant's refusal to adhere to required servicing practices, including failing to provide Plaintiff with notices of servicing transfers and other account information, and also failing to acknowledge or respond to two separate QWRs, establishes a pattern and practice of noncompliance.

29. This pattern and practice of noncompliance is further evidenced by numerous other lawsuits and regulatory actions taken against the Defendants and their affiliates for similar unlawful practices and violations of consumer protection laws, reflecting consumer-oriented conduct with a broader impact on consumers at large. For example:

a. PHH and Newrez were named in a class action lawsuit filed in the U.S. District Court for the District of Massachusetts on April 21, 2023, under Case No. 1:23-cv-

10857, which alleges that Defendants "fail[ed] to adequately respond to borrowers' requests for account information," and refused to produce information like recordings and transcripts of conversations for "hundreds if not thousands of consumers that have requested them."

b. PHH was also the subject of a 2018 lawsuit filed in the U.S. District Court for the District of Columbia, under Case No. 1:18-cv-00009, in which the attorneys general of 49 states and the District of Columbia alleged that PHH, individually or through its affiliates or subsidiaries, violated state and federal consumer protection laws by failing to correctly apply payments, charging unauthorized fees, failing to maintain proper records, and failing to properly oversee third-party vendors, among other things. The lawsuit resulted in a consent judgment filed on January 3, 2018, wherein PHH agreed to pay more than $45 million in consumer redress, administrative penalties, and other penalties.

c. Upon information and belief, Newrez's parent company, New Residential, acquired the servicing rights for the full $110 billion mortgage servicing portfolio of Ocwen, d/b/a PHH.

d. In 2017, the Consumer Financial Protection Bureau ("CFPB") sued Ocwen and its subsidiaries "for failing borrowers at every stage of the mortgage servicing process." *See* CFPB Press Release dated April 20, 2017, accessible at https://www.consumerfinance.gov/about-us/newsroom/cfpb-sues-ocwen-failing-borrowers-throughout-mortgage-servicing-process/. The CFPB "uncovered substantial evidence that Ocwen has engaged in significant and systemic misconduct at nearly every stage of the mortgage servicing process," and alleged that

> Ocwen's years of widespread errors, shortcuts, and runarounds cost some borrowers money and others their homes. Ocwen allegedly botched basic functions like sending accurate monthly statements, properly crediting payments, and handling taxes and insurance. Allegedly, Ocwen also illegally foreclosed on struggling borrowers, ignored customer complaints, and sold off the servicing rights to loans without fully disclosing the mistakes it made in borrowers' records. . . .
>
> If an error is made in the servicing of a mortgage loan, a servicer must generally either correct the error identified by the borrower, called a notice of error, or investigate the alleged error. Since 2014, Ocwen has allegedly routinely failed to properly acknowledge and investigate complaints, or make necessary corrections. . . .
>
> Ocwen has allegedly failed to include complete and accurate borrower information when it sold its rights to service thousands of loans to new mortgage servicers. This has hampered the new servicers' efforts to comply with laws and investor guidelines.

*Id.* The Florida Attorney General filed a similar lawsuit, and numerous state financial regulators also took regulatory action against Ocwen for these practices. *See id.*

e. Upon information and belief, Newrez acquired Specialized Loan Servicing LLC ("SLS"), which was rebranded as Shellpoint on or about May 1, 2024. Newrez does business under the trade name Shellpoint. Shellpoint is one of the country's largest non-bank mortgage servicers.

f. In 2022, Newrez d/b/a Shellpoint agreed to settle a class action lawsuit filed in the U.S. District Court for the Eastern District of Pennsylvania, under Case No. 2:21-cv-2062, that alleged it sent misleading mortgage statements to borrowers. Under the terms of the settlement, Shellpoint agreed to pay $500,000.00 to borrowers whose mortgage loans it serviced, and to implement changes in its servicing practices and policies.

g. SLS was the subject of a CFPB investigation which found that, "since January 2014, SLS violated RESPA and Regulation X by taking prohibited foreclosure actions against mortgage borrowers who were entitled to protection from foreclosure, and by failing to send or to timely send evaluation notices to mortgage borrowers who were entitled to them. These violations also constitute violations of the Consumer Financial Protection Act of 2010." *See* CFPB Press Release dated May 11, 2020, accessible at https://www.consumerfinance.gov/about-us/newsroom/cfpb-settles-specialized-loan-servicing/. "As of February 29, 2020, SLS serviced a portfolio of mortgage loans worth about $112.69 billion." *See id.* On May 11, 2020, the CFPB entered into a settlement with SLS, requiring SLS to pay "$1.275 million in monetary relief to consumers in the form of redress and waiver of borrower deficiencies, pay a $250,000 civil money penalty, . . . and implement procedures to ensure compliance with the Real Estate Settlement Procedures Act (RESPA) and its implementing regulation, Regulation X." *See id.*

h. Upon information and belief, Newrez engages third parties to perform the operational servicing duties of mortgage loans for which it acquires the mortgage servicing rights. These third parties include entities like PHH and Nationstar Mortgage LLC ("Nationstar").

i. On December 7, 2020, the CFPB filed a complaint in the U.S. District Court for the District of Columbia under Case No. 1:20-cv-03550 (the "CFPB Nationstar Action"), against Nationstar, "one of the largest mortgage servicers, and the largest non-bank mortgage servicer, in the United States," alleging that it "violated multiple federal consumer financial laws, causing substantial harm to the borrowers whose loans it serviced." *See* CFPB Nationstar Action, filed December 7, 2020, accessible at https://files.consumerfinance.gov/f/documents/cfpb_nationstar-mortgage-llc-dba-mr-cooper_complaint_2020-12.pdf. The CFPB brought the action as "part of a coordinated effort between the Bureau, a multistate group of state attorneys general, and state bank regulators" under RESPA, Regulation X, and other federal consumer protection statutes. *See* CFPB Press Release dated December 7, 2020, accessible at https://www.consumerfinance.gov/about-

us/newsroom/consumer-financial-protection-bureau-multiple-states-enter-settlement-nationstar-mortgage-llc-unlawful-servicing-practices/. Nationstar stipulated to judgment directing it to pay $15,623,305.00 in monetary relief "for the sole purpose of providing redress to Affected Consumers," and a civil money penalty of $1,500,000.00. *See* CFPB Nationstar Action (Case No. 1:20-cv-03550-JEB), ECF Doc. No. 3, filed December 8, 2020, accessible at https://files.consumerfinance.gov/f/documents/cfpb_nationstar-mortgage-llc-dba-mr-cooper_stipulated-final-judgment-and-order_2020-12.pdf.

30. Defendants and their affiliated entities service a nationwide portfolio of loans totaling hundreds of billions of dollars. Given that Defendants themselves have documented histories of regulatory enforcement and consumer protection law violations, and NewRez acquires and/or engages third party servicers with similar histories – like SLS, Ocwen, and Nationstar – to perform the operational servicing duties in connection with the mortgage servicing rights it acquires, the types of servicing errors and statutory violations described herein reflect consumer-oriented conduct with a broader impact on consumers at large.

## VIOLATIONS OF RESPA AND REGULATION X
## (12 U.S.C. § 2601, *et seq.* and 12 C.F.R. § 1024.1, *et seq.*)

31. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

32. RESPA (12 U.S.C. § 2601, *et seq.*) is a federal consumer protection statute which, along with its implementing regulations, imposes certain duties on lenders and servicers related to the real estate settlement process and servicing of mortgage loans, and provides a framework for borrowers to obtain account information and to remedy servicing and account errors.

33. Regulation X (12 C.F.R. § 1024.1, *et seq.*), issued by the CFPB, is RESPA's implementing regulation. RESPA expressly authorizes the CFPB "to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter." *See* 12 U.S.C. § 2617(a).

34. RESPA prohibits loan servicers from failing to comply with CFPB regulations intended to carry out RESPA's consumer protection purposes, including Regulation X. *See* 12 U.S.C. § 2605(k)(1)(E).

35. Each of the Defendants is or was the "servicer" of Plaintiff's loan, as defined by RESPA and Regulation X, during a period relevant to Plaintiff's claims herein. *See* 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2.

**<u>COUNT I</u>**
**Failure to Respond to Borrower Inquiries**
**(12 U.S.C. §§ 2605(e), 2605(f) and 12 C.F.R. §§ 1024.35, 1024.36)**

36. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

37. Pursuant to 12 U.S.C. § 2605(e), loan servicers have a duty to respond to inquiries received from a borrower or his agent, meeting the criteria of a QWR.

38. A QWR is defined as "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

39. RESPA requires a servicer who receives a QWR to "provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested it taken within such period." 12 U.S.C. § 2605(e)(1)(A).

40. In addition to providing written acknowledgment of receipt, within thirty (30) days of receipt of a QWR from a borrower or his agent, a servicer must also (i) conduct an investigation, (ii) make any necessary corrections to the borrower's account and provide written notice of any such corrections, and (iii) provide a written explanation that includes the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." *See* 12 U.S.C. § 2605(e)(2).

41. Regulation X also details specific actions a loan servicer must take upon receipt of a request for information, including acknowledging receipt, conducting an investigation, correcting any errors identified by the borrower or otherwise discovered during the investigation, and providing the borrower with a written response and explanation. *See* 12 C.F.R. §§ 1024.35, 1024.36.

42. For purposes of Regulation X, "[a] qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request." 12 C.F.R. § 1024.36(a).

43. Newrez failed to acknowledge receipt of the Newrez QWR, and further failed to conduct an investigation or to provide Plaintiff with a written response to the Newrez QWR, in violation of 12 C.F.R. §§ 1024.35 and 1024.36, and 12 U.S.C. §§ 2605(e) and 2605(k).

44. Newrez also failed to acknowledge receipt of the Second Newrez QWR, and further failed to conduct an investigation or to provide Plaintiff with a written response to the Second Newrez QWR, in violation of 12 C.F.R. §§ 1024.35 and 1024.36, and 12 U.S.C. §§ 2605(e) and 2605(k).

45. PHH failed to acknowledge receipt of the PHH QWR, and further failed to conduct an investigation or to provide Plaintiff with a written response to the PHH QWR, in violation of 12 C.F.R. §§ 1024.35 and 1024.36, and 12 U.S.C. §§ 2605(e) and 2605(k).

46. PHH also failed to acknowledge receipt of the Second PHH QWR, and further failed to conduct an investigation or to provide Plaintiff with a written response to the Second PHH QWR, in violation of 12 C.F.R. §§ 1024.35 and 1024.36, and 12 U.S.C. §§ 2605(e) and 2605(k).

47. Defendants' failure to respond to Plaintiff's QWRs has significant implications for Plaintiff, including impeding her ability to identify potential account or servicing errors, and to seek necessary corrective actions. This lack of transparency, and Defendants' failure to comply with these requirements, deprives Plaintiff of the opportunity to exercise her rights effectively.

48. Specifically, Defendants' refusal to provide Plaintiff with critical account information allowing her to identify and seek correction of account errors, and their refusal to independently investigate Plaintiff's account to identify and correct errors in response to the QWRs, means that improper fees – and the interest accruing on the increased loan balance as a result of these fees – continue to accumulate on Plaintiff's account and cause additional harm on an ongoing basis.

49. As a result of Defendants' actions, Plaintiff has suffered actual damages including but not limited to increased debt and financial burden resulting from improperly imposed fees, interest, and other charges added to her loan balance, and emotional distress.

50. Accordingly, Plaintiff is entitled to recover actual damages pursuant to 12 U.S.C. § 2605(f)(1), along with any attorneys' fees and costs incurred in connection with this action pursuant to 12 U.S.C. § 2605(f)(3). Plaintiff is also entitled to additional statutory damages of up

to $2,000.00 per violation pursuant to 12 U.S.C. § 2605(f)(1)(B), as a result of Defendants' pattern and practice of noncompliance.

**COUNT II**
**Failure to Provide Required Notices**
**(12 U.S.C. §§ 2605(b), 2605(c) and 12 C.F.R. § 1024.33)**

51. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

52. RESPA and Regulation X each require a servicer to "notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1); *see also* 12 C.F.R. § 1024.33(b)(1).

53. RESPA and Regulation X also detail specific requirements concerning the timing and content of servicing transfer notices. *See* 12 U.S.C. §§ 2605(b), (c); 12 C.F.R. § 1024.33.

54. Defendants' failure to provide required servicing transfer notices is a violation of 12 U.S.C. §§ 2605(b) and 2605(c), and 12 C.F.R. § 1024.33, entitling Plaintiff to recover actual damages pursuant to 12 U.S.C. § 2605(f)(1), along with attorneys' fees and costs incurred in connection with this action pursuant to 12 U.S.C. § 2605(f)(3).

55. Because Defendants have also demonstrated a pattern and practice of noncompliance with RESPA's statutory requirements and implementing regulations, for each such violation, Plaintiff is entitled to additional damages pursuant to 12 U.S.C. § 2605(f)(1)(B).

**STATE LAW CLAIMS**

**COUNT III**
**Deceptive Acts**
**(N.Y. Gen. Bus. Law § 349)**

56. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

57. New York law provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." GBL § 349.

58. "To maintain a cause of action under § 349, a plaintiff must show: (1) that the defendant's conduct is 'consumer-oriented'; (2) that the defendant is engaged in a 'deceptive act or practice'; and (3) that the plaintiff was injured by this practice." *See Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010).

59. "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers.'" *Id.*

60. Each of the Defendants is a large national mortgage loan servicer, responsible for servicing a portfolio of mortgage loans totaling hundreds of billions of dollars.

61. Defendants and their affiliated entities have all been ordered by state and federal government and regulatory agencies to pay millions of dollars in penalties and consumer redress, for failing to comply with the requirements of various consumer protection laws.

62. Upon information and belief, Defendants have engaged in deceptive acts and practices in the servicing of Plaintiff's loan including (i) charging improper, excessive, and/or duplicative fees, interest, service charges, and other amounts not permitted by the loan documents or applicable law; (ii) failing to provide required notices and disclosures required by the loan documents and applicable law; and (iii) deliberately concealing servicing errors and statutory violations by withholding and refusing to disclose Plaintiff's account information in response to the QWRs.

63. As a result of these acts, Plaintiff has suffered damages including increased debt and financial burden resulting from improperly imposed fees, interest, and other charges added to her loan balance, which Defendants have failed and refused to investigate or rectify.

64. Given Defendants' status as national loan servicers with servicing portfolios in the hundreds of billions of dollars, and their documented history of state and federal consumer protection violations, these deceptive acts and practices will impact not only Plaintiff, but will also have a broader impact on consumers at large.

65. Accordingly, for each such deceptive act and practice, pursuant to GBL § 349(h), Plaintiff is entitled to recover (i) actual damages or fifty dollars, whichever is greater; or, in the Court's discretion, an amount not to exceed three times the actual damages, up to one thousand dollars; and (ii) reasonable attorneys' fees incurred in bringing this action.

**COUNT IV**
**Accounting**

66. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

67. Section 419.4 of the Superintendent's Regulations require servicers to provide borrowers with (i) annual statements, (ii) payment histories, (iii) periodic statements, and (iv) payoff balances containing specific information and meeting certain requirements. *See* 3 N.Y.C.R.R. §§ 419.4(a)-(d).

68. Defendants have failed and refused to provide any information regarding Plaintiff's Mortgage loan account in response to the QWRs. In fact, Defendants have failed and refused to respond to Plaintiff's QWRs at all.

69. Upon information and belief, Defendants added improper fees and charges to Plaintiff's account, and failed to maintain and/or transfer complete and accurate servicing records as required.

70. In order to accurately determine the sum and extent of the servicing errors and improper charges added to Plaintiff's account, Defendants must provide a full accounting of all transactions and calculations involving the loan account including, but not limited to, all credits, debits, payments, disbursements, interest (including rates and changes), fees, charges, and balances.

71. The accounting should include, for all time periods since origination, (i) annual statements, (ii) payment histories, (iii) periodic statements, and (iv) payoff balances meeting the requirements of Section 419.4(a)-(d).

72. The information necessary to conduct this accounting is solely within the Defendants' possession, custody, and control.

73. Plaintiff has no adequate remedy at law, and no other means by which to obtain this information.

74. Accordingly, Plaintiff seeks an accounting of the entire loan history, from origination to present.

## DEMAND FOR JURY TRIAL

75. Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully requests a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff respectfully demands judgment awarding all actual, statutory, and/or punitive damages, equitable relief, and other relief available pursuant to applicable law, including:

(a) actual damages pursuant to 12 U.S.C. § 2605(f)(1), along with any attorneys' fees and costs incurred in connection with this action pursuant to 12 U.S.C. § 2605(f)(3), and additional statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B);

(b) actual and statutory damages, and recovery of attorneys' fees and costs pursuant to GBL § 349(h);

(c) an accounting of the entire loan history, from origination to present including, for all time periods since origination, (i) annual statements, (ii) payment histories, (iii) periodic statements, and (iv) payoff balances meeting the requirements of Section 419.4(a)-(d); and

(d) such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
September 4, 2024

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Sherry Ann Murray

*/s/ Steven Amshen*
Steven Amshen, Esq. (ID No. SA2569)
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: samshen@petroffamshen.com

## SUMMARY OF EXHIBITS

**EXHIBITS:**

**Exhibit 1** – Mortgage dated February 9, 2005, recorded March 2, 2005

**Exhibit 2** – Loan Modification Agreement dated October 1, 2011, recorded November 14, 2011

**Exhibit 3** – QWR to Newrez dated May 6, 2024

**Exhibit 4** – QWR to PHH dated May 6, 2024

**Exhibit 5** – Second QWR to Newrez dated June 18, 2024

**Exhibit 6** – Second QWR to PHH dated June 18, 2024

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

SHERRY ANN MURRAY

**DEFENDANTS**

NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING; and PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES

**(b)** County of Residence of First Listed Plaintiff: Kings County, NY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: ____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Petroff Amshen LLP - 1795 Coney Island Ave., 3rd Floor
Brooklyn, New York 11230; Tel.: (718) 336-4200

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☒ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
RESPA (12 U.S.C. § 2601, et seq.) and Regulation X (12 C.F.R. § 1024.1, et seq.)

Brief description of cause:
Violation of federal consumer protection statutes in connection with mortgage loan servicing.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____ DOCKET NUMBER ____

DATE: September 4, 2024

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

## CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, Steven Amshen, counsel for Plaintiff, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☑ monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐ the complaint seeks injunctive relief,

☐ the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 3 in Section VIII on the front of this form. Rule 3(a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 3(a) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case involves identical legal issues, or the same parties." Rule 3 further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (b), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

# NY-E DIVISION OF BUSINESS RULE 1(d)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County? ☐ Yes ☑ No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? ☐ Yes ☑ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? ☑ Yes ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County? ☐ Yes ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts)*.

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☑ Yes ☐ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes (If yes, please explain ☑ No

I certify the accuracy of all information provided above.

**Signature**: ______________________

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHERRY ANN MURRAY,

Plaintiff,

-against-

NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING; and PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES,

Defendants.

Civil Action
Case No.: 1:24-cv-6160

**SUMMONS**
**IN A CIVIL ACTION**

To: **NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING**
c/o Corporation Service Company
80 State Street
Albany, New York 12207-2543

*(see attached rider)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) – you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Steven Amshen
Petroff Amshen LLP
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

BRENNA B. MAHONEY
*CLERK OF COURT*

Date: ____________________

________________________________________
*Signature of Clerk or Deputy Clerk*

*Sherry Ann Murray v. Newrez LLC d/b/a Shellpoint Mortgage Servicing, et al.*
Civil Action Case No.: 1:24-cv-6160

## SUMMONS IN A CIVIL ACTION – RIDER

To: **PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES**
c/o Corporation Service Company
80 State Street
Albany, New York 12207-2543

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2005021700658002001E1C46

## RECORDING AND ENDORSEMENT COVER PAGE

**PAGE 1 OF 15**

**Document ID: 2005021700658002** Document Date: 02-09-2005 Preparation Date: 02-17-2005
Document Type: MORTGAGE
Document Page Count: 14

**PRESENTER:**
MILLENNIUM ABSTRACT CORP./HOLD FOR PICKUP
FIDELITY NATIONAL TITLE INSURANCE COMPANY
35 NORTH TYSON AVENUE / MA-12664-KRI
FLORAL PARK, NY 11001

**RETURN TO:**
PROFESSIONAL MORTGAGE BANKERS CORP.
400 POST AVENUE
WESTBURY, NY 11590

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 3536 | 53 | Entire Lot | | 87 BLAKE AVENUE |

**Property Type:** 1- 2 FAM WITH ATTCH GAR /OR VACANT LAND

### CROSS REFERENCE DATA

CRFN ______ *or* Document ID________ *or* ______ Year____ Reel ___ Page ____ *or* File Number________

### PARTIES

**MORTGAGER/BORROWER:**
SHERRY ANN MURRAY
87 BLAKE AVENUE
BROOKLYN, NY 11212

**MORTGAGEE/LENDER:**
PROFESSIONAL MORTGAGE BANKERS CORP.
400 POST AVENUE
WESTBURY, NY 11590

### FEES AND TAXES

| **Mortgage** | | |
|---|---|---|
| Mortgage Amount: | $ | 440,325.00 |
| Taxable Mortgage Amount: | $ | 440,325.00 |
| Exemption: | | |
| TAXES: County (Basic): | $ | 2,201.50 |
| City (Additional): | $ | 4,403.00 |
| Spec (Additional): | $ | 0.00 |
| TASF: | $ | 1,100.75 |
| MTA: | $ | 1,075.75 |
| NYCTA: | $ | 0.00 |
| Additional MRT: | $ | 0.00 |
| TOTAL: | $ | 8,781.00 |

| | |
|---|---|
| Recording Fee: $ | 107.00 |
| Affidavit Fee: $ | 0.00 |
| NYC Real Property Transfer Tax Filing Fee: $ | 0.00 |
| NYS Real Estate Transfer Tax: $ | 0.00 |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed 03-02-2005 16:39
City Register File No.(CRFN):
**2005000124847**

*City Register Official Signature*

After Recording Return To:

Professional Mortgage Bankers Corp.
400 Post Avenue
Westbury, New York 11590

LOAN #: [redacted]

[Space Above This Line For Recording Data]

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

**(A) "Security Instrument."** This document, which is dated FEBRUARY 9, 2005, together with all Riders to this document, will be called the "Security Instrument."

**(B) "Borrower."** SHERRY ANN MURRAY,

whose address is 87 BLAKE AVENUE, BROOKLYN, NY 11212,

sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C) "Lender."** Professional Mortgage Bankers Corp.

will be called "Lender."

Lender is a corporation or association which exists under the laws of NEW YORK. Lender's address is 400 Post Avenue Westbury, New York 11590

**(D) "Note."** The note signed by Borrower and dated FEBRUARY 9, 2005, will be called the "Note." The Note shows that I owe Lender FOUR HUNDRED FORTY THOUSAND THREE HUNDRED TWENTY FIVE AND****** NO/100******************************************************* Dollars (U.S. $440,325.00 ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by MARCH 1, 2035.

**(E) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(F) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(H) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Balloon Rider
- [x] 1-4 Family Rider
- [ ] V.A. Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] Other(s) [specify]

BLOCK 3534 LOT 53

**(I) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(J) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(K) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used

# MILLENNIUM ABSTRACT CORP

**as Agent for**
**Fidelity National Title Insurance Company, a California Corporation**

**SCHEDULE A (Description)**

Title Number: **MA-12664-KRI**

All that certain plot, piece or parcel of land, with all the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Northerly side of Blake Avenue, distant 60 feet Easterly from the Northeasterly corner of Blake Avenue and Legion Street, formerly Barrett Street;

RUNNING THENCE Easterly along the Northerly side of Blake Avenue, 20 feet to a point opposite a Party Wall, standing partly on said premises and partly on the Lot next Easterly adjoining.

THENCE Northerly parallel with said Legion Street and part of the distance through a Party Wall, 100 feet, 5 1/2 inches;

THENCE Westerly parallel with Blake Avenue, 20 feet;

THENCE Southerly again parallel with said Legion Street, 100 feet, 5 1/2 inches to the point or place of BEGINNING.

FOR CONVEYANCING ONLY:
TOGETHER with all the right, title and interest, if any of the party of the first part, of, in and to the any streets and roads abutting the above described premises.

Premises commonly known as 87 Blake Avenue, Section Block 3536 and Lot 53.

at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(M) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(N) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(P) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at 87 BLAKE AVENUE, BROOKLYN,

[Street] [City, Town or Village]

New York 11212.

[Zip Code]

This Property is in KINGS County. It has the following legal description:

SEE ATTACHED

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) though (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

LOAN #: [redacted]

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"
(2) The leasehold payments or ground rents on the Property (if any);
(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;
(4) The premium for Mortgage Insurance (if any);
(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and


© 1999-2004 Online Documents, Inc.

reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.** Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Funds.** Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy the Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as described in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights In The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest


© 1999-2004 Online Documents, Inc.

rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or alter that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the

date the Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.** Lender may allow me, or a person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make immediate payment in full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might


© 1999-2004 Online Documents, Inc.

be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys'
fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join, or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous


© 1999-2004 Online Documents, Inc.

Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

**If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.**

**Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:**

**(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument.**

**(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:**

**(1) The promise or agreement that I failed to keep or the default that has occurred;**

**(2) The action that I must take to correct that default;**

**(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;**

**(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;**

**(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and**

**(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and**

**(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.**

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

- [X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.
- [ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.
- [ ] This Security Instrument does not cover real property improved as described above.


© 1999-2004 Online Documents, Inc.

LOAN #: [redacted]

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 9 of this Security Instrument and in any Rider signed by me and recorded with it.

Sherry Ann Murray ______________ (Seal)
SHERRY ANN MURRAY

State of NEW YORK )
) ss:
County of Queens )

On the 9th day of Feb in the year 2005 before me, the undersigned, a Notary Public in and for said State, personally appeared Sherry Ann Murray

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(~~s~~) whose name(~~s~~) is (~~are~~) subscribed to the within instrument and acknowledged to me that ~~he~~/she/~~they~~ executed the same in ~~his~~/her/~~their~~ capacity(~~ies~~), and that by ~~his~~/her/~~their~~ signature(~~s~~) on the instrument, the individual(~~s~~), or the person upon behalf of which the individual(~~s~~) acted, executed the instrument.

______________
~~Notary~~ Public

My commission expires: ______________

DORETTA R. SCAROLA
Notary [illegible] York
No. [illegible]
Qua[illegible]nty
Commission [illegible] 30, 2005

LOAN #: [redacted]

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 9TH day of FEBRUARY, 2005 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to Professional Mortgage Bankers Corp. A NEW YORK CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 87 BLAKE AVENUE, BROOKLYN, NY 11212.

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

Initials: [signature]

LOAN #: [redacted]

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials: S A M


© 1999-2004 Online Documents, Inc.

LOAN #: [redacted]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

Sherry Ann Murray (Seal)
SHERRY ANN MURRAY


© 1999-2004 Online Documents, Inc.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2011110200495001002ED7AA

**RECORDING AND ENDORSEMENT COVER PAGE** **PAGE 1 OF 10**

**Document ID: 2011110200495001** Document Date: 10-01-2011 Preparation Date: 11-02-2011
Document Type: MORTGAGE AND CONSOLIDATION
Document Page Count: 9

| PRESENTER: | RETURN TO: |
|---|---|
| INDECOMM GLOBAL SERVICES<br>2925 COUNTRY DRIVE<br>ST. PAUL, MN 55117<br>651-765-6408<br>acriscoverpage@usrecordings.com | INDECOMM GLOBAL SERVICES<br>2925 COUNTRY DRIVE<br>ST. PAUL, MN 55117<br>651-765-6408<br>acriscoverpage@usrecordings.com |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 3536 | 53 | Entire Lot | | 87 BLAKE AVENUE |

**Property Type:** DWELLING ONLY - 2 FAMILY

**CROSS REFERENCE DATA**

**CRFN:** 2005000124847

**PARTIES**

| MORTGAGOR: | MORTGAGEE: |
|---|---|
| SHERRY A. MURRAY<br>87 BLAKE AVENUE<br>BROOKLYN, NY 11212 | GMAC MORTGAGE, LLC<br>3451 HAMMOND AVENUE<br>WATERLOO, IA 50702 |

**FEES AND TAXES**

**Mortgage**

| | | |
|---|---|---|
| Mortgage Amount: | $ | 378,884.48 |
| Taxable Mortgage Amount: | $ | 2,714.98 |
| Exemption: | | 255 |
| TAXES: County (Basic): | $ | 13.50 |
| City (Additional): | $ | 27.00 |
| Spec (Additional): | $ | 0.00 |
| TASF: | $ | 6.75 |
| MTA: | $ | 0.00 |
| NYCTA: | $ | 0.00 |
| Additional MRT: | $ | 0.00 |
| TOTAL: | $ | 47.25 |
| Recording Fee: | $ | 82.00 |
| Affidavit Fee: | $ | 8.00 |

| | | |
|---|---|---|
| Filing Fee: | $ | 0.00 |
| NYC Real Property Transfer Tax: | $ | 0.00 |
| NYS Real Estate Transfer Tax: | $ | 0.00 |




**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed 11-14-2011 10:29
City Register File No.(CRFN):
**2011000395248**

Annette M Hill

***City Register Official Signature***

Identifier: [redacted] Doc Type:LSMIT

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117 (9)
[redacted]

~~Record & Return To:~~
GMAC Mortgage, LLC
~~Attention: Loss Mitigation~~
**3451 Hammond Avenue
Waterloo, IA 50702
Investor Number: 10261251
Custodian ID: RW1

[redacted]

*[Space Above This Line For Recorder's Use]*

# NON-HAMP LOAN MODIFICATION AGREEMENT
**(Balloon Disclosure Attached)**

Loan Modification Agreement ("Agreement") made this October 1, 2011 ("Effective Date") between SHERRY A MURRAY ("Borrower") and GMAC Mortgage, LLC,** Lender\Servicer or Agent for Lender\Servicer ("Lender") amends and supplements that certain promissory note ("Note") dated February 9, 2005 in the original principal sum of Four Hundred Forty Thousand Three Hundred Twenty Five Dollars and No Cents ($440,325.00) executed by Borrower. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, and if applicable, recorded on* with Instrument Number in Book and/or Page Number of the real property records of KINGS County, NY. Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 87 BLAKE AVENUE BROOKLYN NY 11212, which real property is more particularly described as follows:

* Recorded 3-02-2005, INST # 2005000124847

( Legal Description if Applicable for Recording Only )

**SCHEDULE A** Dwelling Only - 2 Family

Borrower acknowledges that "Lender" is the legal holder and the owner, or agent\servicer for the legal holder and owner, of the Note and Security Instrument and further acknowledges that if "Lender" transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this Agreement.

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of payment of the Note and to extend and carry forward the lien(s) on the Property whether or not created by the Security Instrument.

APN: 03586 0053

Identifier: [redacted] Doc Type:LSMIT

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. Borrower acknowledges that as of the Effective Date, the amount payable under the Note and Security Instrument (New Principal Balance) is $378,884.48. This represents a reduction in my old principal balance (the balance due prior to the date of this loan modification) by $131,717.67 (Total Deferred + Forgiven Principal) of which $0.00 is being forgiven in full and $131,717.67 is being deferred (the "Deferred Principal Balance") until the Term of my loan expires (the Maturity Date), or when I payoff my loan at the time when I sell or transfer any interest in my home, refinance the loan, or when the last scheduled payment is due, and the Lender will be under no obligation to refinance my loan. Until I am required to payoff the Deferred Principal Balance, I will not be required to pay interest or make monthly payments on the deferred amount.

2. The Maturity Date is March 1, 2035.

3. Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of Lender the Principal Balance, consisting of the amount(s) loaned to Borrower by Lender and any accrued but unpaid interest capitalized to date as applicable, along with any other amounts that may come due under the terms of the original Note and Security Instrument

4. Interest will be charged on the unpaid, non-deferred, "New Principal Balance" until the non-deferred principal has been paid in full. Borrower promises to pay interest at the rate of 3.87500% from October 1, 2011 until I payoff my loan at the time when I sell or transfer any interest in my home, refinance the loan, or when the last scheduled payment is due. If Step Rate: The rate of interest I pay will change based upon Payment Schedule below.

5. Borrower promises to make monthly principal and interest payments of $2,053.38, beginning on November 1, 2011, and continuing thereafter on the same day of each succeeding month, according to the Payment Schedule below until all principal and interest is paid in full. Borrower will make such payments at 3451 Hammond Avenue, Waterloo, Iowa, 50702 or at such other place as Lender may require. The amounts indicated in this paragraph do not include any required escrow payments for items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change.

If Step Rate:

## PAYMENT SCHEDULE

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Payment Ends on |
|---|---|---|---|---|---|---|
| 3.87500% | October 1, 2011 | $ 2,053.38 | $ 941.75, adjusts periodically | $ 2,995.13, adjusts periodically | November 1, 2011 | October 1, 2016 |
| 4.25000% | October 1, 2016 | $ 2,087.09 | Adjusts periodically | Adjusts periodically | November 1, 2016 | March 1, 2035 |

6. If on March 1, 2035 (the "Maturity Date"), Borrower still owes any amounts under the Note and Security Instrument, including any "Deferred Principal Balance " as provided for in this Agreement, Borrower will pay these amounts in full on that date.

7. If "Lender" has not received the full amount of any monthly payment within the grace period provided for in the original Note or as otherwise provided for by law, Borrower will pay a late payment fee to "Lender" in an amount calculated based on the late charge percentage provided for in the original Note, or as otherwise provided for by law, and the monthly payment required under this Agreement, with a maximum as provided for in the Note, or otherwise provided by law. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy.

8. It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

9. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower. For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

10. As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable. Any default by Borrower in the performance of its obligations herein

contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

11. Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement.

12. Important information regarding your loan modification.

**Initial Interest Rate and Initial Payment Amount**

- According to your mortgage payment calculated for long-term affordability, your modified loan will include a deferred balance requiring a balloon payment.
- The amount of your initial monthly payment on your modified loan will be based on three factors:

(1) the interest rate reflected in the agreement;
(2) the current balance of the loan; and
(3) the remaining term \ amortization period of the loan.

Your new monthly payment of principal and interest will be calculated based on a remaining Term of 281 months. Although your new payment will be sufficient enough to substantially pay down your loan balance, a balloon payment in the amount of $131,717.67 will be due when the term of your loan expires or when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due, and the Lender will be under no obligation to refinance your loan.

**How Your Monthly Payment Can Change- Balloon Payment**

- You will be notified in writing at least 90 but not more than 120 days before the date the balloon payment is due. This notice will be mailed to you at the most current mailing address you supply and will contain information about the amount of the balloon payment, the date it is due and the telephone number of the Lender's representative (or loan servicer's representative) available to answer questions you may have about the notice.

  THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

  ASSUMING THIS LENDER OR ANOTHR LENDER REFINANCES THE LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OF ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

**Example of Balloon Payment**

- The payment amount due at loan maturity can change substantially based upon amount of the loan, interest rate, and any principal payments you choose to make before loan maturity, among other factors.

| | |
|---|---|
| Unpaid Loan Balance at Time of Modification | $100,000 |
| Loan Balance That Does Not Accrue Interest (Deferred Principal) | $25,000 |
| Loan Balance That Does Accrue Interest | $75,000 |
| Interest Rate | 7.7500% |
| Deferred Principal Balance Due at Maturity | $25,000 |

In the **example** above, the outstanding loan balance of $25,000 would be due and payable at maturity.

**This summary is intended for reference purposes only.**

EACH OF THE BORROWER AND THE "LENDER" ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES. BORROWER ALSO ACKNOWLEDGES THE RECEIPT BY INCLUSION IN THIS AGREEMENT, OF SPECIFIC INFORMATION DISCLOSING THE FUNCTION OF A BALLOON PAYMENT.

[redacted]

Executed effective as of the day and year first above written.

9-23-11 Sherry A Murray

Date SHERRY A MURRAY

Date

Date

Date

UNIFORM FORM CERTIFICATE OF ACKNOWLEDGMENT

STATE OF NEW YORK )
ss:
COUNTY OF New York )

On the September 23 2011 day of ______________, in the year 2011, before me, the undersigned, personally appeared S. A. Murray-Brevil, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

[signature]
Notary Public

SELMA JAHIC
Notary Public - State of New York
NO. 01JA6069922
Qualified in New York County
My Commission Expires 02/19/14

SEAL

GMAC Mortgage, LLC

By: Alice Decker 10/3/11
Alice Decker

Authorized Officer

LENDER ACKNOWLEDGMENT

State of Iowa
County of Linn

On this 3 day of Oct, 2011 before me, the undersigned, a Notary Public in and for said county and state, personally appeared Alice Decker, personally known to me or identified to my satisfaction to be the person who executed the within instrument as Authorized Officer of GMAC Mortgage, LLC and they duly acknowledged that said instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

BETTY R. WEAVER
COMMISSION NO. 765873
MY COMMISSION EXPIRES
DECEMBER 14, 2013
IOWA

Betty R Weaver
Notary Public
My Commission Expires: 12/14/13

SEAL

**SCHEDULE "A"**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF BROOKLYN, COUNTY OF KINGS, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF BLAKE AVENUE, DISTANT 60 FEET EASTERLY FROM THE NORTHEASTERLY CORNER OF BLAKE AVENUE AND LEGION STREET, FORMERLY BARRETT STREET;

RUNNING THENCE EASTERLY ALONG THE NORTHERLY SIDE OF BLAKE AVENUE, 20 FEET TO A POINT OPPOSITE A PART WALL, STANDING PARTLY ON SAID PREMISES AND PARTLY ON THE LOT NEXT EASTERLY ADJOINING.

THENCE NORTHERLY PARALLEL WITH SAID LEGION STREET AND PART OF THE DISTANCE THROUGH A PARTY WALL, 100 FEET, 5 ½ INCHES;

THENCE WESTERLY PARALLEL WITH BLAKE AVENUE, 20 FEET;

THENCE SOUTHERLY AGAIN PARALLEL WITH SAID LEGION STREET, 100 FEET, 5 ½ INCHES TO THE POINT OR PLACE OF BEGINNING.

**THE** policy to be issued under this report will insure the title to such buildings and improvements erected on the premises, which by law constitute real property.

**FOR CONVEYANCING ONLY: TOGETHER** with all the right, title and interest of the party of the first part, of in and to the land lying in the street in front of and adjoining said premises.

*U02238459*
5671 10/31/2011 [redacted] 1

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2011110200495001002S192B

**SUPPORTING DOCUMENT COVER PAGE** **PAGE 1 OF 1**

**Document ID: 2011110200495001** Document Date: 10-01-2011 Preparation Date: 11-02-2011
Document Type: MORTGAGE AND CONSOLIDATION

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| 255 MORTGAGE TAX EXEMPT AFFIDAVIT | 2 |

**AFFIDAVIT UNDER SECTION 255 OF THE NEW YORK STATE LAW (MODIFICATION AGREEMENT)**

State of Iowa}
}SS
County of Black Hawk}

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

I, Jennifer Meester, Authorized Officer, being duly sworn, deposes

and says:

1. That he/she is the agent for the owner and holder of the hereinafter described mortgage, and is familiar with the facts set forth herein.

2

Mortgage made by Sherry Ann Murray to Professional Mortgage Bankers Corp. for $140,325.00 and interest, dated 02/09/2005 and recorded 03/02/2005 in/as CRFN 2005000124847. Mortgage Tax Paid: $8,781.00

This mortgage was assigned to Mortgage Electronic Registration Systems, Inc. by an assignment dated 04/27/2005 and recorded 05/19/2005 in (as) CRFN 2005000290573.

~~Balance remaining of $376,169.50~~

3. The instrument offered for recording herewith is a Modification made between SHERRY ANN MURRAY and GMAC MORTGAGE LLC effective, 10/1/2011 ,
And to be recorded in the KINGS County Clerk's office.

4. The instrument offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other then the principal indebtedness or obligation secured by or which under contingency may be secured by the recorded Mortgage hereinabove first described with the exception of the following amount:

a) Unpaid principal balance $376,169.50
b) New unpaid principal balance $ 378,884.48
c) B minus a equals $2,714.98
d) Additional obligation secured by mortgage as modified

Additional mortgage recording tax of $ 47.25 is therefore being paid on this Modification on the sum set forth in 4c.

That Exemption from further tax is CLAIMED under Section 255 of the Tax Law.

Printed Name: Jennifer Meester
Job Title: Authorized Officer

SEAL

Sworn before me to this
Date: 10-27-2011

Notary Public:
My Commission Expires:

YESENIA CARRILLO
COMMISSION NO. 748479
MY COMMISSION EXPIRES
APRIL 18, 2019

*U02244128*
5671 11/2/2011 [redacted]/2

## AFFIDAVIT UNDER SECTION 255 OF THE NEW YORK STATE LAW (MODIFICATION AGREEMENT)

State of Iowa}
}SS
County of Black Hawk}

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

I, Jennifer Meester, Authorized Officer, being duly sworn, deposes

and says:

1. That he/she is the agent for the owner and holder of the hereinafter described mortgage, and is familiar with the facts set forth herein.

2

Mortgage made by Sherry Ann Murray to Professional Mortgage Bankers Corp. for $440,325.00 and interest, dated 02/09/2005 and recorded 03/02/2005 in/as CRFN 2005000124847. Mortgage Tax Paid: $8,781.00

This mortgage was assigned to Mortgage Electronic Registration Systems, Inc. by an assignment dated 04/27/2005 and recorded 05/19/2005 in (as) CRFN 2005000290573.

~~Balance remaining of $376,169.50~~

3. The instrument offered for recording herewith is a Modification made between SHERRY ANN MURRAY and GMAC MORTGAGE LLC effective, 10/1/2011 ,
And to be recorded in the KINGS County Clerk's office.

4. The instrument offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other then the principal indebtedness or obligation secured by or which under contingency may be secured by the recorded Mortgage hereinabove first described with the exception of the following amount:

a) Unpaid principal balance $376,169.50
b) New unpaid principal balance $ 378,884.48
c) B minus a equals $2,714.98
d) Additional obligation secured by mortgage as modified

Additional mortgage recording tax of $ 47.25 is therefore being paid on this Modification on the sum set forth in 4c.

That Exemption from further tax is CLAIMED under Section 255 of the Tax Law.

[signature]
Printed Name: Jennifer Meester
Job Title: Authorized Officer

Sworn before me to this
Date: 10-27-2011
[signature]
Notary Public:
My Commission Expires:

YESENIA CARRILLO
COMMISSION NO. 746479
MY COMMISSION EXPIRES
APRIL 18, 2013

*U02244128*
5671 11/2/2011 [redacted]2

PETROFF AMSHEN

Serge F. Petroff
Steven Amshen*
James Tierney
Jill Schaefer
Maria Graber
(*admitted in New York & New Jersey)

May 6, 2024

# QUALIFIED WRITTEN REQUEST

**YOU MUST ACKNOWLEDGE RECEIPT OF THIS QUALIFIED WRITTEN REQUEST WITHIN 20 BUSINESS DAYS, PURSUANT TO 12 U.S.C. SECTION 2605(E)(1)(A) AND REG. X SECTION 3500.21(E)(1).**

NewRez LLC
PO Box 10826
Greenville, SC 29603-0826

| | |
|---|---|
| Borrower(s): | Sherry Ann Murray |
| Loan No.: | [redacted] |
| Property Address: | 87 Blake Ave, Brooklyn, New York 11212 |

Dear Sir or Madam:

This office represents the above-referenced borrower. Please treat this letter as a qualified written request under the Federal Servicer Act, which is part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e). Specifically, we are requesting the following information:

1. A list of all servicers of the loan from its inception to the date of this letter.

2. A list of all investors of the loan from its inception to the date of this letter.

3. A copy of the disclosure of “credit” or charge (points) for the specific interest rate chosen at inception of the loan. Please explain whether there was a credit or a charge and how it was applied to the loan.

4. A copy of the HUD-1 or HUD-1A Settlement Statement.

5. A copy of all settlement services provided to the borrower at origination, including appraisal and flood certification fees, title service fees, recording charges, transfer tax charges, initial deposit for escrow account, daily interest charges, and homeowner’s insurance charges.

6. A copy of the escrow account analysis performed on the loan from inception to the date of this letter, and proof each escrow account analysis was sent to borrower.

7. A copy of all escrow disbursements made by the servicer.

8. A copy of all invoices and receipts of payments on all escrow disbursements by the servicer.

**Brooklyn Office**
1795 Coney Island Ave, Third Floor
Brooklyn, New York 11230
Tel: 718.336.4200
Fax: 718.336.4242

**Long Island Office**
401 Franklin Avenue, Suite 212
Garden City, New York 11530
Tel: 516.200.8999
Fax: 888.502.7302

9. A copy of all notices of servicing transfers that were provided to the borrower, including proof of mailing.

10. All communications from the servicers to the investors regarding the loan from its inception to the date of this letter.

11. All communications from the investors to the servicers regarding the loan from its inception to the date of this letter.

12. A complete and itemized statement of the payment history from the inception of the loan to the date of this letter.

13. A complete and itemized statement of all advances or charges against the loan for any purpose not reflected on the loan history transaction statement.

14. A complete and itemized statement of the escrow account for the loan from its inception to the date of this letter, including receipts of disbursements with respect to real estate property taxes, fire or hazard insurance, flood insurance, mortgage insurance, credit insurance, or any other insurance product associated with the loan.

15. A complete and itemized statement from the date of the loan to the date of this letter of any suspense account entries and/or any corporate advance entries related in any way to this loan. This request includes the receipt for all corporate advance charges specifying the reason for this charge.

16. A complete and itemized statement of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, and bankruptcy monitoring fees from the inception of the loan to the date of this letter.

17. A copy of receipts and invoices for all property inspection fees, property preservation fees, broker opinion fees, appraisal fees, and bankruptcy monitoring fees from the inception of the loan to the date of this letter.

18. A copy of all property inspection reports and appraisals.

19. A full and complete comprehensible definitional dictionary of all the transaction codes and other similar terms used in the statements requested above.

20. A complete and itemized statement of the amount, payment date, purpose and recipient of all foreclosure expenses, NSF check charges, legal fees, attorney fees, professional fees, and other expenses and costs that have been charged against or assessed to this loan from its inception to the date of this letter.

21. The name, address, and phone number of the current holder of the loan, including the name, address, and phone number of any trustee.

22. The name, address, and phone number of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers, or special servicers for the loan.

23. The name, address, and phone number of any trustee under any pooling and serving agreement related to this loan.

24. Copies of all servicing, master servicing, sub-servicing, contingency servicing, special servicing, or back-up servicing agreements, including all powers of attorney and limited powers of attorney.

25. All written guidelines that were used by each investor and/or servicer of this loan from its inception to the date of this letter. This includes the guidelines used during origination and for loss mitigation.

26. The procedural manual used with respect to the servicing or sub-servicing of the loan.

27. The agreement where the investor of the loan unequivocally exits and forever surrenders all rights to any possible compensation, or other tangible or intangible gain, from any governmental programs that are currently available to the borrower.

28. The payment dates, purpose of payment, and recipient of all foreclosure fees and costs that have been charged to our account.

29. A copy of all receipts and invoices of all foreclosure fee and costs that have been charged to our account

30. Please provide the name and address of each attorney that has been paid any fees or expenses related to my account from the inception of my loan to the present. This should include a detailed breakdown of all attorneys' fees incurred.

Please send your response to this qualified written request to:

Petroff Amshen LLP
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230

Sincerely,

Yunna Ivzhenko
Senior Paralegal
Petroff Amshen LLP

STATE OF NEW YORK
COUNTY OF KINGS

**AFFIRMATION OF SERVICE**

I, Yunna Ivzhenko, the undersigned and senior paralegal, being duly sworn, says:

I am not a party to the action, I reside in Kings County, New York, and I am over 18 years of age. On May 6th, 2024, I served the within **Qualified Written Request on behalf of Sherry Ann Murray** via First Class Mail by dropping the same in a designated United States Postal Service Drop Box, addressed to the following at the last known address set forth below:

NewRez LLC
PO Box 10826
Greenville, SC 29603-0826

Yunna Ivzhenko

PETROFF AMSHEN

Serge F. Petroff
Steven Amshen*
James Tierney
Jill Schaefer
Maria Graber
(*admitted in New York & New Jersey)

May 6, 2024

# QUALIFIED WRITTEN REQUEST

**YOU MUST ACKNOWLEDGE RECEIPT OF THIS QUALIFIED WRITTEN REQUEST WITHIN 20 BUSINESS DAYS, PURSUANT TO 12 U.S.C. SECTION 2605(E)(1)(A) AND REG. X SECTION 3500.21(E)(1).**

PHH Mortgage Services
PO Box 66002
Lawrenceville, NJ 08648

| | |
|---|---|
| Borrower(s): | Sherry Ann Murray |
| Loan No.: | [redacted] |
| Property Address: | 87 Blake Ave, Brooklyn, New York 11212 |

Dear Sir or Madam:

This office represents the above-referenced borrower. Please treat this letter as a qualified written request under the Federal Servicer Act, which is part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e). Specifically, we are requesting the following information:

1. A list of all servicers of the loan from its inception to the date of this letter.

2. A list of all investors of the loan from its inception to the date of this letter.

3. A copy of the disclosure of “credit” or charge (points) for the specific interest rate chosen at inception of the loan. Please explain whether there was a credit or a charge and how it was applied to the loan.

4. A copy of the HUD-1 or HUD-1A Settlement Statement.

5. A copy of all settlement services provided to the borrower at origination, including appraisal and flood certification fees, title service fees, recording charges, transfer tax charges, initial deposit for escrow account, daily interest charges, and homeowner’s insurance charges.

6. A copy of the escrow account analysis performed on the loan from inception to the date of this letter, and proof each escrow account analysis was sent to borrower.

7. A copy of all escrow disbursements made by the servicer.

8. A copy of all invoices and receipts of payments on all escrow disbursements by the servicer.

**Brooklyn Office**
1795 Coney Island Ave, Third Floor
Brooklyn, New York 11230
Tel: 718.336.4200
Fax: 718.336.4242

**Long Island Office**
401 Franklin Avenue, Suite 212
Garden City, New York 11530
Tel: 516.200.8999
Fax: 888.502.7302

9. A copy of all notices of servicing transfers that were provided to the borrower, including proof of mailing.

10. All communications from the servicers to the investors regarding the loan from its inception to the date of this letter.

11. All communications from the investors to the servicers regarding the loan from its inception to the date of this letter.

12. A complete and itemized statement of the payment history from the inception of the loan to the date of this letter.

13. A complete and itemized statement of all advances or charges against the loan for any purpose not reflected on the loan history transaction statement.

14. A complete and itemized statement of the escrow account for the loan from its inception to the date of this letter, including receipts of disbursements with respect to real estate property taxes, fire or hazard insurance, flood insurance, mortgage insurance, credit insurance, or any other insurance product associated with the loan.

15. A complete and itemized statement from the date of the loan to the date of this letter of any suspense account entries and/or any corporate advance entries related in any way to this loan. This request includes the receipt for all corporate advance charges specifying the reason for this charge.

16. A complete and itemized statement of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, and bankruptcy monitoring fees from the inception of the loan to the date of this letter.

17. A copy of receipts and invoices for all property inspection fees, property preservation fees, broker opinion fees, appraisal fees, and bankruptcy monitoring fees from the inception of the loan to the date of this letter.

18. A copy of all property inspection reports and appraisals.

19. A full and complete comprehensible definitional dictionary of all the transaction codes and other similar terms used in the statements requested above.

20. A complete and itemized statement of the amount, payment date, purpose and recipient of all foreclosure expenses, NSF check charges, legal fees, attorney fees, professional fees, and other expenses and costs that have been charged against or assessed to this loan from its inception to the date of this letter.

21. The name, address, and phone number of the current holder of the loan, including the name, address, and phone number of any trustee.

22. The name, address, and phone number of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers, or special servicers for the loan.

23. The name, address, and phone number of any trustee under any pooling and serving agreement related to this loan.

24. Copies of all servicing, master servicing, sub-servicing, contingency servicing, special servicing, or back-up servicing agreements, including all powers of attorney and limited powers of attorney.

25. All written guidelines that were used by each investor and/or servicer of this loan from its inception to the date of this letter. This includes the guidelines used during origination and for loss mitigation.

26. The procedural manual used with respect to the servicing or sub-servicing of the loan.

27. The agreement where the investor of the loan unequivocally exits and forever surrenders all rights to any possible compensation, or other tangible or intangible gain, from any governmental programs that are currently available to the borrower.

28. The payment dates, purpose of payment, and recipient of all foreclosure fees and costs that have been charged to our account.

29. A copy of all receipts and invoices of all foreclosure fee and costs that have been charged to our account

30. Please provide the name and address of each attorney that has been paid any fees or expenses related to my account from the inception of my loan to the present. This should include a detailed breakdown of all attorneys' fees incurred.

Please send your response to this qualified written request to:

Petroff Amshen LLP
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230

Sincerely,

Yunna Ivzhenko
Senior Paralegal
Petroff Amshen LLP

STATE OF NEW YORK
COUNTY OF KINGS

**AFFIRMATION OF SERVICE**

I, Yunna Ivzhenko, the undersigned and senior paralegal, being duly sworn, says:

I am not a party to the action, I reside in Kings County, New York, and I am over 18 years of age. On May 6th, 2024, I served the within **Qualified Written Request on behalf of Sherry Ann Murray** via First Class Mail by dropping the same in a designated United States Postal Service Drop Box, addressed to the following at the last known address set forth below:

PHH Mortgage Services
PO Box 66002
Lawrenceville, NJ 08648

Yunna Ivzhenko

PETROFF AMSHEN

Serge F. Petroff
*Steven Amshen
James Tierney
Jill Schaefer
Maria Garber

(*admitted in New York & New Jersey)

June 18, 2024

# SECOND REQUEST

# QUALIFIED WRITTEN REQUEST

**YOU MUST RESPOND TO THIS QUALIFIED WRITTEN REQUEST PURSUANT TO 12 U.S.C. § 2605(e) AND 12 CFR § 1024.36**

**VIA FIRST CLASS MAIL**
NewRez LLC
PO Box 10826
Greenville, SC 29603-0826

**Borrower(s):** Sherry Ann Murray
**Loan Number:** [redacted]
**Property Address:** 87 Blake Ave, Brooklyn, New York 11212

Dear Sir or Madam:

This office represents the above-referenced borrower(s). Please treat this letter as a qualified written request under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), and respond accordingly. Specifically, we are requesting the following information regarding the referenced mortgage loan:

1. Identify the current servicer of the loan and any prior servicers, including the dates and entities involved in any service transfers to date. Provide the address, phone number, and any other applicable contact information for any servicers identified in response to this request.

2. Identify the current owner/investor of the loan and any prior owners/investors, including the dates and entities involved in any ownership transfers to date. Provide the address, phone number, and any other applicable contact information for any owners/investors identified in response to this request.

3. Provide a complete copy of the loan origination file, including the note, mortgage, HUD-1/settlement statement, borrower disclosures, and any other documents provided to and/or signed by the borrower(s) at closing.

4. Provide copies of any written assignments of the mortgage, recorded or unrecorded.

5. Provide a copy of the original note as it exists as of the date of this request, including any endorsements and/or allonges.

6. Identify the individual or entity currently in physical possession of the original "wet-ink" note, including the address where the original note is being stored.

7. Identify any mortgage points or credits applied to the loan at origination, and any associated fees paid by the borrower(s). Please explain whether there was a credit or a charge, and how it was applied to the loan. Provide copies of any associated disclosures provided to or signed by the borrower(s), including interest rate disclosures.

8. Identify the date and amount of each payment of principal, interest, and/or escrow received on the loan, from inception to date.

9. Identify each payment amount, payment date, purpose of payment, and recipient of any and all fees and costs that have been charged or added to the account, including but not limited to any and all (i) escrow advances, (ii) attorneys' and/or legal fees and expenses, (iii) foreclosure related fees and expenses, (iv) property inspection and/or preservation fees and expenses, and (v) other charges included in any servicer or "corporate" advance balance.

10. Identify the name and address of each attorney that has been paid any fees or expenses related to the loan and added to the account balance, from the inception of the loan to the present. This should include a detailed breakdown of all attorneys' fees incurred.

11. Provide itemized payoff and reinstatement figures as of the date of this letter.

12. Provide a complete payment history, including all payments, credits, disbursements, and/or fees applied to the account, and how each was applied (including any application to principal, interest, escrow, and/or other charges, and any amounts held in suspense).

13. Provide copies of each escrow account analysis performed on the loan from inception to the date of this letter.

14. Provide copies of all servicing transfer notices mailed to the borrower(s), including proof of mailing.

15. Provide copies of all property inspection and/or preservation reports, appraisals, broker price opinions, bankruptcy and/or foreclosure monitoring reports, and an invoice or payment receipt for each fee paid in connection with any of the foregoing and charged to the loan account.

Please send your response to this qualified written request to:

Petroff Amshen LLP
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230

Sincerely,
PETROFF AMSHEN LLP
Yunna Ivzhenko, Senior Paralegal

STATE OF NEW YORK
COUNTY OF KINGS

**AFFIRMATION OF SERVICE**

I, Yunna Ivzhenko, the undersigned and senior paralegal, being duly sworn, says:

I am not a party to the action, I reside in Kings County, New York, and I am over 18 years of age. On June 18th, 2024, I served the within **Qualified Written Request on behalf of Sherry Ann Murray** via First Class Mail by dropping the same in a designated United States Postal Service Drop Box, addressed to the following at the last known address set forth below:

NewRez LLC
PO Box 10826
Greenville, SC 29603-0826

[signature]
Yunna Ivzhenko

PETROFF AMSHEN

Serge F. Petroff
*Steven Amshen
James Tierney
Jill Schaefer
Maria Garber

*(*admitted in New York & New Jersey)*

June 18, 2024

# SECOND REQUEST

# QUALIFIED WRITTEN REQUEST

**YOU MUST RESPOND TO THIS QUALIFIED WRITTEN REQUEST PURSUANT TO 12 U.S.C. § 2605(e) AND 12 CFR § 1024.36**

**VIA FIRST CLASS MAIL**
PHH Mortgage Services
PO Box 66002
Lawrenceville, NJ 08648

**Borrower(s):** Sherry Ann Murray
**Loan Number:** [redacted]
**Property Address:** 87 Blake Ave, Brooklyn, New York 11212

Dear Sir or Madam:

This office represents the above-referenced borrower(s). Please treat this letter as a qualified written request under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), and respond accordingly. Specifically, we are requesting the following information regarding the referenced mortgage loan:

1. Identify the current servicer of the loan and any prior servicers, including the dates and entities involved in any service transfers to date. Provide the address, phone number, and any other applicable contact information for any servicers identified in response to this request.

2. Identify the current owner/investor of the loan and any prior owners/investors, including the dates and entities involved in any ownership transfers to date. Provide the address, phone number, and any other applicable contact information for any owners/investors identified in response to this request.

3. Provide a complete copy of the loan origination file, including the note, mortgage, HUD-1/settlement statement, borrower disclosures, and any other documents provided to and/or signed by the borrower(s) at closing.

4. Provide copies of any written assignments of the mortgage, recorded or unrecorded.

5. Provide a copy of the original note as it exists as of the date of this request, including any endorsements and/or allonges.

6. Identify the individual or entity currently in physical possession of the original "wet-ink" note, including the address where the original note is being stored.

7. Identify any mortgage points or credits applied to the loan at origination, and any associated fees paid by the borrower(s). Please explain whether there was a credit or a charge, and how it was applied to the loan. Provide copies of any associated disclosures provided to or signed by the borrower(s), including interest rate disclosures.

8. Identify the date and amount of each payment of principal, interest, and/or escrow received on the loan, from inception to date.

9. Identify each payment amount, payment date, purpose of payment, and recipient of any and all fees and costs that have been charged or added to the account, including but not limited to any and all (i) escrow advances, (ii) attorneys' and/or legal fees and expenses, (iii) foreclosure related fees and expenses, (iv) property inspection and/or preservation fees and expenses, and (v) other charges included in any servicer or "corporate" advance balance.

10. Identify the name and address of each attorney that has been paid any fees or expenses related to the loan and added to the account balance, from the inception of the loan to the present. This should include a detailed breakdown of all attorneys' fees incurred.

11. Provide itemized payoff and reinstatement figures as of the date of this letter.

12. Provide a complete payment history, including all payments, credits, disbursements, and/or fees applied to the account, and how each was applied (including any application to principal, interest, escrow, and/or other charges, and any amounts held in suspense).

13. Provide copies of each escrow account analysis performed on the loan from inception to the date of this letter.

14. Provide copies of all servicing transfer notices mailed to the borrower(s), including proof of mailing.

15. Provide copies of all property inspection and/or preservation reports, appraisals, broker price opinions, bankruptcy and/or foreclosure monitoring reports, and an invoice or payment receipt for each fee paid in connection with any of the foregoing and charged to the loan account.

Please send your response to this qualified written request to:

Petroff Amshen LLP
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230

Sincerely,
PETROFF AMSHEN LLP
Yunna Ivzhenko, Senior Paralegal

STATE OF NEW YORK
COUNTY OF KINGS

**AFFIRMATION OF SERVICE**

I, Yunna Ivzhenko, the undersigned and senior paralegal, being duly sworn, says:

I am not a party to the action, I reside in Kings County, New York, and I am over 18 years of age. On June 18th, 2024, I served the within **Qualified Written Request on behalf of Sherry Ann Murray** via First Class Mail by dropping the same in a designated United States Postal Service Drop Box, addressed to the following at the last known address set forth below:

PHH Mortgage Services
PO Box 66002
Lawrenceville, NJ 08648

[signature]
Yunna Ivzhenko

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERRY ANN MURRAY,<br><br>Plaintiff,<br><br>-against-<br><br>NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING; and PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES,<br><br>Defendants. | Civil Action<br>Case No.: 1:24-cv-6160<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff Sherry Ann Murray ("Plaintiff"), by and through her attorneys, Petroff Amshen LLP, as and for her first amended complaint against the defendants named herein (collectively, "Defendants"), hereby alleges the following upon personal knowledge, review of public record, and/or otherwise upon information and belief:

1. Plaintiff brings this action for damages arising under the Real Estate Settlement Procedures Act ("RESPA") and its implementing Regulation X (12 U.S.C. § 2601, *et seq.* and 12 C.F.R. § 1024.1, *et seq.*), and N.Y. Real Property Law, resulting from the Defendants' failure to respond to Plaintiff's qualified written requests for information related to her mortgage loan account, failure to disclose finance charges and other fees added to Plaintiff's mortgage loan balance, and other practices prohibited by federal and state consumer protection laws.

## PARTIES

2. Plaintiff is an individual and resident of the State of New York, Kings County, residing at 87 Blake Avenue, Brooklyn, New York 11212.

3. Defendant Newrez LLC ("Newrez") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 601 Office Center Drive,

Suite 100, Fort Washington, Pennsylvania 19034, and registered agent for service in New York c/o Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

4. Newrez is a mortgage loan servicer operating in New York under exempt mortgage loan servicer registration number S000537. Newrez also does business in New York under the trade name Shellpoint Mortgage Servicing ("Shellpoint").

5. Upon information and belief, Newrez is a wholly-owned subsidiary of New Residential Investment Corp. ("New Residential").

6. Defendant PHH Mortgage Corporation ("PHH") is a corporation organized under the laws of the State of New Jersey, with its principal place of business at 2000 Midlantic Drive, Suite 410-A, Mount Laurel, New Jersey 08054, and registered agent for service in New York c/o Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

7. PHH is a mortgage loan servicer operating in New York under exempt mortgage loan servicer registration number S000102-2726. PHH also does business in New York using the trade name PHH Mortgage Services.

## JURISDICTION

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims substantially arise under federal law.

9. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to Plaintiff's claims occurred in this district, and the mortgaged property underlying Plaintiff's claims is situated in this district.

## STATEMENT OF FACTS

10. Plaintiff is the owner of real property located at 87 Blake Avenue, Brooklyn, New York 11212 (the "Property").

11. Plaintiff is the obligor on a mortgage dated February 9, 2005, securing repayment of a loan in the original principal amount of $440,325.00, executed in favor of Professional Mortgage Bankers Corp. (the "Mortgage"). The Mortgage was recorded as a lien against the Property on March 2, 2005, under CRFN 2005000124847. A true and correct copy of the recorded Mortgage is annexed hereto as **Exhibit 1**.

12. The Mortgage was subsequently modified via a loan modification agreement between Plaintiff and GMAC Mortgage, LLC ("GMAC") dated October 1, 2011 (the "Modification"), which was recorded on November 14, 2011, under CRFN 2011000395248. A true and correct copy of the recorded Modification is annexed hereto as **Exhibit 2**.

13. The Modification effectively increased the total principal owed on the loan to $510,602.15, $131,717.67 of which is a balloon payment due in full at maturity. *See* Ex. 2 (Modification ¶ 1).

14. Specifically, the Modification includes a balloon payment disclosure advising that a balloon payment in the amount of $131,717.67, representing the "Deferred Principal Balance" of the loan, will be due at maturity. *See* Ex. 2.

15. While the Modification purports to defer $131,717.67 of the "old principal balance (the balance due prior to the date of th[e] loan modification)" of $510,602.15, leaving a "New Principal Balance" of $378,884.48, it provides no information regarding the amounts included in either the "Deferred Principal Balance," or the "New Principal Balance," of Plaintiff's loan. *See id.*

16. Given that the "old principal balance" identified in the Modification represents a $70,277.15 <u>increase</u> in the original principal owed on the loan, nearly seven years into the loan

term, no less than $70,277.15 in undisclosed and unidentified fees, interest, advances, and other charges and amounts (collectively, the "Capitalized Sums") were added to Plaintiff's loan balance.

17. Upon information and belief, the Capitalized Sums added to Plaintiff's loan balance before the Modification well exceeded $70,277.15, as Plaintiff's actual unpaid principal had been reduced from the original amount by years of monthly principal and interest payments Plaintiff made under the Mortgage.

18. Upon information and belief, the Capitalized Sums added to Plaintiff's loan balance were excessive, illegal, and/or improper. The nature of these fees and other capitalized amounts was not fully or properly disclosed to Plaintiff or her attorneys in connection with the Modification, nor were they fully or properly identified or disclosed to Plaintiff when they were added to her account or loan balance.

19. Upon further information and belief, Plaintiff was also charged interest on the Capitalized Sums, which was also added to her loan balance.

20. Upon information and belief, following the Modification and continuing to date, Defendants and their predecessors-in-interest continued adding excessive, improper, and/or illegal Capitalized Sums to Plaintiff's loan balance, which amounts continue to accrue interest on an ongoing basis.

21. Although the terms of the Mortgage permit the "Lender" to take action to protect its interest in the Property and rights under the Mortgage, and to seek reimbursement from the borrower for amounts expended to do so, Plaintiff must be given notice of any request for payment of these amounts. *See* Ex. 1 (Mortgage ¶ 9).

22. Specifically, Paragraph 9 of the Mortgage provides:

> I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice

> requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

*See id.*

23. Plaintiff did not receive notice of any request for payment of any amounts purportedly expended under Paragraph 9 of the Mortgage, including any Capitalized Sums, before, in connection with, or after execution of the Modification.

24. Plaintiff also did not receive notice of any servicing transfers related to her Mortgage loan account following execution of the Modification and, upon information and belief, no such notices were ever sent. As a result, Plaintiff did not know who to contact to obtain information regarding her mortgage loan account.

25. Notably, just a few months after Plaintiff executed the Modification, "49 state attorneys general, the District of Columbia, and the federal government entered into the largest consumer financial protection settlement in U.S. history with what were then the nation's five largest mortgage servicers," including GMAC. *See* "What was the National Mortgage Settlement?", Consumer Financial Protection Bureau, September 8, 2020, accessible at https://www.consumerfinance.gov/ask-cfpb/what-was-the-national-mortgage-settlement-en-2071/.

26. In a complaint filed March 14, 2012, the DOJ and Attorneys General of 49 states sought civil penalties and other relief against GMAC and its related entities, among others, "for misconduct related to their origination and servicing of single family residential mortgages" and violation of various state and federal consumer protection laws. *See U.S. v. Bank of Am. Corp., et al.*, Case No. 1:12-cv-00361-RMC, ECF Doc. No. 4-1 (U.S. Dist. Ct., D.C., Mar. 14, 2012).

27. Shortly thereafter, GMAC and its related entities entered into a consent judgment filed April 4, 2012, wherein GMAC agreed to pay the sum of $109,628,425.00 to settle the foregoing claims that it violated, "among other laws, the Unfair and Deceptive Acts and Practices laws of the Plaintiff States, the False Claims Act, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, the Servicemembers Civil Relief Act, and the Bankruptcy Code and Federal Rules of Bankruptcy Procedure." *See id.*, Doc. No. 13.

28. On May 14, 2012, GMAC filed a voluntary Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the Southern District of New York under Case No. 12-12032-mg. Upon information and belief, the bankruptcy court approved a plan under which GMAC was liquidated, and all of its assets were assigned to the ResCap Liquidating Trust.

29. Upon information and belief, on February 15, 2013, Ocwen Loan Servicing, LLC, a wholly owned subsidiary of Ocwen Financial Corporation (collectively, "Ocwen"), acquired the assets of GMAC and its related entities in connection with the bankruptcy liquidation and asset sale.

30. Upon information and belief, pursuant to a Master Agreement and Transfer Agreement dated on or about July 23, 2017, Ocwen sold its nearly $110 billion portfolio of mortgage loan servicing rights (including Plaintiff's loan) to New Residential, and/or various of its affiliates and/or subsidiaries including Newrez, but continued servicing the loans until the servicing rights could be formally transferred.

31. Upon further information and belief, PHH is or was a wholly-owned subsidiary of Ocwen, which merged with PHH on or about October 4, 2018, and began conducting its mortgage servicing business under the PHH tradename.

32. Upon information and belief, pursuant to a subservicing agreement between Ocwen and New Residential, PHH has been the servicer or subservicer of Plaintiff's Mortgage loan account since in or about 2018.

33. Upon further information and belief, Newrez has been the master servicer of Plaintiff's Mortgage since on or about April 4, 2019.

34. On May 6, 2024, on Plaintiff's behalf, Plaintiff's attorneys mailed separate Qualified Written Requests (the "QWRs") to Newrez (the "Newrez QWR") and PHH (the "PHH QWR"), to obtain information about the servicing of her Mortgage loan account, and clarity regarding the amounts included in the modified loan balance. True and correct copies of the QWRs, with proofs of service, are annexed hereto as **Exhibit 3** and **Exhibit 4**.

35. Because Plaintiff never received notice of any servicing transfers, the QWRs specifically sought copies of all servicing transfer notices, to allow Plaintiff to identify the entities involved in the servicing of her loan, and the time periods during which each was responsible for servicing the loan.

36. The QWRs also requested complete loan and escrow histories, and an itemization and explanation of all fees and other amounts charged to Plaintiff's account and/or added to the loan balance since origination. *See* Exs. 3, 4.

37. Newrez never acknowledged receipt of the Newrez QWR and, to date, it has not provided a written response (or a response of any kind).

38. PHH never acknowledged receipt of the PHH QWR and, to date, it has not provided a written response (or a response of any kind).

39. Still in the dark regarding crucial information related to the loan account, on June 18, 2024, on Plaintiff's behalf, Plaintiff's attorneys mailed a second QWR to Newrez (the "Second

Newrez QWR"), and a second QWR to PHH (the "Second PHH QWR"), again seeking servicing information, loan and escrow histories, and an itemization and explanation of fees and other charges added to the loan balance. True and correct copies of the Second Newrez QWR and the Second PHH QWR, with proofs of service, are annexed hereto as **Exhibit 5** and **Exhibit 6**.

40. Newrez never acknowledged receipt of the Second Newrez QWR and, to date, it has not provided a written response (or a response of any kind).

41. PHH never acknowledged receipt of the Second PHH QWR and, to date, it has not provided a written response (or a response of any kind).

42. Each Defendant's refusal to adhere to required servicing practices, including failing to provide Plaintiff with notices of servicing transfers and other account information, and also failing to acknowledge or respond to two separate QWRs, establishes a pattern and practice of noncompliance.

43. This pattern and practice of noncompliance is further evidenced by numerous other lawsuits and regulatory actions taken against the Defendants and their affiliates for similar unlawful practices and violations of consumer protection laws, reflecting consumer-oriented conduct with a broader impact on consumers at large. For example:

a. PHH and Newrez were named in a class action lawsuit filed in the U.S. District Court for the District of Massachusetts on April 21, 2023, under Case No. 1:23-cv-10857, which alleges that Defendants "fail[ed] to adequately respond to borrowers' requests for account information," and refused to produce information like recordings and transcripts of conversations for "hundreds if not thousands of consumers that have requested them."

b. PHH was also the subject of a 2018 lawsuit filed in the U.S. District Court for the District of Columbia, under Case No. 1:18-cv-00009, in which the attorneys general of 49 states and the District of Columbia alleged that PHH, individually or through its affiliates or subsidiaries, violated state and federal consumer protection laws by failing to correctly apply payments, charging unauthorized fees, failing to maintain proper records, and failing to properly oversee third-party vendors, among other things. The lawsuit resulted in a consent judgment filed on January 3, 2018,

wherein PHH agreed to pay more than $45 million in consumer redress, administrative penalties, and other penalties.

c. Upon information and belief, Newrez's parent company, New Residential, acquired the servicing rights for the full $110 billion mortgage servicing portfolio of Ocwen, d/b/a PHH.

d. In 2017, the Consumer Financial Protection Bureau ("CFPB") sued Ocwen and its subsidiaries "for failing borrowers at every stage of the mortgage servicing process." *See* CFPB Press Release dated April 20, 2017, accessible at https://www.consumerfinance.gov/about-us/newsroom/cfpb-sues-ocwen-failing-borrowers-throughout-mortgage-servicing-process/. The CFPB "uncovered substantial evidence that Ocwen has engaged in significant and systemic misconduct at nearly every stage of the mortgage servicing process," and alleged that

> Ocwen's years of widespread errors, shortcuts, and runarounds cost some borrowers money and others their homes. Ocwen allegedly botched basic functions like sending accurate monthly statements, properly crediting payments, and handling taxes and insurance. Allegedly, Ocwen also illegally foreclosed on struggling borrowers, ignored customer complaints, and sold off the servicing rights to loans without fully disclosing the mistakes it made in borrowers' records. . . .
>
> If an error is made in the servicing of a mortgage loan, a servicer must generally either correct the error identified by the borrower, called a notice of error, or investigate the alleged error. Since 2014, Ocwen has allegedly routinely failed to properly acknowledge and investigate complaints, or make necessary corrections. . . .
>
> Ocwen has allegedly failed to include complete and accurate borrower information when it sold its rights to service thousands of loans to new mortgage servicers. This has hampered the new servicers' efforts to comply with laws and investor guidelines.

*Id.* The Florida Attorney General filed a similar lawsuit, and numerous state financial regulators also took regulatory action against Ocwen for these practices. *See id.*

e. Upon information and belief, Newrez acquired Specialized Loan Servicing LLC ("SLS"), which was rebranded as Shellpoint on or about May 1, 2024. Newrez does business under the trade name Shellpoint. Shellpoint is one of the country's largest non-bank mortgage servicers.

f. In 2022, Newrez d/b/a Shellpoint agreed to settle a class action lawsuit filed in the U.S. District Court for the Eastern District of Pennsylvania, under Case No. 2:21-cv-2062, that alleged it sent misleading mortgage statements to borrowers. Under the terms of the settlement, Shellpoint agreed to pay $500,000.00 to borrowers

whose mortgage loans it serviced, and to implement changes in its servicing practices and policies.

g. SLS was the subject of a CFPB investigation which found that, "since January 2014, SLS violated RESPA and Regulation X by taking prohibited foreclosure actions against mortgage borrowers who were entitled to protection from foreclosure, and by failing to send or to timely send evaluation notices to mortgage borrowers who were entitled to them. These violations also constitute violations of the Consumer Financial Protection Act of 2010." *See* CFPB Press Release dated May 11, 2020, accessible at https://www.consumerfinance.gov/about-us/newsroom/cfpb-settles-specialized-loan-servicing/. "As of February 29, 2020, SLS serviced a portfolio of mortgage loans worth about $112.69 billion." *See id.* On May 11, 2020, the CFPB entered into a settlement with SLS, requiring SLS to pay "$1.275 million in monetary relief to consumers in the form of redress and waiver of borrower deficiencies, pay a $250,000 civil money penalty, . . . and implement procedures to ensure compliance with the Real Estate Settlement Procedures Act (RESPA) and its implementing regulation, Regulation X." *See id.*

h. Upon information and belief, Newrez engages third parties to perform the operational servicing duties of mortgage loans for which it acquires the mortgage servicing rights. These third parties include entities like PHH and Nationstar Mortgage LLC ("Nationstar").

i. On December 7, 2020, the CFPB filed a complaint in the U.S. District Court for the District of Columbia under Case No. 1:20-cv-03550 (the "CFPB Nationstar Action"), against Nationstar, "one of the largest mortgage servicers, and the largest non-bank mortgage servicer, in the United States," alleging that it "violated multiple federal consumer financial laws, causing substantial harm to the borrowers whose loans it serviced." *See* CFPB Nationstar Action, filed December 7, 2020, accessible at https://files.consumerfinance.gov/f/documents/cfpb_nationstar-mortgage-llc-dba-mr-cooper_complaint_2020-12.pdf. The CFPB brought the action as "part of a coordinated effort between the Bureau, a multistate group of state attorneys general, and state bank regulators" under RESPA, Regulation X, and other federal consumer protection statutes. *See* CFPB Press Release dated December 7, 2020, accessible at https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-multiple-states-enter-settlement-nationstar-mortgage-llc-unlawful-servicing-practices/. Nationstar stipulated to judgment directing it to pay $15,623,305.00 in monetary relief "for the sole purpose of providing redress to Affected Consumers," and a civil money penalty of $1,500,000.00. *See* CFPB Nationstar Action (Case No. 1:20-cv-03550-JEB), ECF Doc. No. 3, filed December 8, 2020, accessible at https://files.consumerfinance.gov/f/documents/cfpb_nationstar-mortgage-llc-dba-mr-cooper_stipulated-final-judgment-and-order_2020-12.pdf.

44. Defendants and their affiliated entities service a nationwide portfolio of loans totaling hundreds of billions of dollars. Given that Defendants themselves have documented

histories of regulatory enforcement and consumer protection law violations, and NewRez acquires and/or engages third party servicers with similar histories – like SLS, Ocwen, and Nationstar – to perform the operational servicing duties in connection with the mortgage servicing rights it acquires, the types of servicing errors and statutory violations described herein reflect consumer-oriented conduct with a broader impact on consumers at large.

**VIOLATIONS OF RESPA AND REGULATION X**
**(12 U.S.C. § 2601, *et seq.* and 12 C.F.R. § 1024.1, *et seq.*)**

45. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

46. RESPA (12 U.S.C. § 2601, *et seq.*) is a federal consumer protection statute which, along with its implementing regulations, imposes certain duties on lenders and servicers related to the real estate settlement process and servicing of mortgage loans, and provides a framework for borrowers to obtain account information and to remedy servicing and account errors.

47. Section 2605 of Title 12 details RESPA's requirements for the "[s]ervicing of mortgage loans." *See* 12 U.S.C. § 2605.

48. Regulation X (12 C.F.R. § 1024.1, *et seq.*), issued by the CFPB, is RESPA's implementing regulation. RESPA expressly authorizes the CFPB "to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter." *See* 12 U.S.C. § 2617(a).

49. RESPA prohibits loan servicers from failing to comply with CFPB regulations intended to carry out RESPA's consumer protection purposes, including Regulation X. *See* 12 U.S.C. § 2605(k)(1)(E).

50. Each of the Defendants is or was the "servicer" of Plaintiff's loan, as defined by RESPA and Regulation X, during a period relevant to Plaintiff's claims herein. *See* 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2.

**<u>COUNT I</u>**
**Failure to Respond to Borrower Inquiries**
**(12 U.S.C. §§ 2605(e), 2605(f) and 12 C.F.R. §§ 1024.35, 1024.36)**

51. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

52. RESPA prohibits servicers from "fail[ing] to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." *See* 12 U.S.C. § 2605(k)(1)(C).

53. Regulation X, among other things, details "[e]rror resolution procedures" servicers must follow upon receipt of a written notice from the borrower asserting an error. *See* 12 C.F.R. § 1024.35. Section 1024.35(b) lists eleven categories of "covered errors" under Regulation X including, among others, failure to properly accept and apply payments, failure to accurately credit payments on the date received, imposing improper fees or charges, and providing inaccurate information regarding loss mitigation options and foreclosure. *See* 12 C.F.R. § 1024.35(b). Section 1024.35 also contains a "catch-all provision" covering "[a]ny other error relating to the servicing of a borrower's mortgage loan." *See* 12 C.F.R. § 1024.35(b)(11).

54. Regulation X also outlines "[g]eneral servicing policies, procedures, and requirements" for servicers, which include maintaining policies and procedures "reasonably designed to ensure that the servicer can . . . [i]nvestigate, respond to, and, as appropriate, make corrections in response to complaints asserted by a borrower." *See* 12 C.F.R. § 1024.38(b).

55. Pursuant to 12 U.S.C. § 2605(e), loan servicers have a duty to respond to inquiries received from a borrower or his agent, meeting the criteria of a QWR.

56. A QWR is defined as "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

57. For purposes of Regulation X, "[a] qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request." 12 C.F.R. § 1024.36(a).

58. RESPA requires a servicer who receives a QWR to "provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested it taken within such period." 12 U.S.C. § 2605(e)(1)(A).

59. In addition to providing written acknowledgment of receipt, within thirty (30) days of receipt of a QWR from a borrower or his agent, a servicer must also (i) conduct an investigation, (ii) make any necessary corrections to the borrower's account and provide written notice of any such corrections, and (iii) provide a written explanation that includes the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." *See* 12 U.S.C. § 2605(e)(2).

60. Regulation X also details specific actions a loan servicer must take upon receipt of a request for information, including acknowledging receipt, conducting an investigation, correcting any errors identified by the borrower or otherwise discovered during the investigation, and providing the borrower with a written response and explanation. *See* 12 C.F.R. §§ 1024.35, 1024.36.

61. Failure to acknowledge or respond to a QWR, including a borrower's request for account and payment information, is a covered "error relating to the servicing of a borrower's mortgage loan." *See* 12 C.F.R. § 1024.35(b)(11).

62. Plaintiff sent letters meeting the criteria of a QWR to each Defendant on May 6, 2024, seeking information relating to the servicing of her mortgage loan, including payment histories and transactions, and fee itemization/details.

63. The Newrez QWR included Plaintiff's name, address, and account number, and a list of specific account information Plaintiff sought from Newrez.

64. As Plaintiff's loan servicer, Newrez had a duty to acknowledge receipt of the Newrez QWR, to investigate Plaintiff's account, and to provide a written response.

65. Newrez failed to acknowledge receipt of the Newrez QWR, and further failed to conduct an investigation or to provide Plaintiff with a written response to the Newrez QWR, in violation of 12 C.F.R. §§ 1024.35 and 1024.36, and 12 U.S.C. §§ 2605(e) and 2605(k).

66. Newrez's failure to acknowledge, investigate, or respond to Plaintiff's Newrez QWR is a covered servicing error.

67. The PHH QWR included Plaintiff's name, address, and account number, and a list of specific account information Plaintiff sought from PHH.

68. As Plaintiff's loan servicer, PHH had a duty to acknowledge receipt of the PHH QWR, to investigate Plaintiff's account, and to provide a written response.

69. PHH failed to acknowledge receipt of the PHH QWR, and further failed to conduct an investigation or to provide Plaintiff with a written response to the PHH QWR, in violation of 12 C.F.R. §§ 1024.35 and 1024.36, and 12 U.S.C. §§ 2605(e) and 2605(k).

70. PHH's failure to acknowledge, investigate, or respond to Plaintiff's PHH QWR is a covered servicing error.

71. When Defendants failed to acknowledge or respond to Plaintiff's first QWR, Plaintiff sent a second letter meeting the criteria of a QWR to each Defendant on June 18, 2024, again seeking information relating to the servicing of her mortgage loan, including payment histories and transactions, and fee itemization/details.

72. The Second Newrez QWR included Plaintiff's name, address, and account number, and a list of specific account information Plaintiff sought from Newrez. The Second Newrez QWR also noted Newrez's error in failing to respond to the first Newrez QWR, reflecting in large, bold, red print that it was a "SECOND REQUEST."

73. Newrez again failed to acknowledge receipt of the Second Newrez QWR, and further failed to conduct an investigation or to provide Plaintiff with a written response to the Second Newrez QWR, in violation of 12 C.F.R. §§ 1024.35 and 1024.36, and 12 U.S.C. §§ 2605(e) and 2605(k).

74. Newrez's failure to acknowledge, investigate, or respond to Plaintiff's Second Newrez QWR is a covered servicing error.

75. The Second PHH QWR included Plaintiff's name, address, and account number, and a list of specific account information Plaintiff sought from PHH. The Second PHH QWR also

noted PHH's error in failing to respond to the first PHH QWR, reflecting in large, bold, red print that it was a "SECOND REQUEST."

76. PHH again failed to acknowledge receipt of the Second PHH QWR, and further failed to conduct an investigation or to provide Plaintiff with a written response to the Second PHH QWR, in violation of 12 C.F.R. §§ 1024.35 and 1024.36, and 12 U.S.C. §§ 2605(e) and 2605(k).

77. PHH's failure to acknowledge, investigate, or respond to Plaintiff's Second PHH QWR is a covered servicing error.

78. Defendants' failure to respond to Plaintiff's QWRs has significant implications for Plaintiff, including impeding her ability to identify potential account or servicing errors, and to seek necessary corrective actions. This lack of transparency, and Defendants' failure to comply with these requirements, deprives Plaintiff of the opportunity to exercise her rights effectively.

79. Specifically, Defendants' refusal to provide Plaintiff with critical account information allowing her to identify and seek correction of account errors, and their refusal to independently investigate Plaintiff's account to identify and correct errors in response to the QWRs, means that improper fees – and the interest accruing on the increased loan balance as a result of these fees – continue to accumulate on Plaintiff's account and cause additional harm on an ongoing basis.

80. As a result of Defendants' actions and failure to investigate or respond to Plaintiff's QWRs, including Defendants' failure to correct servicing and account errors that resulted in improper fees, interest, and other charges being added to her loan balance, Plaintiff was forced to incur attorneys' fees to compel responses, and has suffered actual damages. These actual damages include, but are not limited to, increased debt and financial burden resulting from improperly imposed fees, interest, and other charges added to her loan balance, continually accruing interest

on any such improper Capitalized Sums, payment of attorneys' fees and other professional retainer costs, emotional distress, and other actual damages.

81. Accordingly, Plaintiff is entitled to recover actual damages pursuant to 12 U.S.C. § 2605(f)(1), along with any attorneys' fees and costs incurred in connection with this action pursuant to 12 U.S.C. § 2605(f)(3).

82. Defendants have also demonstrated a pattern and practice of noncompliance with RESPA's statutory requirements and implementing regulations, entitling Plaintiff to additional statutory damages of up to $2,000.00 per violation pursuant to 12 U.S.C. § 2605(f)(1)(B), for each QWR, notice of error, and request for information Defendants failed to properly investigate and respond to.

**COUNT II**
**Failure to Provide Required Notices**
**(12 U.S.C. §§ 2605(b), 2605(c) and 12 C.F.R. § 1024.33)**

83. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

84. RESPA and Regulation X each require a servicer to "notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1); *see also* 12 C.F.R. § 1024.33(b)(1).

85. RESPA and Regulation X also detail specific requirements concerning the timing and content of servicing transfer notices. *See* 12 U.S.C. §§ 2605(b), (c); 12 C.F.R. § 1024.33.

86. As Plaintiff's loan servicers, Defendants have a duty to provide Plaintiff with timely written notice of any servicing transfer.

87. Defendants failed to provide Plaintiff with notice of servicing transfers in violation of 12 U.S.C. §§ 2605(b) and 2605(c), and 12 C.F.R. § 1024.33, thereby preventing Plaintiff from

being able to obtain and confirm critical account information, or to correct account errors including the continued accrual of improper fees – and the interest accruing on the increased loan balance as a result of these fees – on Plaintiff's account, which are causing additional harm on an ongoing basis.

88. As a result of Defendants' actions including failure to provide notice of servicing transfers and preventing Plaintiff from correcting servicing and account errors that resulted in improper fees, interest, and other charges being added to her loan balance, Plaintiff was forced to incur attorneys' fees to compel disclosure, and has suffered actual damages. These actual damages include, but are not limited to, increased debt and financial burden resulting from improperly imposed fees, interest, and other charges added to her loan balance, continually accruing interest on any such improper Capitalized Sums, payment of attorneys' fees and other professional retainer costs, emotional distress, and other actual damages

89. Accordingly, Plaintiff is entitled to recover actual damages pursuant to 12 U.S.C. § 2605(f)(1), along with attorneys' fees and costs incurred in connection with this action pursuant to 12 U.S.C. § 2605(f)(3).

90. Defendants have also demonstrated a pattern and practice of noncompliance with RESPA's statutory requirements and implementing regulations, entitling Plaintiff to additional statutory damages of up to $2,000.00 per violation pursuant to 12 U.S.C. § 2605(f)(1)(B).

## STATE LAW CLAIMS

## COUNT III
**Deceptive Acts**
**(N.Y. Gen. Bus. Law § 349)**

91. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

92. New York law provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." GBL § 349.

93. "To maintain a cause of action under § 349, a plaintiff must show: (1) that the defendant's conduct is 'consumer-oriented'; (2) that the defendant is engaged in a 'deceptive act or practice'; and (3) that the plaintiff was injured by this practice." *See Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010).

94. "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers.'" *Id.*

95. Each of the Defendants is a large national mortgage loan servicer, responsible for servicing a portfolio of mortgage loans totaling hundreds of billions of dollars.

96. Defendants and their affiliated entities have all been ordered by state and federal government and regulatory agencies to pay millions of dollars in penalties and consumer redress, for failing to comply with the requirements of various consumer protection laws.

97. Upon information and belief, Defendants have engaged in deceptive acts and practices in the servicing of Plaintiff's loan including (i) charging improper, excessive, and/or duplicative fees, interest, service charges, and other amounts not permitted by the loan documents or applicable law; (ii) failing to provide required notices and disclosures required by the loan documents and applicable law; and (iii) deliberately concealing servicing errors and statutory violations by withholding and refusing to disclose Plaintiff's account information in response to the QWRs.

98. As a result of these acts, Plaintiff has suffered damages including increased debt and financial burden resulting from improperly imposed fees, interest, and other charges added to her loan balance, which Defendants have failed and refused to investigate or rectify.

99. As detailed in Paragraphs 42-44 above, Defendants and their affiliated entities have each been sanctioned by state and federal authorities for deceptive acts and practices, including those imposed upon Plaintiff, in servicing national portfolios of residential home loans like Plaintiff's loan.

100. Given Defendants' status as national loan servicers with servicing portfolios in the hundreds of billions of dollars, and their documented history of state and federal consumer protection violations, these deceptive acts and practices will impact not only Plaintiff, but will also have a broader impact on consumers at large.

101. Accordingly, for each such deceptive act and practice, pursuant to GBL § 349(h), Plaintiff is entitled to recover (i) actual damages or fifty dollars, whichever is greater; or, in the Court's discretion, an amount not to exceed three times the actual damages, up to one thousand dollars; and (ii) reasonable attorneys' fees incurred in bringing this action.

**COUNT IV**
**Accounting**

102. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

103. Section 419.4 of the Superintendent's Regulations require servicers to provide borrowers with (i) annual statements, (ii) payment histories, (iii) periodic statements, and (iv) payoff balances containing specific information and meeting certain requirements. *See* 3 N.Y.C.R.R. §§ 419.4(a)-(d).

104. Defendants have failed and refused to provide any information regarding Plaintiff's Mortgage loan account in response to the QWRs. In fact, Defendants have failed and refused to respond to Plaintiff's QWRs at all.

105. Upon information and belief, Defendants added improper fees and charges to Plaintiff's account, and failed to maintain and/or transfer complete and accurate servicing records as required.

106. In order to accurately determine the sum and extent of the servicing errors and improper charges added to Plaintiff's account, Defendants must provide a full accounting of all transactions and calculations involving the loan account including, but not limited to, all credits, debits, payments, disbursements, interest (including rates and changes), fees, charges, and balances.

107. The accounting should include, for all time periods since origination, (i) annual statements, (ii) payment histories, (iii) periodic statements, and (iv) payoff balances meeting the requirements of Section 419.4(a)-(d).

108. The information necessary to conduct this accounting is solely within the Defendants' possession, custody, and control.

109. Plaintiff has no adequate remedy at law, and no other means by which to obtain this information.

110. Accordingly, Plaintiff seeks an accounting of the entire loan history, from origination to present.

## **DEMAND FOR JURY TRIAL**

111. Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully requests a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff respectfully demands judgment awarding all actual, statutory, and/or punitive damages, equitable relief, and other relief available pursuant to applicable law, including:

(a) actual damages pursuant to 12 U.S.C. § 2605(f)(1), along with any attorneys' fees and costs incurred in connection with this action pursuant to 12 U.S.C. § 2605(f)(3), and additional statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B);

(b) actual and statutory damages, and recovery of attorneys' fees and costs pursuant to GBL § 349(h);

(c) an accounting of the entire loan history, from origination to present including, for all time periods since origination, (i) annual statements, (ii) payment histories, (iii) periodic statements, and (iv) payoff balances meeting the requirements of Section 419.4(a)-(d); and

(d) such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
November 22, 2024

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Sherry Ann Murray

*/s/ Steven Amshen*

Steven Amshen, Esq. (ID No. SA2569)
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: samshen@petroffamshen.com

## SUMMARY OF EXHIBITS

**EXHIBITS:**

**Exhibit 1** – Mortgage dated February 9, 2005, recorded March 2, 2005

**Exhibit 2** – Loan Modification Agreement dated October 1, 2011, recorded November 14, 2011

**Exhibit 3** – QWR to Newrez dated May 6, 2024

**Exhibit 4** – QWR to PHH dated May 6, 2024

**Exhibit 5** – Second QWR to Newrez dated June 18, 2024

**Exhibit 6** – Second QWR to PHH dated June 18, 2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHERRY ANN MURRAY,<br><br>Plaintiff,<br><br>v.<br><br>NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING; AND PHH MORTGAGE CORPORATION D/B/A PHH MORTGAGE SERVICES,<br><br>Defendants. | CIVIL ACTION NO. 1:24-cv-6160 |

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE THAT**, upon the accompanying memorandum of law and declaration of Sherry Xia (with exhibits), Defendants NewRez LLC and PHH Mortgage Corporation will move the Court, before the Honorable Allyne R. Ross, at the United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York 11201, as soon as counsel may be heard, for an Order dismissing the amended complaint pursuant to FRCP 12(b)(1) and (6).

Pursuant to this Court's order, opposition papers shall be served no later than January 14, 2025 and reply papers shall be served no later than January 28, 2025.

Dated: December 20, 2024
New York, New York

Respectfully submitted,
Attorney for Defendants

By: Its Attorney

*/s/ Sherry Xia*

Sherry Xia
HINSHAW & CULBERTSON LLP
800 Third Avenue, 13th Floor
New York, NY 10022
212-471-6201
sxia@hinshawlaw.com

**CERTIFICATE OF SERVICE**

I, Sherry Xia, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 20, 2024.

*/s/ Sherry Xia*

Sherry Xia

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHERRY ANN MURRAY,<br><br>Plaintiff,<br><br>v.<br><br>NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING; AND PHH MORTGAGE CORPORATION D/B/A PHH MORTGAGE SERVICES,<br><br>Defendants. | CIVIL ACTION NO. 1:24-cv-6160 |

**DECLARATION OF SHERRY XIA SUPPORTING DEFENDANTS' MOTION TO DISMISS**

I, Sherry Xia**,** an attorney duly admitted to the bar of this Court, declare under penalty of perjury that the following statements are true and correct:

1. I am a partner at Hinshaw & Culbertson LLP, attorneys for defendants NewRez LLC and PHH Mortgage Corporation ("Defendants"). I respectfully submit this Declaration, along with the accompanying memorandum of law, in support of Defendants' Motion to Dismiss, pursuant to FRCP 12(b)(1) and (6), plaintiff Sherry Ann Murray's amended complaint. As more fully explained in the accompanying memorandum of law, the amended complaint ("Am. Compl.") fails to plead any cause of action, and the Court otherwise lacks jurisdiction over state law claims.

2. Murray acknowledges she borrowed $440,325.00 at 7.75% interest on February 9, 2005, and gave a security interest on the property located at 87 Blake Avenue, Brooklyn, New York. Am. Compl., Doc. No. 14, ¶ 11.

3. She defaulted on her monthly payment due on September 1, 2009, and those thereafter, and the noteholder commenced a foreclosure action on March 16, 2010 ("Foreclosure

Action"). A copy of the Foreclosure Action complaint is enclosed as **Exhibit A**.[1] At the time of the Foreclosure Action, Murray's principal balance was $420,757.93. Ex. A, ¶ 11. She concedes she was represented by counsel in the Foreclosure Action. Am. Compl., Doc. No. 14, ¶ 18. In fact, the same attorneys, who represent Murray in this action, represented her in the Foreclosure Action. A copy of their Foreclosure Action appearance is enclosed as **Exhibit B**.

4. As part of the Foreclosure Action resolution,[2] GMAC Mortgage, LCC (servicer at the time), offered Murray a Non-HAMP Loan Modification Agreement (the "Modification"). Am. Compl., Doc. No. 14, ¶¶ 12-14, Ex. 2. The Modification was effective October 1, 2011. *Id.* at Ex. 2. It deferred $131,717.67 of the total debt due on the loan, interest free, leaving $378,884.48 as the principal balance bearing interest.[3] *Id.* It also reduced the interest rate to 3.8750% for 5 years, and 4.25% thereafter. *Id.* Murray accepted the Modification – on the advice of counsel – and stipulated to the dismissal of the Foreclosure Action. A copy of the Foreclosure Action Stipulation of Discontinuance is enclosed as **Exhibit D**.

7. Now, approximately 14 years later, Murray questions whether the deferred principal of $131,717.67 included "excessive, illegal, and/or improper" fees and advances. Am. Compl., Doc. No. 14, ¶ 18. As more fully discussed in the accompanying memorandum of law, the alleged "QWRs" that were sent, which were instead overbroad requests for information, did

---

[1] The Court is permitted, "[i]n the Rule 12(b)(6) context, . . . [to] take judicial notice of prior pleadings and other related documents that appear in court records of prior litigation and that relate to the case *sub judice*." *Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 350 n.6 (S.D.N.Y. 2012). "Furthermore, federal courts are empowered to take judicial notice of state court records and decisions." *Toliver v. City of N.Y.*, 2011 U.S. Dist. LEXIS 120899, at *10 (S.D.N.Y. 2011).

[2] A copy of the New York State Unified Court System WebCivil Supreme – Appearance Detail, reflecting multiple court mandated foreclosure settlement conferences mediated by the state foreclosure court is enclosed as **Exhibit C.**

[3] The total principal balance (interest bearing and interest free) was therefore $510,602.15, of which $89,844.22 was the arrears (when $420,757.93, the principal balance at the time of the 2009 default is subtracted from $510,602.15). This amount of arrears is reasonable for a loan that had been in default for 2 years, with a monthly loan payment amounts of $3,154.54.

not explicitly mention the Modification or notify the Defendants of any potential error related to the Modification. Murray has not adequately pled a cause of action under RESPA, and her state court claims also fail for lack of supplemental jurisdiction.

DATED: New York, New York
December 20, 2024

**HINSHAW & CULBERTSON LLP**

By: *Sherry Xia*
Sherry Xia, Esq.

800 Third Avenue, 13th Floor
New York, New York 10022
Tel: (212) 471-6201

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, Sherry Xia, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 20, 2024.

*/s/ Sherry Xia*
Sherry Xia

ORIGINAL

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

----------------------------------------------------------------------x

THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE

Plaintiff,

-against-

SHERRY ANN MURRAY; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR CIT GROUP/CONSUMER FINANCE, INC(NY); NEW YORK STATE DEPARTMENT OF TAXATION & FINANCE; ; "JOHN DOES" AND "JANE DOES", SAID NAMES BEING FICTITIOUS, PARTIES INTENDED BEING POSSIBLE TENANTS OR OCCUPANTS OF PREMISES, AND CORPORATIONS, OTHER ENTITIES OR PERSONS WHO CLAIM, OR MAY CLAIM, A LIEN AGAINST THE PREMISES,

Defendant(s),

----------------------------------------------------------------------x

Index No. 6670/10

D/O/F:

**SUMMONS**

Premises Address:
87 BLAKE AVENUE
BROOKLYN, NY 11212

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action, and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on the Plaintiff's Attorneys within twenty (20) days after the service of this Summons, exclusive of the day of service, where service is made by delivery upon you personally within the State, or within thirty (30) days after completion of service where service is made in any other manner, and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

**NOTICE**
**YOU ARE IN DANGER OF LOSING YOUR HOME**

**If you do not respond to this summons and complaint by serving a copy of the answer on the attorney for the mortgage company who filed this foreclosure proceeding against you and filing the answer with the court, a default judgment may be entered and you can lose your home.**
**Speak to an attorney or go to the court where your case is pending for further information on how to answer the summons and protect your property.**
**Sending a payment to your mortgage company will not stop this foreclosure action.**
**YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE ATTORNEY FOR THE PLAINTIFF (MORTGAGE COMPANY) AND FILING THE ANSWER WITH THE COURT.**

The following notice is intended only for those defendants who are owners of the premises sought to be foreclosed or who are liable upon the debt for which the mortgage stands as security.

**YOU ARE HEREBY PUT ON NOTICE THAT WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

The amount of the Debt: $449,555.73 consisting of principal balance of $420,757.93 plus interest of $19,915.12, escrow/impound shortages or credits of $7,039.14, late charges of $378.54; Broker`s Price Opinion, inspection and miscellaneous charges of $45.00; attorney fee $925.00 and title search $495.00. Because of interest and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive the check, in which event we will inform you.

The name of the creditor to whom the debt is owed: THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt hereof, the debt will be assumed to be valid by the herein debt collector.

If you notify the herein debt collector in writing within thirty (30) days after your receipt hereof that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of any judgment against you representing the debt and a copy of such verification or judgment will be mailed to you by the herein debt collector.

Upon your written request within 30 days after receipt of this notice, the herein debt collector will provide you with the name and address of the original creditor if different from the current creditor.

Note: Your time to respond to the summons and complaint differs from your time to dispute the validity of the debt or to request the name and address of the original creditor. Although you have as few as 20 days to respond to the summons and complaint, depending on the manner of service, you still have 30 days from receipt of this summons to dispute the validity of the debt and to request the name and address of the original creditor.

TO THE DEFENDANTS, except SHERRY ANN MURRAY : The Plaintiff makes no personal claim against you in this action.

TO THE DEFENDANTS: SHERRY ANN MURRAY : If you have obtained an order of discharge from the Bankruptcy court, which includes this debt, and you have not reaffirmed your liability for this debt, this law firm is not alleging that you have any personal liability for this debt and does not seek a money judgment against you. Even if a discharge has been obtained, this lawsuit to foreclose the mortgage will continue and we will seek a judgment authorizing the sale of the mortgaged premises.

Dated: March 15, 2010

Tammy J. Shapiro, Esq.
ROSICKI, ROSICKI & ASSOCIATES, P.C.
Attorneys for Plaintiff
Main Office 51 E Bethpage Road
Plainview, NY 11803
516-741-2585

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---------------------------------------------------------------------x

THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE

Plaintiff,

-against-

SHERRY ANN MURRAY; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR CIT GROUP/CONSUMER FINANCE, INC(NY); NEW YORK STATE DEPARTMENT OF TAXATION & FINANCE; ; "JOHN DOES" AND "JANE DOES", said names being fictitious, parties intended being possible tenants or occupants of premises, and corporations, other entities or persons who claim, or may claim, a lien against the premises,

Defendant(s),

---------------------------------------------------------------------x

Index No.

D/O/F:

**COMPLAINT**

Premises Address:
87 BLAKE AVENUE
BROOKLYN, NY 11212

Plaintiff, by its attorney, ROSICKI, ROSICKI & ASSOCIATES, P.C., complaining of the Defendant(s) alleges, upon information and belief as follows:

1. At all times hereinafter mentioned, plaintiff THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE was and still is duly organized and existing under the laws of the State of PA.

2. At all times hereinafter mentioned, the defendants were, and still are, residents, corporations and/or bodies politics, duly authorized to reside and/or exist in and under the laws of New York State.

3. On or about February 9, 2005, SHERRY ANN MURRAY executed and delivered to PROFESSIONAL MORTGAGE BANKERS CORP, a note bearing date that day, whereby SHERRY ANN MURRAY covenanted and agreed to pay the sum of $440,325.00, with interest on the unpaid balance thereof, at the rate of 7.75000 percent per annum, to be computed from the date of said note, by payments of $3,154.54 on April 1, 2005 and thereafter in payments of $3,154.54 on the like date of each subsequent month, until said note is fully paid, except that the final payment of principal and interest remaining due, if not sooner paid, shall become due and payable on March 1, 2035_.

3a. Pursuant to RPAPL section 1302, the plaintiff has complied with all the provisions of Section 595a and Section 6-1 of the Banking Law except where they are exempt from doing so.

4. Plaintiff

(a) is the owner and holder of the subject mortgage and note, or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject mortgage and note; and

(b) has complied with all the provisions of section five hundred ninety-five-a of the Banking Law and any rules and regulations promulgated there under, section six-L of six-M of the Banking Law, and

(c) is in compliance with sending the ninety (90) day notices as required by RPAPL §1304. Said 90 day notice was sent by plaintiff prior to the reporting requirement of RPAPL §1306.

5. As collateral security for the payment of said indebtedness, the aforesaid defendant(s) SHERRY ANN MURRAY , also executed, acknowledged and delivered to PROFESSIONAL MORTGAGE BANKERS CORP, a mortgage dated February 9, 2005 and recorded in the County of Kings on March 2, 2005 in Liber/Reel . of Mortgages, at page CRFN 2005000124847. The mortgage tax was duly paid. Thereafter said mortgage was assigned by the Plaintiff by assignment of mortgage. Plaintiff is the owner and holder of the aforementioned instrument(s).

Said mortgaged premises being known as and by street address:
87 BLAKE AVENUE, BROOKLYN, NY 11212 bearing tax map designation:

Block: 3536 Lot(s): 53

which premises are more fully described in Schedule "A," annexed hereto and made a part hereof.

6. Said premises are subject to covenants, restrictions, easements of record, prior mortgages and liens, and amendments thereto, if any; to any state of facts an accurate survey may show; railroad consents and sewer agreements, and to utility agreements, municipal and governmental zoning, rules, regulations and ordinances, if any.

7. That the Mortgagors, their successors, assigns and/or transferees, have failed to comply with the terms and conditions of said above named instrument[s] by failing or omitting to pay the installment which became due and payable as of September 1, 2009 and also by failing or omitting to pay the installment which became due and payable each and every month thereafter, to the date hereof, although duly demanded. The total monthly payment due as of default date to plaintiff is $3,154.54.

8. The total monthly payment due as of default date to plaintiff is $3,154.54.

9. That the terms of the above described instruments provide: (1) that the whole of said principal sum and interest shall become due at the option of the Mortgagee after default in the payment of any installment of principal or of interest; (2) that upon any default the Mortgagor will pay to the Mortgagee any sums paid for taxes, charges, assessments, and insurance premiums upon said mortgaged premises; (3) that in case of sale under foreclosure, the premises may be sold in one parcel.

10. Pursuant to the terms of said instrument[s] notice of default has been duly given to the defendants SHERRY ANN MURRAY if required, and the period to cure, if any, has elapsed and by reason thereof, Plaintiff has elected and hereby elects to declare immediately due and payable the entire unpaid balance of principal.

11. That the balance of principal due upon said note and mortgage as of the date of said default and as of the time of this Complaint is $420,757.93 plus interest from August 1st, 2009.

12. That in order to protect its security, plaintiff may be compelled during the pendency of this action to make repairs to, board, secure, protect and maintain the premises, to pay taxes, assessments, water rates, sewer rentals, insurance premiums, mortgage insurance premiums, if there be

any, and other charges affecting the premises, and the plaintiff requests that any sum so paid be added, including legal fees to the sum otherwise due, with interest as provided in the aforesaid instruments, and be deemed secured by said instrument[s] and adjudged a valid lien on the premises hereinabove described.

13. That the plaintiff requests that in the event this action proceeds to Judgment of Foreclosure and Sale, said premises be sold subject to covenants, restrictions and easements, prior mortgages and liens, and amendments, if any, of record; any state of facts an accurate survey may show; restrictions, regulations, ordinances and zoning ordinances of any municipal or governmental authority having jurisdiction thereof; and municipal, departmental and other governmental violations, if any, affecting the premises; and real estate taxes, sewer rents, water charges, if any, open of record.

14. That no other action has been commenced at law or otherwise for the recovery of the sum or any part thereof secured by the said instrument[s].

15. That the defendants all have or claim to have some interest in or lien[s] upon the said mortgaged premises, or some part thereof, which interest or lien[s], if any, has [have] accrued subsequently to the lien[s] of the said mortgage[s] or was in express terms or by law made subject thereto, or has [have] been duly subordinated thereunto.

16. That the defendant NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE is named as a party defendant herein because of possible unpaid income tax.

17. That the defendants "JOHN DOES" and "JANE DOES" may be tenants or may be in possession of the aforementioned premises, or may be corporations, other entities or persons who claim, or may claim, a lien against the premises.

18. That the basis for naming any political subdivision, governmental agency or similar body, or the holder of a security interest in either personal property or real property, if any, is set forth as Exhibit "B."

WHEREFORE, plaintiff demands judgment that the defendants and all persons claiming under them subsequent to the filing of the Notice of Pendency of this action in the County of Kings may be forever barred and foreclosed from all right, title, claim, lien and equity of redemption in said mortgaged premises, and each and every part thereof; except the right of the United States of America and its political subdivision, if it or they be a party to this action, to redeem as provided for in the applicable laws; that the said premises may be decreed to be sold according to law; that the amount of principal due the plaintiff on said note and mortgage may be adjudged in the sum of $420,757.93 plus interest from August 1st, 2009, and that from the money arising from the sale, plaintiff be paid the amount of $420,757.93 principal due it on said note and mortgage with interest and late charges that may be due and owing to the time of such payment plus the expenses of sale and the costs and expenses of this action, together with any sum which may be paid by the plaintiff for repairs to, boarding, securing, protecting and maintaining the premises, taxes, charges, assessments and insurance premiums upon said mortgaged premises, with appropriate interest thereon so far as such moneys properly applicable thereto will pay the same; that the defendants SHERRY ANN MURRAY be adjudged to pay

any deficiency which may remain; that a Receiver, upon plaintiff's application therefore, be forthwith appointed for said mortgaged premises for the benefit of the plaintiff, with all powers of receivers in such actions, and that the plaintiff have such other and further relief as may be just and proper in the premises, together with attorney`s fees, costs and disbursements of this action.

Dated: March 15, 2010

Tammy J. Shapiro, Esq.
ROSICKI, ROSICKI & ASSOCIATES, P.C.
Attorneys for Plaintiff
Main Office 51 E Bethpage Road
Plainview, NY 11803
516-741-2585

All that certain plot, piece or parcel of land, with all the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Northerly side of Blake Avenue, distant 60 feet Easterly from the Northeasterly corner of Blake Avenue and Legion Street, formerly Barrett Street;

RUNNING THENCE Easterly along the Northerly side of Blake Avenue, 20 feet to a point opposite a Party Wall, standing partly on said premises and partly on the Lot next Easterly adjoining.

THENCE Northerly parallel with said Legion Street and part of the distance through a Party Wall, 100 feet, 5 1/2 inches;

THENCE Westerly parallel with Blake Avenue, 20 feet;

THENCE Southerly again parallel with said Legion Street, 100 feet, 5 1/2 inches to the point or place of BEGINNING.

SCHEDULE B

-NEW YORK CITY TRANSIT ADJUDICATION BUREAU has been named as a party defendant herein subject to liens; copies of which are unavailable due to the condition of the books for the county.

-NEW YORK CITY ENVIRONMENTAL CONTROL BOARD has been named as a party defendant herein subject to liens; copies of which are unavailable due to the condition of the books for the county.

-NEW YORK CITY PARKING VIOLATIONS BUREAU has been named as a party defendant herein subject to liens; copies of which are unavailable due to the condition of the books for the county.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2006111300964001001E6C5A

## RECORDING AND ENDORSEMENT COVER PAGE

**PAGE 1 OF 8**

**Document ID: 2006111300964001** Document Date: 10-26-2006 Preparation Date: 11-13-2006
Document Type: MORTGAGE
Document Page Count: 7

| PRESENTER: | RETURN TO: |
|---|---|
| AMERICAN DOCUMENT RECORDING, INC.<br>640 JOHNSON AVENUE, SUITE 201-C<br>(WILL PICK UP REJECTIONS) 32588-EX-K<br>BOHEMIA, NY 11716<br>631-567-4220<br>jd@amdocrecording.com | NATIONWIDE TITLE CLEARING, INC.<br>2100 ALT 19 NORTH<br>PALM HARBOR, FL 34683<br>123-456-7890 |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 3536 | 53 | Entire Lot | | 87 BLAKE AVENUE |

**Property Type:** DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN______ *or* Document ID__________ *or* ______ Year_____ Reel ___ Page ____ *or* File Number_________

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| SHERRY ANN MURRAY<br>87 BLAKE AVENUE<br>BROOKLYN, NY 11212 | MERS<br>P.O.BOX 2026, G 4318 MILLER RD.<br>FLINT, MI 48501 |

### FEES AND TAXES

**Mortgage**

| | | |
|---|---|---|
| Mortgage Amount: | $ | 75,000.00 |
| Taxable Mortgage Amount: | $ | 75,000.00 |
| Exemption: | | |
| TAXES: County (Basic): | $ | 375.00 |
| City (Additional): | $ | 750.00 |
| Spec (Additional): | $ | 0.00 |
| TASF: | $ | 187.50 |
| MTA: | $ | 195.00 |
| NYCTA: | $ | 0.00 |
| Additional MRT: | $ | 0.00 |
| TOTAL: | $ | 1,507.50 |
| Recording Fee: | $ | 72.00 |
| Affidavit Fee: | $ | 0.00 |

| | | |
|---|---|---|
| Filing Fee: | $ | 0.00 |
| NYC Real Property Transfer Tax: | $ | 0.00 |
| NYS Real Estate Transfer Tax: | $ | 0.00 |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed 11-22-2006 10:33
City Register File No.(CRFN):
**2006000648002**

*City Register Official Signature*

32588 K

# REAL ESTATE MORTGAGE

CIT

**This mortgage ("Mortgage") is a credit line mortgage as defined in Section 281 of the New York Real Property Law. It secures an indebtedness under the note described below which reflects the fact that the parties reasonably contemplate entering into a series of advances or advances, payments, and re-advances. The note limits the aggregate amount at any time outstanding to the maximum amount specified as the "Maximum Credit Limit" shown below.**

**This Mortgage secures a note which contains a provision allowing for changes in the interest rate. Increases in the interest rate will result in higher payments. Decreases in the interest rate will result in lower payments.**

| Name and Address of Mortgagor(s): | Lender: |
|---|---|
| SHERRY ANN MURRAY<br>87 BLAKE AVENUE<br>BROOKLYN, NY 11212<br>MIN: 100263105001996823 | THE CIT GROUP/CONSUMER FINANCE, INC. (NY)<br>399 KNOLLWOOD ROAD<br>SUITE 304<br>WHITE PLAINS, NY 10603<br>Mortgagee: MERS<br>P.O. BOX 2026<br>FLINT, MI 48501-2026 |
| Loan Number: 500199682 Date: 10/26/2006 | Maximum Credit Limit: $75,000.00 |

Sec 12 BK 3536 Lot 53

The words "I," "me" and "my" refer to all Mortgagors indebted on the Home Equity Line of Credit Agreement and Disclosure Statement ("Note") secured by this Mortgage. The words "you" and "your" refer to Lender and Lender's assignee if this Mortgage is assigned. "MERS" refers to Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Mortgage.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

## MORTGAGE OF REAL ESTATE

In order to secure the payment of all amounts owing under the Note, which provides the "Maximum Credit Limit" as set forth above, I mortgage, grant and convey the premises described below to you, as mortgagee, subject to the terms of this Mortgage. The Note establishes a revolving line of credit for an amount up to the Maximum Credit Limit set forth above plus finance charges and other charges. The entire amount owing under the Note will be due and payable according to the terms of the Note. By signing this Mortgage, I am giving you those rights that are stated in this Mortgage and also those rights that the law gives to mortgagees who hold mortgages on real property such as the premises described below. I am giving you these rights to protect you from possible losses that might result if I fail to: (1) pay all the amounts I owe you as stated in the Note; (2) pay with interest any amounts that you spend under the Note and this Mortgage to protect the value of the premises described below and your rights in the premises; and (3) keep all of my other promises and agreements under this Mortgage and the Note.

If anyone besides me signs the Note, this Mortgage also secures performance by them of all the terms and promises in the Note. Each of the persons signing this Mortgage mortgages and confirms to MERS and its successors and assigns, (solely as nominee for Lender and Lender's successors and assigns) you the real estate described below and all present and future improvements on the real estate which is located in New York, county of KINGS, known in this document as the "Premises".

These Premises are improved by a TWO family dwelling only.

SEE ATTACHED LEGAL DESCRIPTION 'EXHIBIT A'

Property Address: 87 BLAKE AVE, BROOKLYN, NY 11212

Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Premises; and to take any action required of Lender including, but not limited to, releasing and canceling this Mortgage.

## TERMS AND CONDITIONS:

**TAXES - LIENS - INSURANCE - MAINTENANCE** - I will pay, when they are due and payable, all taxes, liens, assessments, obligations, water rates and any other charges against the Premises, whether superior or inferior to the lien of this Mortgage, maintain hazard insurance on the Premises in your favor in a form and amount satisfactory to you and maintain and keep the Premises in good repair at all times during the term of this Mortgage. You may pay any such tax, lien, assessment, obligation, water rates, premium or other charge (including any charge to maintain or repair the Premises) or purchase such insurance in your own name, if I fail to do so. The amount you pay will be due and payable to you on demand, will bear interest at the interest rate in effect from time to time as set forth in the Note secured by this Mortgage if permitted by law or, if not, at the highest lawful interest rate, will be an additional lien on the Premises and may be enforced and collected in the same manner as the other obligations secured by this Mortgage.

The insurance carrier providing the insurance referred to above will be chosen by me subject to your approval which will not be unreasonably withheld. All insurance policies and renewals must be acceptable to you and must include a standard mortgage clause. You will have the right to hold the policies and renewals. If you require, I will promptly give to you all receipts of paid premiums and renewal notices. In the event of a loss, I will give prompt notice to the insurance carrier and you. You may file a proof of loss if not made promptly by me. Insurance proceeds will be applied to the restoration or repair of the Premises damaged or, at your option, the insurance proceeds will be applied to the sums, secured by this Mortgage, whether or not then due, with any excess paid to me. If I abandon the Premises, or do not answer within ten (10) days, a notice from you that the insurance carrier has offered to settle a claim, then you may collect the insurance proceeds. The ten (10)-day period will begin when the notice is given.

**TITLE** - The Premises were conveyed to me by a deed which is to be, or has been, recorded before this Mortgage, and I warrant the title to the Premises. I further warrant that the lien created by this Mortgage is a valid and enforceable second lien,

SEE PAGES 2 AND 3 FOR ADDITIONAL IMPORTANT TERMS

GMAC Mortgage

3451 Hammond Ave
P.O. Box 780
Waterloo, IA 50704-0780

10/16/09

SHERRY A MURRAY

87 BLAKE AVE

BROOKLYN NY 11212

Loan Number:
Property Address: 87 BLAKE AVENUE

BROOKLYN NY 11212

Dear SHERRY A MURRAY

YOU COULD LOSE YOUR HOME. PLEASE READ THE FOLLOWING NOTICE CAREFULLY

AS OF 10/16/09, YOUR HOME LOAN IS 45 DAYS IN DEFAULT. UNDER NEW YORK STATE LAW, WE ARE REQUIRED TO SEND YOU THIS NOTICE TO INFORM YOU THAT YOU ARE AT RISK OF LOSING YOUR HOME. YOU CAN CURE THIS DEFAULT BY MAKING THE PAYMENT OF 7616.39 DOLLARS BY 01/14/2010.

IF YOU ARE EXPERIENCING FINANCIAL DIFFICULTY, YOU SHOULD KNOW THAT THERE ARE SEVERAL OPTIONS AVAILABLE TO YOU THAT MAY HELP YOU KEEP YOUR HOME.

10/16/09
Account Numbe
Page 2

ATTACHED TO THIS NOTICE IS A LIST OF GOVERNMENT APPROVED HOUSING COUNSELING AGENCIES IN YOUR AREA WHICH PROVIDE FREE OR VERY LOW-COST COUNSELING. YOU SHOULD CONSIDER CONTACTING ONE OF THESE AGENCIES IMMEDIATELY. THESE AGENCIES SPECIALIZE IN HELPING HOMEOWNERS WHO ARE FACING FINANCIAL DIFFICULTY. HOUSING COUNSELORS CAN HELP YOU ASSESS YOUR FINANCIAL CONDITION AND WORK WITH US TO EXPLORE THE POSSIBILITY OF MODIFYING YOUR LOAN, ESTABLISHING AN EASIER PAYMENT PLAN FOR YOU, OR EVEN WORKING OUT A PERIOD OF LOAN FORBEARANCE. IF YOU WISH, YOU MAY ALSO CONTACT US DIRECTLY AT 800-850-4622 AND ASK TO DISCUSS POSSIBLE OPTIONS.

WHILE WE CANNOT ASSURE THAT A MUTUALLY AGREEABLE RESOLUTION IS POSSIBLE, WE ENCOURAGE YOU TO TAKE IMMEDIATE STEPS TO TRY TO ACHIEVE A RESOLUTION. THE LONGER YOU WAIT, THE FEWER OPTIONS YOU MAY HAVE.

IF THIS MATTER IS NOT RESOLVED WITHIN 90 DAYS FROM THE DATE THIS NOTICE WAS MAILED, WE MAY COMMENCE LEGAL ACTION AGAINST YOU OR SOONER IF YOU CEASE TO LIVE IN THE DWELLING AS YOUR PRIMARY RESIDENCE.IF YOU NEED FURTHER INFORMATION, PLEASE CALL THE NEW YORK STATE BANKING DEPARTMENT'S TOLL-FREE HELPLINE AT 1-877-BANK-NYS (1-877-226-5697) OR VISIT THE DEPARTMENT'S WEBSITE AT

HTTP://WWW.BANKING.STATE.NY.US

COLLECTIONS DEPARTMENT
GMAC Mortgage, LLC

5:80

NOTICE: THIS IS AN ATTEMPT TO COLLECT ON A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE ONLY.

IF YOU HAVE FILED FOR BANKUPTCY OR IF YOU HAVE BEEN DISCHARGED OF YOUR PERSONAL LIABILITY FOR REPAYMENT OF THIS DEBT BY ORDER OF THE BANKRUPTCY COURT, THIS LETTER IS BEING PROVIDED FOR INFORMATIONAL PURPOSES ONLY, IS NOT AN ATTEMPT TO COLLECT THE DEBT FROM YOU PERSONALLY AND APPLIES ONLY TO OUR RIGHTS WITH REGARD TO THE PROPERTY.

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF Kings

---

THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE,

Plaintiff,

-against-

SHERRY ANN MURRAY, et al.,

Defendants.

---

**SUMMONS AND COMPLAINT**

---

**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
**Attorneys for Plaintiff**
**Main Office 51 E Bethpage Road**
**Plainview, NY 11803**
**516-741-2585**
**516-622-9434**
**RR&A: 10-001816**

Enterprise Process Service Inc
152 Islip Ave Suite 18
Islip New York NY 11751

2016 MAR 16 PM 1:26
KINGS COUNTY CLERK
FILED

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

INDEX NO. 6670 /2010

BANK OF NY MELLON TRUST CO,

Plaintiff,

-against-

SHERRY ANN MURRAY, et. al.

Defendants.

**NOTICE OF APPEARANCE**

**PLEASE TAKE NOTICE**, that the Defendant, SHERRY ANN MURRAY, hereby appears in this action and has retained the undersigned as Attorneys and demands that a copy of the complaint and all other papers in this action be served upon the undersigned at the address below.

Dated: Brooklyn, New York
May 23, 2011

**PETROFF LAW FIRM, P.C.**
By: Bryan J. Brockington
Attorneys for Defendant
SHERRY ANN MURRAY
1795 Coney Island Avenue
3rd Floor
Brooklyn, New York 11230
(718) 336-4200

FILED
KINGS COUNTY CLERK
11 JUN -2 PM 3:56

New York State Unified Court System

UCS COURTS

# WebCivil Supreme - Appearance Detail

Court: **Kings Supreme Court**
Index Number: **0006670/2010**
Case Name: **BANK OF NY MELLON TRUST CO vs. MURRAY,SHERRY ANN**
Case Type: **RES FORECL SUBPRIME/1-4**
Track: **Standard**

**Appearance Information:**

| Appearance Date | Time | Court Date Purpose | Fully Virtual | Court Date Type | Outcome Type | Justice Part | Remarks | Motion Seq |
|---|---|---|---|---|---|---|---|---|
| 10/13/2011 | | Supreme Trial | No | Unknown | OTHER FINAL DISP. PRE-NOTE | WAVNY TOUSSAINT FORECLOSURE SETTLEMENT CONF B | DISC/STIP DB | |
| 06/22/2011 | | Supreme Trial | No | Unknown | FSC ADJOURNED | WAVNY TOUSSAINT FORECLOSURE SETTLEMENT CONF B | CH DB | |
| 05/23/2011 | | Supreme Trial | No | Unknown | FSC ADJOURNED | WAVNY TOUSSAINT FORECLOSURE SETTLEMENT CONF B | DB-INCOMING ATTY TO FILE CONSENT TO CHGE | |
| 05/04/2011 | | Supreme Trial | No | Unknown | FSC ADJOURNED | WAVNY TOUSSAINT FORECLOSURE SETTLEMENT CONF B | CH MH | |
| 03/31/2011 | | Supreme Trial | No | Unknown | FSC ADJOURNED | WAVNY TOUSSAINT FORECLOSURE SETTLEMENT CONF B | CH MH | |
| 01/26/2011 | | Supreme Trial | No | Unknown | FSC ADJOURNED | WAVNY TOUSSAINT FORECLOSURE SETTLEMENT CONF B | CH MH | |
| 01/26/2011 | | Supreme Trial | No | Unknown | TRANSFERRED | WAVNY TOUSSAINT FORECLOSURE SETTLEMENT CONF | CH MH | |
| 11/09/2010 | | Supreme Trial | No | Unknown | FSC ADJOURNED | WAVNY TOUSSAINT FORECLOSURE SETTLEMENT CONF | CH MH | |
| 10/13/2010 | | Supreme Trial | No | Unknown | FSC ADJOURNED | WAVNY TOUSSAINT FORECLOSURE SETTLEMENT CONF | CH MH | |
| 07/29/2010 | | Supreme Trial | No | Unknown | FSC ADJOURNED | WAVNY TOUSSAINT FORECLOSURE SETTLEMENT CONF | CH MH | |
| 07/28/2010 | | Supreme Trial | No | Unknown | FSC ADJOURNED | WAVNY TOUSSAINT FORECLOSURE SETTLEMENT CONF | CH MH | |
| 07/19/2010 | | Supreme Trial | No | Unknown | FSC ADJOURNED | WAVNY TOUSSAINT FORECLOSURE SETT CONF-2PM | | |
| 06/16/2010 | | Motion | No | Unknown | MOTION DECIDED-OPEN APPEARANCE | WAVNY TOUSSAINT FORECLOSURE MOTION-RM 224 | | 1 |
| 05/14/2010 | | Supreme Initial (first time on) | No | Unknown | FSC ADJOURNED | WAVNY TOUSSAINT FORECLOSURE PRE-SETT 2:30 | MSC | |

Close

ORIGINAL

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE

Plaintiff,

-against-

SHERRY ANN MURRAY; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR CIT GROUP/CONSUMER FINANCE, INC(NY); NEW YORK STATE DEPARTMENT OF TAXATION & FINANCE; ; "JOHN DOES" AND "JANE DOES", SAID NAMES BEING FICTITIOUS, PARTIES INTENDED BEING POSSIBLE TENANTS OR OCCUPANTS OF PREMISES, AND CORPORATIONS, OTHER ENTITIES OR PERSONS WHO CLAIM, OR MAY CLAIM, A LIEN AGAINST THE PREMISES,

Defendant(s),

---

Index No.: 6670/10

STIPULATION DISCONTINUING ACTION ~~AND CANCELING NOTICE OF PENDENCY~~

87 BLAKE AVENUE
BROOKLYN, NY 11212

Section:
Block: 3536
Lot: 53

**IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned attorneys for Plaintiff and attorneys for Defendant(s) that:

1. This mortgage foreclosure action was commenced to foreclose a certain mortgage held by Plaintiff upon premises known as 87 BLAKE AVENUE, BROOKLYN, NY 11212.

2. The Summons, Complaint and Notice of Pendency were duly filed on or about 03/16/2010.

3. Since the commencement of this action, Plaintiff requested that the within action be discontinued.

4. Upon information and belief, all of the Defendants have been served with the Summons and Complaint in this action and their time to answer and/or appear has expired and has not been extended; and all Defendants have defaulted in pleading except SHERRY ANN MURRAY, who appeared herein by attorney(s).

5. All parties who appeared have signed this Stipulation.

6. Upon information and belief, none of the parties is an infant, incompetent

Kings County Clerk
BANK OF NEW YORK ETC.
Total: 35.00
Check 35.00
35.00

KINGS COUNTY SUPREME COURT MOTION SUPPORT APPROVED
DATE:

absentee.

7. This Stipulation may be executed in duplicate original, and when taken together shall be deemed one original.

**WHEREFORE**, it is requested that this action be deemed discontinued without prejudice and that the County Clerk cancel the Notice of Pendency.

Dated: July 29, 2011

By: ______________________
Richard Mullen, Esq.
Rosicki, Rosicki & Associates, P.C.
Attorneys for Plaintiff
26 Harvester Avenue
Batavia, NY 14020
585.815.0288

Dated:

By: ______________________
Bryan J. Brockington, Esq.
Petroff Law Firm, PC
Attorney for Defendant
SHERRY ANN MURRAY
1795 Coney Island Avenue, 3rd Floor
Brooklyn, NY 11230

Index No. 6670/10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF Kings

---

THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE,

Plaintiff,

-against-

SHERRY ANN MURRAY, et al.,

Defendants.

---

**STIPULATION DISCONTINUING ACTION AND CANCELING NOTICE OF PENDENCY**

**ROSICKI, ROSICKI & ASSOCIATES, P.C.**

BY: ______________________
Richard Mullen, Esq.
Attorneys for Plaintiff
26 Harvester Avenue
Batavia, NY 14020
585.815.0288
585.815.0299
R,R&A #: 10-001816

ORIGINAL

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

----------------------------------------------------------------------x

THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE

Plaintiff,

-against-

SHERRY ANN MURRAY; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR CIT GROUP/CONSUMER FINANCE, INC(NY); NEW YORK STATE DEPARTMENT OF TAXATION & FINANCE; ; "JOHN DOES" AND "JANE DOES", SAID NAMES BEING FICTITIOUS, PARTIES INTENDED BEING POSSIBLE TENANTS OR OCCUPANTS OF PREMISES, AND CORPORATIONS, OTHER ENTITIES OR PERSONS WHO CLAIM, OR MAY CLAIM, A LIEN AGAINST THE PREMISES,

Defendant(s),

Index No.: 6670/10

AFFIDAVIT DISCONTINUING ACTION
87 BLAKE AVENUE
BROOKLYN, NY 11212

Block: 3536
Lot: 53

----------------------------------------------------------------------x

STATE OF NEW YORK )
) ss.:
COUNTY OF Genesee )

FORECLOSURE

Richard Mullen, Esq., the undersigned, an attorney duly admitted to practice law before the Courts of the State of New York, respectfully shows under the penalties of perjury:

I am an associate of the law firm of ROSICKI, ROSICKI & ASSOCIATES, P.C., attorneys for the plaintiff in the above-entitled action and as such am fully familiar with all of the facts hereinafter set forth based upon a review of the file maintained by my office and conversations with plaintiff's

1. This action was commenced to foreclose a mortgage against the property known as 87 BLAKE AVENUE, BROOKLYN, NY, 11212. The summons, complaint and notice of pendency were filed on or about 03/16/2010.

2. Upon information and belief, all of the defendants have been served with the summons and complaint in this action and none of the defendants have answered or appeared in this action and their time to do so has expired and has not been extended; except for defendant SHERRY ANN

MURRAY who appeared by counsel. (Annexed hereto is a stipulation consenting to the discontinuance of the action).

3. Upon information and belief, none of the defendants herein is an infant, incompetent person for whom a committee has been appointed, conservatee, absentee and no person not a party has an interest in the subject matter of this action.

4. After the commencement of this action, plaintiff requested that the action be discontinued. Therefore, affiant is requesting the discontinuance of the action without costs to any of the parties.

5. No Receiver or Referee has been appointed in this action.

6. A Judgment of Foreclosure and Sale has not been granted in this action.

7. No prior application has been made for the relief requested herein.

**WHEREFORE**, your affiant respectfully prays that the affirmation be entered herein discontinuing the above-entitled action without prejudice and for such other and further relief as to this court may deem just and proper.

[signature]

Richard Mullen, Esq.

Sworn to before me the

29 day of JULY, 2011

[signature]

Notary Public

JEAN M. PAONE
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED IN GENESEE COUNTY
LIC. #01PA6013834
COMMISSION EXPIRES SEPTEMBER 28, 20 14

Index No. 6670/10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF Kings

---

THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE,

Plaintiff,

-against-

SHERRY ANN MURRAY, et al.,

Defendants.

---

---

---

**AFFIDAVIT DISCONTINUING ACTION**

---

---

**ROSICKI, ROSICKI & ASSOCIATES, P.C.**

BY: ______________________

Richard Mullen, Esq.
Attorneys for Plaintiff
26 Harvester Avenue
Batavia, NY 14020
585.815.0288
585.815.0299
R,R&A #: 10-001816

2011 AUG -2 AM 11:55

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHERRY ANN MURRAY,<br><br>Plaintiff,<br><br>v.<br><br>NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING; AND PHH MORTGAGE CORPORATION D/B/A PHH MORTGAGE SERVICES,<br><br>Defendants. | CIVIL ACTION NO. 1:24-cv-6160 |

# MEMORANDUM OF LAW SUPPORTING PLAINTIFF'S MOTION TO DISMISS

HINSHAW

**HINSHAW & CULBERTSON LLP**
**800 Third Avenue, 13th Floor**
**New York, NY 10022**
**(212) 471-6200 (Phone)**
**(212) 935-1166 (Facsimile)**

## TABLE OF CONTENTS

I. STATEMENT OF FACTS ........ 1

II. LEGAL STANDARD ........ 4

III. ARGUMENT ........ 5

A. The RESPA Claim Premised On Her QWRs Fails As A Matter of Law (Count I) ........ 5

i. The QWRs are overbroad and unduly burdensome. ........ 5

ii. Murray fails to plead actual damages. ........ 7

B. The RESPA Claim Premised on Servicing Transfer Notices Also Fail (Count II) ........ 10

C. The State Law Claims for Deceptive Acts and Accounting Also Fail (Counts III-IV) ........ 10

i. The Claim for Deceptive Acts Fails to Plead Requisite Elements and is Untimely ........ 11

ii. There is No Private Right of Action for Accounting ........ 12

IV. CONCLUSION ........ 12

CERTIFICATE OF SERVICE ........ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Wells Fargo Home Mortg.*,
2017 U.S. Dist. LEXIS 154639 (E.D. Cal. Sept. 20, 2017) .......... 6, 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 5

*Bloom v. Nationstar Mtge.*,
73 Misc. 3d 327 (N.Y. Sup. Ct. 2021) .......... 12

*Bonadio v. PHH Mortg. Corp.*,
2014 U.S. Dist. LEXIS 20719 (S.D.N.Y. Jan. 13, 2014) .......... 7, 8

*Corazzini v. Litton Loan Serv. LLP*,
2011 U.S. Dist. LEXIS 63565 (N.D.N.Y. Jun. 15, 2011) .......... 9

*Crispino v. Greenpoint Mortg. Corp.*,
758 N.Y.S.2d 367 (2d Dep't 2003) .......... 8

*Dolan v. Select Portfolio Servicing*,
2016 U.S. Dist. LEXIS 101201 (E.D.N.Y. Aug. 2, 2016) .......... 10

*Fannie Mae v. Fraser*,
2019 N.Y. Misc. LEXIS (N.Y. Sup. Ct. 2019) .......... 11

*Gaidon v. Guardian Life Ins. Co. of Am.*,
96 N.Y.2d 201 (2001) .......... 12

*Garrasi v. Christiana Trust*,
2017 U.S. Dist. LEXIS 160055 (N.D.N.Y. Sept. 28, 2017) .......... 7

*Gorbaty v. Wells Fargo Bank, N.A.*
2012 U.S. Dist. LEXIS 55284 (E.D.N.Y. Apr. 18, 2012) .......... 4

*Gorbaty v. Wells Fargo Bank, N.A.*,
2014 U.S. Dist. LEXIS 135513 (E.D.N.Y. Sept. 19, 2014) .......... 6, 9, 10

*Hicks v. Wells Fargo Bank, N.A.*,
2020 U.S. Dist. LEXIS 104151 (W.D.N.Y. Jun. 15, 2020) .......... 5, 9, 10

*Jackson v. Caliber Home Loans*,
2018 U.S. Dist. LEXIS 126916 (E.D.N.Y. 2019) .......... 9, 10



70275\1078873\323333755.v1

*Katz v. Flat Rate Long Distance, Inc.*,
2022 N.Y. Misc. LEXIS 11107, . (N.Y. Sup. Ct. Jun. 30, 2022) ....................11

*Lau v. Specialized Loan Servicing, LLC*,
2024 U.S. Dist. LEXIS 116546 (S.D.N.Y. Jun. 27, 2024) ....................10

*Lou v. Trutex, Inc.*,
872 F. Supp. 2d 344 (S.D.N.Y. 2012)....................1

*Oneida Indian Nation v. Madison Cnty.*,
665 F.3d 408 (2d Cir. 2011)....................11

*Rosendale v. Mr. Cooper Grp. Inc.*,
2024 U.S. Dist. LEXIS 64612 (S.D.N.Y. Apr. 5, 2024)....................11

*Roth v. CitiMortgage, Inc.*,
2013 U.S. Dist. LEXIS 131861 (E.D.N.Y. Sept. 11, 2013)....................9

*Savran v. Chiang*,
650 N.Y.S. 2d 203 (1st Dep't 1996) ....................8

*Saxon Mtg. Servs., Inc. v. Hamilton*,
38 Misc. 3d 1201(A), (N.Y. Sup. Ct. 2012)....................11

*Toliver v. City of N.Y.*,
2011 U.S. Dist. LEXIS 120899 (S.D.N.Y. 2011) ....................1

*Wetiz v. Wagner*,
2009 U.S. Dist. LEXIS 110220 (E.D.N.Y. 2009)....................8

**Statutes**

12 U.S.C. § 2605(e) ....................5, 7

**Other Authorities**

12 C.F.R. 1024.35. 12 ....................5

12 C.F.R. § 1024.36 ....................5

12 C.F.R. § 1024.36(f)(1)(iv)....................6, 7

3 N.Y.C.R.R. § 419.4....................4

3 NYCRR §§ 419.4(a)-(d) ....................12

*https://www.consumerfinance.gov/rules-policy/regulations/1024/36/#36-f-1-iv-Interp-1* ....................6

NY CPLR 214(2) ........................................................................................................12

Rule 12(b)(6)..............................................................................................................1

Defendants NewRez LLC ("NewRez") and PHH Mortgage Corporation ("PHH") (collectively, "Defendants") submit this Memorandum of Law in support of their Motion to Dismiss, pursuant to FRCP 12(b)(1) and (6), the amended complaint ("Am. Compl."), with prejudice. As more fully discussed below, the amended complaint fails to adequately plead a cause of action under the Real Estate Settlement Procedures Act ("RESPA"), or its implementing provision, Regulation X. Further, this Court lacks subject-matter jurisdiction over state law claims, which are also inadequately pled. Because Murray has already been granted leave to cure these defects, this Court should dismissed the amended complaint with prejudice.

## I. Statement of Facts

Plaintiff Sherry Ann Murray filed her complaint on September 4, 2024. Doc. No. 1. Defendants, by letter-motion, sought permission to move to dismiss her complaint on October 31, 2024. Doc. No. 12. On November 8, 2024, this Court granted Murray leave to amend her complaint, if she so desired, and otherwise granted Defendants permission to file this motion. On November 22, 2024, Murray filed her amended complaint. Doc. No. 14.

Murray acknowledges she borrowed $440,325.00 at 7.75% interest on February 9, 2005, and gave a security interest on the property located at 87 Blake Avenue, Brooklyn, New York. Am. Compl., Doc. No. 14, ¶ 11. She defaulted on her monthly payment due on September 1, 2009, and those thereafter, and the noteholder commenced a foreclosure action on March 16, 2010 ("Foreclosure Action"). *See* Declaration of Sherry Xia ("Xia Decl."), Ex. A.[1] At the time of the

---

[1] The Court is permitted, "[i]n the Rule 12(b)(6) context, . . . [to] take judicial notice of prior pleadings and other related documents that appear in court records of prior litigation and that relate to the case *sub judice*." *Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 350 n.6 (S.D.N.Y. 2012). "Furthermore, federal courts are empowered to take judicial notice of state court records and decisions." *Toliver v. City of N.Y.*, 2011 U.S. Dist. LEXIS 120899, at *10 (S.D.N.Y. 2011).

Foreclosure Action, Murray's principal balance was $420,757.93. *Id.* at Ex. A, ¶ 11. She concedes she was represented by counsel in the Foreclosure Action. Am. Compl., Doc. No. 14, ¶ 18. In fact, the same attorneys, who represent Murray in this action, represented her in the Foreclosure Action. Xia Decl., Ex. B.

As part of the Foreclosure Action resolution,[2] GMAC Mortgage, LCC (servicer at the time), offered Murray a Non-HAMP Loan Modification Agreement (the "Modification"). Am. Compl., Doc. No. 14, ¶¶ 12-14, Ex. 2. The Modification was effective October 1, 2011. *Id.* at Ex. 2. It deferred $131,717.67 of the total debt due on the loan, interest free, leaving $378,884.48 as the principal balance bearing interest.[3] *Id.* It also reduced the interest rate to 3.8750% for 5 years, and 4.25% thereafter. *Id.* Murray accepted the Modification – on the advice of counsel – and stipulated to the dismissal of the Foreclosure Action. Xia Decl., Ex. D.

Now, approximately 14 years later, despite being advised by same counsel to sign the Modification, Murray questions whether the interest-free, deferred principal of $131,717.67 included "excessive, illegal, and/or improper" fees and advances. Am. Compl., Doc. No. 14, ¶ 18, Ex. 2.[4] She alleges that she mailed Qualified Written Requests ("QWRs") to the Defendants. Am.

---

[2] The New York State Unified Court System WebCivil Supreme – Appearance Detail reflects multiple court mandated foreclosure settlement conferences mediated by the state foreclosure court, which necessarily would have included discussions of the Modification and terms. Xia Decl., Ex. C.

[3] The total principal balance (interest bearing and interest free) was therefore $510,602.15, of which $89,844.22 was the arrears (when $420,757.93, the principal balance at the time of the 2009 default is subtracted from $510,602.15). *See* Xia Decl., Ex. A. (foreclosure complaint cites unpaid principal balance of $420,757.93). This amount of arrears is reasonable for a loan that had been in default for 2 years, with a monthly loan payment amounts of $3,154.54. 24 months times $3,154.54 is $75,696. She would have missed payments of taxes and insurance during this time as well.

[4] Indeed, pursuant to the terms of the Modification, Ex. 2 of Am. Compl., the Deferred Principal Balance of $131,717.67 is not due until the maturity date of March 1, 2035. Further, under the terms of the contract, interest "will be charged on the unpaid, non-deferred, 'New Principal

Compl., Doc. No. 14, Exs. 3-6. Despite her characterization that the alleged QWRs would have notified the Defendants of the alleged error with the Modification, they were, instead, overbroad requests for information. From PHH, Murray sought:

- A copy of the disclosure of "credit" or charge (points) for the specific interest rate chosen at the inception of the loan.
- List of all services and investors.
- Copy of the HUD-1 or HUD-1A Settlement Statement
- Copy of all settlement services provided to the borrower at the time of loan origination, including appraisal and flood certification fees, title service fees, recording charges, transfer tax charges, etc.
- Communications between services servicers and investors.
- A fully accounting of the past 20 years including escrow disbursements, invoices, receipts, itemizations of charges, property inspection fees, broker opinion fees, appraisal fees, and bankruptcy monitoring fees, even though it is not even clear if Murray has ever been in bankruptcy, as well as receipts for same.
- Property inspection reports and appraisals.
- Comprehensive definitional dictionary of all transaction codes.
- Copes if all servicing agreements, powers of attorney, and limited powers of attorney
- Procedural manuals used for servicing or subserving
- Agreement where the investor of the loan unequivocally exits or forever surrenders all rights to any possible compensation

*Id.* at Exs. 3-4. From NewRez, Murray demanded similar, irrelevant documents:

- Copy of the complete origination file, including the note, mortgage, HUD-1/settlement statement, borrower disclosures, and any other documents provided to and/or signed by the borrower at closing.
- Copies of written assignments of the mortgage

---

Balance.'" *Id* at ¶ 4. In other words, the Deferred Principal Balance is interest free, and not due until March 1, 2035.

Murray alleges that the balance due prior to the Modification (i.e., prior to $131,717.67 principal deferment), was $70,277.15 higher than the original loan balance of $440,325, and thus, the $70,277.15 represents "undisclosed and unidentified fees, interest, advances" that were added to the Plaintiff's loan balance. *Id.* at ¶¶ 15-17. This is not true; as explained in footnote 3, Murray was two years behind on her mortgage obligations. Hence why her property was in foreclosure. Thus, Murray's allegation that $70,277.15 as constituting only fees, interests and advances is fundamentally wrong, when it mainly represents two years of unpaid monthly mortgage payment arrears. Further, the $70,277.15 is necessarily subsumed in the greater number of $131,717.67, which was deferred and interest-free.

- Copy of the original note
- Identify individual or entity in physical possession of the original "wet-ink" note, including the address where the original note is being stored
- Identify any mortgage points or credits applied to the loan at origination, and any associated fees paid by the borrower. Please explain where there was a credit or a charge, and how it was applied to the loan. Provide copies of any associated disclosures provided to or signed by the borrower, including interest rate disclosures.
- 20 year payment history of the loan including every payment received from Murray and every payment made on behalf of Murray
- Name and address of each attorney who has been paid any fees related to the loan
- Payoff and reinstatement figures
- Property inspection and preservation reports, appraisals, broker price opinions, bankruptcy and/or foreclosure monitoring reports, invoices and payment receipts for any of these items
- Escrow analysis

*Id.* at Exs. 5-6. Wholly absent from the QWRs is any reference to the Modification or any notification as to a possible error regarding the Modification. *Id.*

Murray alleges Defendants ignored her QWRs, and also failed to send her servicing transfer notices. Am. Compl., Doc. No. 14. As a result, she brings claims for damages under RESPA (Counts I-II). She also brings state law claims for deceptive business acts under N.Y. GBL § 349 (Count III) and accounting under 3 N.Y.C.R.R. § 419.4 (Count IV).

## II. LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to withstand a motion to dismiss." *Gorbaty v. Wells Fargo Bank, N.A.* 2012 U.S. Dist. LEXIS 55284, at *6 (E.D.N.Y. Apr. 18, 2012). Where there are well-plead factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id* at *6-7. A claim is facially plausible "when the plaintiff pleads



70275\1078873\323333755.v1

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.

## III. ARGUMENT

### A. The RESPA Claim Premised On Her QWRs Fails As A Matter of Law (Count I)

Murray fails to make out a cognizable cause of action under RESPA for Defendants' alleged failure to respond to the QWRs. First, Murray fails to plead that Defendants violated the QWR rules. On their face, the QWRs are overbroad and unduly burdensome. Consequently, no response was required. Second, Murray fails to plead actual damages as required by RESPA.

#### *i. The QWRs are overbroad and unduly burdensome.*

As a threshold matter, the QWRs sent by Murray, on their face, are not notices of error. Am. Compl., Doc. No. 14, Exs. 3-6. A QWR is "correspondence" that identifies the account and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e). As defined, a QWR may include a notice of error, and be subject to 12 C.F.R. 1024.35. 12 C.F.R. 1024.35(a) specifically provides that a proper notice of error must state "the error the borrower believes has occurred." *See also Hicks v. Wells Fargo Bank, N.A.*, 2020 U.S. Dist. LEXIS 104151, at *15 (W.D.N.Y. Jun. 15, 2020) ("plaintiff must identify a 'covered error' to sustain a § 1024.35 claim[,]" otherwise not subject to the requirements of § 1024.35(d)). Here, however, the alleged QWRs sent to Defendants did not contain any notice of a potential covered error, failing to mention the Modification or any perceived problems with the Deferred Principal Balance contained in the Modification. Am. Compl., Doc. No. 14, Exs. 3-6. Murray's QWRs are instead requests for information subject to 12 C.F.R. § 1024.36.

12 C.F.R. § 1024.36(f)(1)(iv) explicitly provides that a servicer is not required to respond where the "information request[ed] is overbroad or unduly burdensome."[5] Specifically,

> [a]n information request is overbroad if the borrower requests that the service provide an unreasonable volume of documents or information to a borrower. An information request is unduly burdensome if a diligent servicer could not respond to the information request without either exceeding the maximum time limit permitted by paragraph (d)(2) [of 30 days] or incurring costs (or dedicating resources) that would be unreasonable in light of the circumstances.

*Id.* The CFBP's official interpretation of the paragraph states that "[r]equests for information that seek documents relating to substantially all aspects of mortgage origination, mortgage servicing, mortgage sale or securitization, and foreclosure, including, for example, requests for all mortgage loan file documents, recorded mortgage instruments, servicing information and documents, and sale or securitization information and documents" is, by definition, overbroad and unduly burdensome. *See* *https://www.consumerfinance.gov/rules-policy/regulations/1024/36/#36-f-1-iv-Interp-1*.

*Anderson v. Wells Fargo Home Mortg.*, 2017 U.S. Dist. LEXIS 154639 (E.D. Cal. Sept. 20, 2017) is instructive. There, the QWR attached to the complaint included "several questions amounting to requests for the complete life of loan transactional history." *Id.* at *13. On a motion to dismiss, the court concluded that the QWR, on its face, was overbroad and unduly burdensome, and thus, did not require a further response. *Id.* at *13-14. The court also found that the complaint

---

[5] Indeed, QWRs "relate to the servicing of the loan, rather than the creation or modification of a loan." *Gorbaty v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 135513 (E.D.N.Y. Sept. 19, 2014) ("Because these materials concern the origination and alleged modification of Gorbaty's loans . . . they do not relate to Defendants' role as a service[r] and accordingly fall outside the ambit of § 2605"); *Anderson v. Wells Fargo Home Mortg.*, 2017 U.S. Dist. LEXIS 154639 (E.D. Cal. Sept. 20, 2017) ("requests for documents and information relating to the original loan transaction and its subsequent history do not qualify as QWRs").

failed to identify what specific, narrow issues the plaintiff expected the defendant to address so as to limit the overreach of the QWR. *Id.* at *14.

Murray's complaint similarly fails because the QWRs attached to the complaint are, as a matter of law, overbroad and unduly burdensome. Am. Compl., Doc. No. 14, Exs. 3-6. They effectively seek anything and everything related to the loan: mortgage origination, mortgage servicing, invoices, fees, manuals, definitions, receipts, mortgage instruments, securitization information and documents. Her QWRs are, by definition, "overbroad" and "unduly burdensome" pursuant to § 1024.36(f)(1)(iv), and no response was required from the Defendants.

To the extent Murray argues that Defendants could have "reasonably identif[ied] a valid information request," her amended complaint is wholly silent on how Defendants could have discerned what information they should have prioritized in providing her. *Id.* This is because her QWRs are completely silent on the one matter that she is allegedly concerned about – the Modification. As a matter of law, Murray has failed to plead that Defendants violated RESPA. The amended complaint should be dismissed.

***ii. Murray fails to plead actual damages.***

Assuming, *arguendo*, that Defendants were required to respond to the sweeping QWRs, Murray also fails to plead actual damages. It is well-established that "[a]lthough RESPA permits recovery of both actual and statutory damages, proof of actual damages is mandatory to recover on a § 2605(e) violation, and a § 2605(e) claim cannot stand on statutory damages alone." *Bonadio v. PHH Mortg. Corp.*, 2014 U.S. Dist. LEXIS 20719, at *14 (S.D.N.Y. Jan. 13, 2014); *Garrasi v. Christiana Trust*, 2017 U.S. Dist. LEXIS 160055 (N.D.N.Y. Sept. 28, 2017) ("Courts in this Circuit have held that proof of actual damage is mandatory" and RESPA claim cannot "stand on statutory damages alone"). "A plaintiff seeking actual damages under § 2605 must allege that the



70275\1078873\323333755.v1

damages were proximately caused by the defendant's violation of RESPA." *Bonadio*, 2014 U.S, Dist. LEXIS 20719, at *16.

Instead, her amended complaint concedes that she does not even know if she has suffered any actual damages, stating, "Defendants' failure to respond to Plaintiff's QWRs . . . imped[es] her ability to identify *potential* account or servicing errors." Am. Compl., Doc. No. 14, ¶ 78 (emphasis added). Paradoxically, she then guesses, in conclusory fashion, that the Modification added improper fees, interest and other charges to her loan balance.[6] *Id.* at ¶¶ 15-18, 80. Her speculation must be rejected. *See Wetiz v. Wagner*, 2009 U.S. Dist. LEXIS 110220, at *18 (E.D.N.Y. 2009) (mere speculation is not sufficient to prove causal relationship to actual damages).

She ratified the Modification contract in 2011. *See generally Crispino v. Greenpoint Mortg. Corp.,* 758 N.Y.S.2d 367 (2d Dep't 2003) (holding where mortgagor actively participated in the transaction or negotiations pertaining to the mortgage contract, mortgagor is precluded from challenging validity of contract); *Savran v. Chiang*, 650 N.Y.S. 2d 203 (1st Dep't 1996) (mortgagors precluded from attacking the executed contract from which they benefited and four years after being on notice of potential issues). She actively participated in state foreclosure court settlement conferences and was represented by the same counsel in this action. *See* Xia Decl., ¶¶3-4. The Modification was the result of those court mediated settlement conferences, and

---

[6] As discussed, *supra*, in footnote 3 and 4, Murray's contention that the Deferred Principal Balance of $131,717.67 in the Modification, contains $70,277.15 of improper fees is patently false. It contains two years of missed monthly mortgage and escrow payments, which is why she was in a state court foreclosure proceeding.

Murray and her counsel could have discerned from the face of the Modification whether it contained questionable figures, as she alleges here at paragraphs 15-18 of the amended complaint.

Contrary to her conclusory allegations that the Modification caused her great harm, she executed the Modification, with favorable terms including interest-free principal deferment, and avoided foreclosure. Xia Decl., ¶ 4, Ex. D. Murray makes no attempt to explain how Defendants' lack of a response to sweeping QWRs in 2024 — seeking irrelevant communications with the investor, HUD-1 statements, mortgage points, appraisals, definitional guidelines, among other things — could have proximately caused her damages in the form of a 2011 Modification that supposedly added improper charges and fees to her loan balance. Murray does not offer anything other than conclusory allegations. *See Corazzini v. Litton Loan Serv. LLP*, 2011 U.S. Dist. LEXIS 63565, at *12 (N.D.N.Y. Jun. 15, 2011) ("courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff"). She has failed to plead actual damages.

Further, her claims of actual damages in the form of attorneys' fees and emotional distress must also be rejected. Attorneys' fees in a QWR case do not constitute actual damages — "[i]f such were the case, every RESPA suit would inherently have a claim for damages built in." *Jackson v. Caliber Home Loans,* 2018 U.S. Dist. LEXIS 126916 (E.D.N.Y. 2019). "Rote allegations of stress and emotional distress . . . are also insufficient to make out a facially valid claim for damages." *Hicks v. Wells Fargo Bank, N.A.*, 2020 U.S. Dist. LEXIS 104151, at *6 (W.D.N.Y. Jun, 15, 2020); *Gorbaty v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 135513, at *18 (E.D.N.Y. Sept. 19, 2014); *Roth v. CitiMortgage, Inc.*, 2013 U.S. Dist. LEXIS 131861, at *21 (E.D.N.Y. Sept. 11, 2013). Count I of the amended complaint should be dismissed with prejudice.

**B. The RESPA Claim Premised on Servicing Transfer Notices Also Fail (Count II)**

Count II for allegedly failing to send servicing transfer notices similarly fails to plead actual damages. *Lau v. Specialized Loan Servicing, LLC*, 2024 U.S. Dist. LEXIS 116546 (S.D.N.Y. Jun. 27, 2024) (affirming magistrate's finding that "Plaintiffs had failed to allege any non-conclusory factual allegations specifying actual damages proximately caused by the absence of such notice" and that actual damages are a prerequisite to additional damages for pattern or practice of non-compliance); *see also*, *Dolan v. Select Portfolio Servicing,* 2016 U.S. Dist. LEXIS 101201, at *5 (E.D.N.Y. Aug. 2, 2016) ("plain language of Section 2605 indicates that an allegation of actual damages is necessary to state a claim for liability"); *Gorbaty*, 2014 U.S. Dist. LEXIS 135513, at *5. Murray claims that because she did not allegedly receive notices of servicing transfers to PHH and/or NewRez in 2018 and 2019, respectively. Am. Compl., Doc. No. 14, ¶¶ 32-33. She claims that because she does not know who her servicer is, she has been deprived of an opportunity to correct the alleged mistakes in the 2011 Modification. This is the conclusory argument of counsel.

It defies logic that Murray could have been making monthly mortgage payments under the 2011 Modification all these years without knowing the servicer to whom she was sending those payments. But even if she didn't, as discussed *supra* in Section III.A.ii., she has failed to plead any causal link between the alleged RESPA violation and the allegedly inflated Deferred Principal Balance contained on the face of the Modification, which she ratified in 2011. Further, as discussed *supra*, conclusory claims for attorneys' fees and emotional distress do not constitute actual damages under RESPA. *Jackson,* 2018 U.S. Dist. LEXIS 126916 (attorneys' fees do not constitute actual damages; *Hicks*, 2020 U.S. Dist. LEXIS 104151, at *6 (rote claims of emotional distress also do not constitute actual damages). The amended complaint must be dismissed.

**C. The State Law Claims for Deceptive Acts and Accounting Also Fail (Counts III-IV)**

Jurisdiction of this Court is premised on federal questions, according to the amended complaint. Doc. No. 14, ¶ 8. Because the RESPA claims fail as a matter of law, this Court should decline to exercise supplemental jurisdiction over Murray's state law claims. *Oneida Indian Nation v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir. 2011) ("[W]e have relatedly said that if a plaintiff's federal claims are dismissed . . . , the state law claims should be dismissed as well.").

Even assuming this Court were to retain jurisdiction, both state law claims fail to plead a cause of action. The GBL § 349 claim is also untimely.

***i. The Claim for Deceptive Acts Fails to Plead Requisite Elements and is Untimely***

"To sustain a claim under GBL § 349, a plaintiff must show: (1) that the defendant's acts were consumer oriented; (2) that the acts or practices are deceptive or misleading in a material way; and (3) the plaintiff has been injured as a result." *Rosendale v. Mr. Cooper Grp. Inc.*, 2024 U.S. Dist. LEXIS 64612 (S.D.N.Y. Apr. 5, 2024). "[A] plaintiff must, at the threshold, charge conduct that is consumer oriented," having a "broad impact on consumers at large." *Katz v. Flat Rate Long Distance, Inc.*, 2022 N.Y. Misc. LEXIS 11107, at *6-7. (N.Y. Sup. Ct. Jun. 30, 2022). "[P]rivate contract disputes unique to the parties that would not fall within the ambit of GBL 349." *Id*. at *7. New York courts have routinely held that GBL § 349 does not cover mortgage loans, which are private contracts. *See Fannie Mae v. Fraser*, 2019 N.Y. Misc. LEXIS, at *9 (N.Y. Sup. Ct. 2019) ("Fraser Defendants have not established the subject transaction – a private residential mortgage and load, had a boarder impact on the public at large"); *Albany Ave. Partners LLC v. Beaulieu*, 2019 N.Y. Misc. LEXIS, at *16 (N,Y. Sup. Ct. 2019) ("Beaulieu has not established how the subject transactions, both of which were private loans, had a broader impact on the public at larger. For this reason alone, dismissal of Beaulieu's counterclaim for violation of GBL § 349 is warranted"); *Saxon Mtg. Servs., Inc. v. Hamilton*, 38 Misc. 3d 1201(A), at *10-11 (N.Y. Sup.



70275\1078873\323333755.v1

Ct. 2012) ("that the plaintiff sought and received a loan" that he now disputes "does not mean that he can now proceed on GBL § 349").

Here, Murray cannot plead the elements of broad consumer impact or damages. Murray's creative attempt to recast her RESPA claims as a GBL § 349 claim should be rejected because, as discussed above, those RESPA claims for failure to respond to overbroad QWRs — which did not warrant responses — and to send servicing transfer notices, could not have caused her any actual damages. The crux of Murray's GBL § 349 claim is an attempt to challenge the 2011 Modification, which is a private mortgage contract, outside of the ambit of GBL § 349 as a matter of law.

Further, the statute of limitations for GBL § 349 is three (3) years. NY CPLR 214(2). Accrual for a claim under GBL § 349 beings once a "plaintiff has been injured by a deceptive act or practice violating section 349." *Gaidon v. Guardian Life Ins. Co. of Am.,* 96 N.Y.2d 201 (2001). The amended complaint alleges the injury occurred when Defendants assessed improper fees and costs to the 2011 Modification, increasing the principal balance of the loan. Doc. No. 14, ¶ 97. Murray's was thus required to bring a GBL § 349 claim by 2014. The state law claim must be dismissed with prejudice.

***ii. There is No Private Right of Action for Accounting***

Finally, Murray's claim that she is entitled to accounting under 3 NYCRR §§ 419.4(a)-(d) is wrong. The statute is "enforceable by New York State's Department of Financial Services," but creates no private right of action for borrowers like Murray. *Bloom v. Nationstar Mtge.*, 73 Misc. 3d 327, 331 (N.Y. Sup. Ct. 2021). As such, Count IV for accounting fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the amended complaint fails to plead a valid cause of action. The Court should also declined supplemental jurisdiction over the state law claims. The amended

complaint should be dismissed with prejudice, as Murray already received an opportunity to address the defects in her initial complaint and file this amended complaint.

Dated: December 20, 2024
New York, New York

Respectfully submitted,
Attorney for Defendants
By: Its Attorney

*/s/ Sherry Xia*

Sherry Xia
HINSHAW & CULBERTSON LLP
800 Third Avenue, 13th Floor
New York, NY 10022
212-471-6201
sxia@hinshawlaw.com

**CERTIFICATE OF SERVICE**

I, Sherry Xia, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 20, 2024.

*/s/ Sherry Xia*
Sherry Xia

PETROFF AMSHEN

Serge F. Petroff
*Steven Amshen
James Tierney
Jill Schaefer
Maria Garber

*(*admitted in New York & New Jersey)*

January 13, 2025

**VIA E-MAIL**
Sherry Xia, Esq.
Hinshaw & Culbertson, LLP
800 Third Avenue, 13th Floor
New York, New York 10022
Email: sxia@hinshawlaw.com

**Re:** ***Murray v. Newrez LLC d/b/a Shellpoint Mortgage Servicing, et al.***
**Civil Action No. 1:24-cv-06160-ARR-TAM**
**Plaintiff's Opposition to Defendants' Motion to Dismiss**

Dear Ms. Xia:

We represent Plaintiff Sherry Ann Murray ("Plaintiff") in this matter. Pursuant to the Court's order dated November 27, 2024, and in accordance with Judge Ross's Individual Practices and Rules, enclosed for service is Plaintiff's opposition to Defendants' Motion to Dismiss filed on December 20, 2024 (ECF Doc. Nos. 16-17), including the (i) Declaration of Steven Amshen dated January 13, 2025, with exhibits; (ii) Memorandum of Law dated January 13, 2025; and (iii) Certificate of Service. Please proceed with electronically filing these papers with the fully-briefed motion on or before January 28, 2025, as directed by the Court.

Sincerely yours,

*/s/ Steven Amshen*
Steven Amshen

cc: Hon. Allyne R. Ross, U.S.D.J. (*Courtesy Copy* – via UPS)

PETROFF AMSHEN

Serge F. Petroff
*Steven Amshen
James Tierney
Jill Schaefer
Maria Garber

*(*admitted in New York & New Jersey)*

January 13, 2025

***COURTESY COPY***
***ORIGINAL TO BE FILED BY ECF, ASSIGNED DOCKET NO. 1:24-cv-06160-ARR-TAM***

**VIA UPS**
Hon. Allyne R. Ross, U.S.D.J.
U.S. District Court, Eastern District of New York
225 Cadman Plaza East, Courtroom 8C S
Brooklyn, New York 11201

**Re:** ***Murray v. Newrez LLC d/b/a Shellpoint Mortgage Servicing, et al.***
**Civil Action No. 1:24-cv-06160-ARR-TAM**
**Plaintiff's Opposition to Defendants' Motion to Dismiss**

Dear Judge Ross:

We represent Plaintiff Sherry Ann Murray ("Plaintiff") in this matter. Pursuant to the Court's order dated November 27, 2024, and in accordance with Your Honor's Individual Practices and Rules, enclosed is a courtesy copy of Plaintiff's opposition to Defendants' Motion to Dismiss filed on December 20, 2024 (ECF Doc. Nos. 16-17), including the (i) Declaration of Steven Amshen dated January 13, 2025, with exhibits; (ii) Memorandum of Law dated January 13, 2025; and (iii) Certificate of Service.

As further directed in the Court's order, all motion papers will be electronically filed by Defendants, as the moving parties, on the date the motion is fully briefed, which shall be on or before January 28, 2025.

Respectfully submitted,

*/s/ Steven Amshen*
Steven Amshen

cc: All counsel of record (*Cover Letter Only* – via CM/ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHERRY ANN MURRAY,

Plaintiff,

-against-

NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING; and PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES,

Defendants.

Civil Action
Case No.: 1:24-cv-6160-ARR-TAM

**CERTIFICATE OF SERVICE**

I, Steven Amshen, hereby affirm, under penalties of perjury, that I am an attorney-at-law admitted to practice before the Courts of the State of New York and this Court, and a partner with the law firm of Petroff Amshen LLP, attorneys for Plaintiff Sherry Ann Murray ("Plaintiff"). On January 13, 2025, I caused to be served via E-Mail, Plaintiff's opposition to Defendants' Motion to Dismiss, including (i) Cover Letter; (ii) Declaration of Steven Amshen dated January 13, 2025, with exhibits; (iii) Memorandum of Law dated January 13, 2025; and (iv) this certificate of service, upon the following parties:

Sherry Xia, Esq.
Hinshaw & Culbertson, LLP
800 Third Avenue, 13th Floor
New York, New York 10022
Email: sxia@hinshawlaw.com
*Attorneys for Defendants*

I hereby affirm that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I may be subject to punishment.

Dated: Brooklyn, New York
January 13, 2025

*/s/ Steven Amshen*
Steven Amshen, Esq.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERRY ANN MURRAY,<br><br>Plaintiff,<br><br>-against-<br><br>NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING; and PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES,<br><br>Defendants. | Civil Action<br>Case No.: 1:24-cv-6160-ARR-TAM<br><br>**DECLARATION OF STEVEN AMSHEN IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

I, Steven Amshen, hereby affirm the following under penalties of perjury:

1. I am an attorney-at-law admitted to practice before the Courts of the State of New York and this Court, and a partner with the law firm of Petroff Amshen LLP, attorneys for Plaintiff Sherry Ann Murray. Accordingly, I have personal knowledge of the matters set forth herein based on my review of public records and the file maintained by my firm.

2. I submit this declaration in opposition to the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (the "Motion to Dismiss") (ECF Doc. Nos. 16-17), brought by defendants Newrez LLC d/b/a Shellpoint Mortgage Servicing ("Newrez") and PHH Mortgage Corporation d/b/a PHH Mortgage Services ("PHH") (collectively, "Defendants").[1]

3. A true and correct copy of the PACER docket report in this matter, as of January 10, 2025, is annexed hereto as **Exhibit A**.

[1] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed in Plaintiff's amended complaint filed November 22, 2024 (ECF Doc. No. 14) (the "Amended Complaint").

4. Plaintiff commenced this action against Defendants on September 4, 2024. A true and correct copy of Plaintiff's complaint filed on September 4, 2024 (ECF Doc. No. 1), with exhibits, is annexed hereto as **Exhibit B**.

5. On October 31, 2024, Defendants filed a joint letter requesting a pre-motion conference for an anticipated motion to dismiss (ECF Doc. No. 12). A true and correct copy of Defendants' pre-motion letter filed on October 31, 2024, is annexed hereto as **Exhibit C**.

6. On November 7, 2024, Plaintiffs filed a response to Defendants' pre-motion letter (ECF Doc. No. 13). A true and correct copy of Plaintiff's response filed on November 7, 2024, is annexed hereto as **Exhibit D**.

7. On November 8, 2024, the Court granted Plaintiff leave to amend the complaint by November 22, 2024. *See* Ex. A.

8. On November 22, 2024, Plaintiff filed the Amended Complaint. A true and correct copy of the Amended Complaint filed on November 22, 2024, is annexed hereto as **Exhibit E**.

9. On December 20, 2024, Defendants filed the Motion to Dismiss (ECF Doc. Nos. 16-17). *See* Ex. A.

Dated: Brooklyn, New York
January 13, 2025

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Sherry Ann Murray

*/s/ Steven Amshen*
Steven Amshen, Esq. (ID No. SA2569)
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: samshen@petroffamshen.com

ACO,DJI

## U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:24-cv-06160-ARR-TAM

Murray v. Newrez LLC et al
Assigned to: Judge Allyne R. Ross
Referred to: Magistrate Judge Taryn A. Merkl
Cause: 28:1331 Fed. Question

Date Filed: 09/04/2024
Jury Demand: Plaintiff
Nature of Suit: 480 Consumer Credit
Jurisdiction: Federal Question

**Plaintiff**

**Sherry Ann Murray**

represented by **Steven Amshen**
Petroff Amshen LLP
1795 Coney Island Avenue, 3rd Floor
Brooklyn, NY 11230
718-336-4200
Fax: 718-336-4242
Email: samshen@petroffamshen.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Newrez LLC**
*doing business as*
Shellpoint Mortgage Servicing

represented by **Sirui Sherry Xia**
Hinshaw & Culbertson LLP
800 Third Avenue
13th Floor
New York, NY 10022
212-471-6201
Fax: 212-935-1166
Email: sxia@hinshawlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**PHH Mortgage Corporation**
*doing business as*
PHH Mortgage Services

represented by **Sirui Sherry Xia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/04/2024 | 1 | COMPLAINT against All Defendants filing fee $ 405, receipt number ANYEDC-18239118 Was the Disclosure Statement on Civil Cover Sheet completed -NO,, filed by Sherry Ann Murray. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons with Rider, # 3 Exhibit 1 - Mortgage dated February 9, 2005, # 4 Exhibit 2 - Loan Modification Agreement dated October 1, 2011, # 5 Exhibit 3 - QWR to Newrez dated May 6, 2024, # 6 Exhibit 4 - QWR to PHH dated May 6, 2024, # 7 Exhibit 5 - Second QWR to Newrez dated June 18, 2024, # 8 Exhibit 6 - Second QWR to PHH dated June 18, 2024) (Amshen, Steven) (Entered: 09/04/2024) |
| 09/04/2024 | | Case Assigned to Judge Allyne R. Ross and Magistrate Judge Taryn A. Merkl. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (CV) (Entered: 09/04/2024) |

| | | |
|---|---|---|
| 09/04/2024 | 2 | Clerk's Notice Re: Consent. A United States Magistrate Judge has been assigned to this case and is available to conduct all proceedings. In accordance with Rule 73 of the Federal Rules of Civil Procedure, Local Rule 73.1, the parties are notified that if all parties consent, the assigned Magistrate Judge is available to conduct all proceedings in this action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to this Notice is a blank copy of the consent form that should be filled out, signed and filed electronically only if all parties wish to consent. Any party may withhold its consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent.The form may also be accessed at the following link: https://img.nyed.uscourts.gov/files/forms/MJConsentForm.pdf (CV) (Entered: 09/04/2024) |
| 09/04/2024 | 3 | Summons Issued as to Newrez LLC, PHH Mortgage Corporation. (CV) (Entered: 09/04/2024) |
| 09/04/2024 | 4 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (CV) (Entered: 09/04/2024) |
| 09/19/2024 | 5 | SUMMONS Returned Executed by Sherry Ann Murray. Newrez LLC served on 9/10/2024, answer due 10/1/2024. (Amshen, Steven) (Entered: 09/19/2024) |
| 09/19/2024 | 6 | SUMMONS Returned Executed by Sherry Ann Murray. PHH Mortgage Corporation served on 9/10/2024, answer due 10/1/2024. (Amshen, Steven) (Entered: 09/19/2024) |
| 09/24/2024 | 7 | NOTICE of Appearance by Sirui Sherry Xia on behalf of PHH Mortgage Corporation (aty to be noticed) (Xia, Sirui) (Entered: 09/24/2024) |
| 09/24/2024 | 8 | Letter MOTION for Extension of Time to File Answer re 1 Complaint,, by PHH Mortgage Corporation. (Xia, Sirui) (Entered: 09/24/2024) |
| 09/25/2024 | | ORDER: The motion for extension of time 8 is granted, on consent. Defendant PHH Mortgage Corporation is respectfully directed to answer or otherwise respond to the complaint by **10/31/2024**. The parties are reminded that any motion practice must be initiated in accordance with the Individual Rules of the assigned District Judge. Ordered by Magistrate Judge Taryn A. Merkl on 9/25/2024. (ES) (Entered: 09/25/2024) |
| 10/03/2024 | | ORDER: On 9/4/2024, Plaintiff filed a complaint 1 . On 9/19/2024, Plaintiff filed proof of service indicating that Defendant Newrez LLC was served on 9/19/2024, rendering its answer due 10/1/2024. To date, Defendant has not answered or otherwise appeared. Defendants time to answer is extended to **10/24/2024**, and Plaintiff is directed to provide this order to Defendants, and to file proof of same on ECF by **10/10/2024**. In the absence of a response from Defendant, Plaintiff is directed to file a status report advising the Court on the current status of the case and anticipated next steps by **10/31/2024**. Ordered by Magistrate Judge Taryn A. Merkl on 10/3/2024. (ES) (Entered: 10/03/2024) |
| 10/03/2024 | 9 | AFFIDAVIT/AFFIRMATION re Order,, *Certificate of Service* by Sherry Ann Murray (Amshen, Steven) (Entered: 10/03/2024) |
| 10/16/2024 | 10 | NOTICE of Appearance by Sirui Sherry Xia on behalf of Newrez LLC (aty to be noticed) (Xia, Sirui) (Entered: 10/16/2024) |
| 10/16/2024 | 11 | Letter MOTION for Extension of Time to File Answer re 1 Complaint,, by Newrez LLC. (Xia, Sirui) (Entered: 10/16/2024) |
| 10/17/2024 | | ORDER: The motion for extension of time to file answer 11 is granted, on consent. Defendant shall file an answer or otherwise respond to the complaint by **10/31/2024**. The parties are respectfully reminded that any motion practice must be initiated in accordance with the Individual Rules of the assigned District Judge. Ordered by Magistrate Judge Taryn A. Merkl on 10/17/2024. (ERT) (Entered: 10/17/2024) |
| 10/31/2024 | 12 | Letter *Requesting a Pre-Motion Conference* by Newrez LLC, PHH Mortgage Corporation (Attachments: # 1 Exhibit A - Foreclosure Complaint, # 2 Exhibit B - Petroff Foreclosure Appearance, # 3 Exhibit C - WebCivil Supreme - Appearance Detail, # 4 Exhibit D - Stipulation of Discontinuance) (Xia, Sirui) (Entered: 10/31/2024) |

| | | |
|---|---|---|
| 10/31/2024 | | NOTICE: Defendants have submitted a letter 12 requesting a pre-motion conference regarding an anticipated motion to dismiss. Plaintiff's counsel is reminded that, under Judge Ross's Individual Motion Practices, plaintiff is required to file a responsive letter addressing the legal and factual bases of the anticipated motion within seven business days from service of defendants' letter, on or before November 12, 2024. (AL) (Entered: 10/31/2024) |
| 11/07/2024 | 13 | Letter *Response to Defendants' Request for Pre-Motion Conference (ECF 12)* by Sherry Ann Murray (Amshen, Steven) (Entered: 11/07/2024) |
| 11/08/2024 | | ORDER: The court has reviewed the parties' pre-motion letters concerning defendants' anticipated motion to dismiss and determined that a pre-motion conference is not necessary. The court grants plaintiff leave to amend her complaint, if she so desires, no later than November 22, 2024. In the event no amended complaint is filed, the court grants defendants permission to bring the proposed motion according to the following briefing schedule: defendants' motion and supporting papers shall be served no later than December 6, 2024; plaintiff's opposition papers shall be served no later than December 20, 2024; defendants' reply papers, if any, shall be served no later than December 27, 2024. The fully briefed motion shall be filed in accordance with chambers rules, including courtesy copies for chambers, no later than December 27, 2024. This schedule may be altered only with the permission of the court. Ordered by Judge Allyne R. Ross on 11/8/2024. (AL) (Entered: 11/08/2024) |
| 11/22/2024 | 14 | AMENDED COMPLAINT *with leave of Court* against Newrez LLC, PHH Mortgage Corporation, filed by Sherry Ann Murray. (Attachments: # 1 Exhibit Ex. 1 - Mortgage, # 2 Exhibit Ex. 2 - Loan Modification Agreement, # 3 Exhibit Ex. 3 - QWR to Newrez, # 4 Exhibit Ex. 4 - QWR to PHH, # 5 Exhibit Ex. 5 - Second QWR to Newrez, # 6 Exhibit Ex. 6 - Second QWR to PHH) (Amshen, Steven) (Entered: 11/22/2024) |
| 11/27/2024 | 15 | Letter MOTION for Extension of Time to File *[LETTER MOTION FOR EXTENSION OF TIME AS TO THE BRIEFING SCHEDULE RE DEFENDANT'S MOTION TO DISMISS]* by Newrez LLC, PHH Mortgage Corporation. (Xia, Sirui) (Entered: 11/27/2024) |
| 11/27/2024 | | ORDER granting 15 Motion for Extension of Time to File. Defendants' motion and supporting papers shall be served no later than December 20, 2024; plaintiff's opposition papers shall be served no later than January 14, 2025; defendants' reply papers, if any, shall be served no later than January 28, 2025. The fully briefed motion shall be filed in accordance with chambers rules, including courtesy copies for chambers, no later than January 28, 2025. This schedule may be altered only with the permission of the court. Ordered by Judge Allyne R. Ross on 11/27/2024. (AL) (Entered: 11/27/2024) |
| 12/20/2024 | 16 | MOTION to Dismiss for Failure to State a Claim by Newrez LLC, PHH Mortgage Corporation. (Attachments: # 1 Declaration of Sherry Xia Supporting Defendants' Motion to Dismiss, # 2 Exhibit A - Foreclosure Action Complaint, # 3 Exhibit B - Foreclosure Action Appearance, # 4 Exhibit C - WebCivil Supreme - Appearance Detail, # 5 Exhibit D - Foreclosure Action Stipulation of Discontinuance) (Xia, Sirui) (Entered: 12/20/2024) |
| 12/20/2024 | 17 | MEMORANDUM in Support re 16 MOTION to Dismiss for Failure to State a Claim filed by Newrez LLC, PHH Mortgage Corporation. (Xia, Sirui) (Entered: 12/20/2024) |

**PACER Service Center**

**Transaction Receipt**

01/10/2025 10:57:18

| | | | |
|---|---|---|---|
| **PACER Login:** | samshen85 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:24-cv-06160-ARR-TAM |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

HINSHAW

HINSHAW & CULBERTSON LLP
Attorneys at Law
800 Third Avenue
13th Floor
New York, NY 10022

212-471-6200
212-935-1166 (fax)
www.hinshawlaw.com

Sherry Xia
sxia@hinshawlaw.com

October 31, 2024

***VIA ECF***
Hon. Allyne R. Ross
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**RE:** *Murray v. Newrez LLC and PHH Mortgage Corporation, 1:24-cv-06160-ARR-TAM,*
Letter Requesting Pre-Motion Conference to File Rule 12(b)(1) and (6) Dismissal Motion

Dear Judge Ross:

Pursuant to your Honor's Individual Rules & Practices III.A., the defendants NewRez LLC ("NewRez") and PHH Mortgage Corporation ("PHH") (collectively, the "Defendants") respectfully seek a pre-motion conference for permission to file a motion to dismiss pursuant to FRCP 12(b)(1) and (6). As discussed below, such a motion is warranted here, where the complaint fails to plead actual damages, and the Court otherwise lacks jurisdiction over state law claims.

## I. This Complaint and the Underlying Foreclosure Action

Plaintiff Sherry Ann Murray filed her Complaint on September 4, 2024. Murray acknowledges that she borrowed $440,325.00 at 7.75% interest on February 9, 2005, and gave a security interest on the property located at 87 Blake Avenue, Brooklyn, New York. Compl., ¶ 15, Ex. 1. She defaulted on her monthly payment due on September 1, 2009, and those thereafter, and the noteholder commenced a foreclosure action on March 16, 2010 ("Foreclosure Action"). A copy of the Foreclosure Action complaint is enclosed as **Exhibit A**.[1] At the time of the Foreclosure Action, Murray's principal balance was $420,757.93. Ex. A, ¶ 11. She concedes she was represented by counsel in the Foreclosure Action. Compl., ¶ 19. In fact, the same attorneys, who represent Murray in this action, represented her in the Foreclosure Action. A copy of their Foreclosure Action appearance is enclosed as **Exhibit B**.

[1] The Court is permitted, "[i]n the Rule 12(b)(6) context, . . . [to] take judicial notice of prior pleadings and other related documents that appear in court records of prior litigation and that relate to the case *sub judice*." *Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 350 n.6 (S.D.N.Y. 2012). "Furthermore, federal courts are empowered to take judicial notice of state court records and decisions." *Toliver v. City of N.Y.*, 2011 U.S. Dist. LEXIS 120899, at *10 (S.D.N.Y. 2011).

As part of the Foreclosure Action resolution,[2] GMAC Mortgage, LCC (servicer at the time), offered Murray a Non-HAMP Loan Modification Agreement (the "Modification"). Compl. ¶¶ 16-17, Ex. 2. The Modification was effective October 1, 2011. *Id.* at Ex. 2. It deferred $131,717.67 of the total debt due on the loan, interest free, leaving $378,884.48 as the principal balance bearing interest.[3] *Id.* It also reduced the interest rate to 3.8750% for 5 years, and 4.25% thereafter. *Id.* Murray accepted the Modification – on the advice of counsel – and stipulated to the dismissal of the Foreclosure Action. A copy of the Foreclosure Action Stipulation of Discontinuance is enclosed as **Exhibit D**.

Now, 14 years later, she questions whether the deferred principal of $131,717.67 included "excessive, illegal, and/or improper" fees and advances. Compl., ¶ 19. She alleges that she demanded answers in 2024 by way of Qualified Written Requests ("QWRs"). She claims that NewRez and PHH ignored her QWRs, and also failed to send her servicing transfer notices. *Id.*, ¶¶ 22-24. As a result, she brings claims for damages under RESPA (Counts I-II). She also brings state law claims for deceptive business acts under N.Y. GBL § 349 (Count III) and accounting under 3 N.Y.C.R.R. § 419.4 (Count IV).

## II. Failure to Plead Actual Damages Under RESPA

Murray's RESPA claims premised on Defendants' alleged failure to respond to her QWRs[4] and to send servicing transfer notices fail to plead actual damages, and therefore, should be dismissed pursuant to FRCP 12(b)(6). It is well-established that "[a]lthough RESPA permits recover of both actual and statutory damages, proof of actual damages is mandatory to recover on a § 2605(e) violation, and a § 2605(e) claim cannot stand on statutory damages alone." *Bonadio v. PHH Mortg. Corp.*, 2014 U.S. Dist. LEXIS 20719, at *14 (S.D.N.Y. 2014). "A plaintiff seeking actual damages under § 2605 must allege that the damages were proximately caused by the defendant's violation of RESPA." *Id.* at *16.

Murray fails altogether to articulate what her actual damages are, and how the lack of a response to her sweeping QWRs caused any damages. She simply guesses, in conclusory fashion, that the lack of a response might mean that the Modification may have imposed improper fees, and caused emotion distress. Compl., ¶¶ 48-49.[5] Her speculation must be rejected. *See Wetiz v. Wagner*, 2009

---

[2] A copy of the New York State Unified Court System WebCivil Supreme – Appearance Detail, reflecting multiple court mediated foreclosure settlement conferences mediated by the state foreclosure court is enclosed as **Exhibit C.**

[3] The total principal balance (interest bearing and interest free) was therefore $510,602.15, of which $89,844.22 was the arrears (when $420,757.93, the principal balance at the time of the 2009 default is subtracted from $510,602.15). This amount of arrears is reasonable for a loan that had been in default for 2 years, with a monthly loan payment amounts of $3,154.54.

[4] Murray's QWRs are so overbroad and unduly burdensome – seeking every detail from communications with investors to points and credits at origination – that they are arguably improper and do not constitute QWRs. She did not once articulate in her QWRs what the alleged error was. Compl. Exs. 3-6.

[5] Her allegation that Defendants "refus[ed] to independently investigate [her] account to identify and correct errors" is specious when her own QWRs, appended to the Complaint (Exs. 3-6) fail to cite to any potential errors. They are nothing more than a fishing expedition.

U.S. Dist. LEXIS 110220, at *18 (E.D.N.Y. 2009) (mere speculation is not sufficient to prove causal relationship to actual damages). Murray had the benefit of counsel and the state foreclosure court's oversight when she executed the Modification in 2011. It defies reason that the alleged lack of a response to sweeping QWRs seeking communications with the investor, HUD-1 settlement statements, mortgage points at origination, appraisals, among other things, could have any causal connection in aiding Murray's understanding the $131,717.67 interest-free deferred principal under the Modification, which is not due until March 2035.

Her RESPA claim for the Defendants' alleged failure to send transfer notices similarly fails for failure to plead actual damages. *Lau v. Specialized Loan Servicing, LLC*, 2024 U.S. Dist. LEXIS 116546 (S.D.N.Y. 2024) (affirming magistrate's finding that "Plaintiffs had failed to allege any non-conclusory factual allegations specifying actual damages proximately caused by the absence of such notice"). Assuming, *arguendo*, Murray properly pled actual damages, she also has not demonstrated a "pattern or practice" of noncompliance by the Defendants to warrant statutory damages. *See Jackson v. Caliber Homes*, 2019 U.S. Dist. LEXIS 126916, at *26-27 (E.D.N.Y. 2019) ("two violations of RESPA based on Caliber's failure to adequately respond to her February and March letters" insufficient to demonstrate a pattern and practice).

## III. State Court Claims Fail to Plead A Cause of Action and For Lack of Jurisdiction

Given that Murray's federal claims fail as a matter of law, the Court should decline to exercise supplemental jurisdiction over her state law claims for deceptive business practices and accounting. *Oneida Indian Nation v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir. 2011) ("[W]e have relatedly said that if a plaintiff's federal claims are dismissed . . . , the state law claims should be dismissed as well."). Assuming this Court were to retain jurisdiction, both claims also fail as a matter of law. *See Katz v. Flat Rate Long Distance, Inc.*, 2022 N.Y. Misc. LEXIS 11107, at *6 (N.Y. Sup. Ct. 2022) (holding that allegations unique to plaintiff but lack an impact on the public at large do not sufficiently plead deceptive business practices under GBL § 349); *Bloom v. Nationstar Mtge. LLC,* 73 Misc. 3d 327 (N.Y. Sup. Ct. 2021) (explaining that no private right of action exists for 3 N.Y.C.R.R. § 419.4).

For the foregoing reasons, the Defendants respectfully seek a pre-motion conference to discuss the submission of a motion to dismiss pursuant to Rule 12(b)(1) and (6), and an appropriate briefing schedule. We thank the Court for its time and attention to this matter.

Respectfully submitted,
S. Sherry Xia of HINSHAW & CULBERTSON LLP
*Counsel for the Defendants*

Encl.
cc: All counsel of record (by ECF and e-mail)

PETROFF AMSHEN

Serge F. Petroff
*Steven Amshen
James Tierney
Jill Schaefer
Maria Garber

(*admitted in New York & New Jersey)

November 7, 2024

**VIA CM/ECF**
Hon. Allyne R. Ross, U.S.D.J.
U.S. District Court, Eastern District of New York
225 Cadman Plaza East, Courtroom 8C S
Brooklyn, New York 11201

**Re:** ***Murray v. Newrez LLC d/b/a Shellpoint Mortgage Servicing, et al.***
**Civil Action No. 1:24-cv-06160-ARR-TAM**
**Plaintiff's Response to Defendants' Letter Requesting Pre-Motion Conference**

Dear Judge Ross:

This office represents Plaintiff Sherry Ann Murray ("Plaintiff") in the referenced matter. Plaintiff respectfully submits this letter in opposition to the request for a pre-motion conference filed by Defendants Newrez LLC d/b/a Shellpoint Mortgage Servicing and PHH Mortgage Corporation d/b/a PHH Mortgage Services (collectively, "Defendants"). *See* ECF Doc. No. 12. Plaintiff opposes Defendants' intention to seek dismissal of claims pursuant to Fed. R. Civ. P. 12(b)(6), as each of Plaintiff's claims states a plausible claim for relief and sufficiently alleges damages. Notably, the Defendants do not provide a single legitimate basis for Rule 12(b)(6) dismissal of any claim, and instead improperly seek to litigate disputed facts at the pleading stage.

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
>
> * * *
>
> The court, in deciding a Rule 12(b)(6) motion to dismiss a complaint, is required to accept all "well-pleaded factual allegations" in the complaint as true. . . . The court must also "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff."

*Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020) (internal citations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)); *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009)). "Thus, the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch*, 952 F.3d at 75. "[C]ourts 'may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible,' since '[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Watson Labs., Inc.*, 101 F.4th 223, 235 (2d Cir. 2024) (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012)).

Case 1:24-cv-06160-ARR-TAM Document 13 Filed 11/07/24 Page 2 of 2 PageID #: 155



Defendants' arguments completely ignore the legal standard applicable to a Rule 12(b)(6) motion. Instead, Defendants improperly rely solely on their disputed and distorted version of the facts, and their misrepresentation that Plaintiff failed to allege actual damages supporting her claims. Accordingly, any Rule 12(b)(6) motion based on these disputed facts must fail as a matter of law.

Notably, Defendants do not dispute failing to acknowledge or respond to Plaintiff's multiple QWRs, which, on its own, demonstrates a servicing error and RESPA statutory violation supporting Plaintiff's claims. Further, Defendants' disingenuous implication that Plaintiff having prior attorney representation somehow absolves Defendants of any wrongdoing in capitalizing improper and undisclosed fees into the loan balance, is belied by the facts forming the very basis of this action – Defendants' deliberate and ongoing withholding of critical account information from Plaintiff. Like Plaintiff, Defendants' predecessors (the foreclosing entity and modifying "lender"/servicer in the 2011 foreclosure action) were also represented by counsel, but that did not stop them from knowingly concealing information regarding the fees and other amounts capitalized into the loan balance in connection with the modification, which information Defendants still refuse to disclose despite Plaintiff's multiple requests. Finally, Defendants improperly rely on additional "facts" and interpretations exceeding the scope of the complaint, which (i) do not appear in the purported "court records" cited by Defendants; (ii) are unproven allegations in a dismissed foreclosure action that was never adjudicated on the merits; and/or (iii) are simply made up and/or inappropriately speculative.

With respect to damages, Plaintiff clearly and repeatedly alleges actual damages throughout the complaint, including: (i) capitalization of excessive, illegal, and/or improper fees, advances, and other amounts into the loan balance in connection with the modification, and failure to fully or properly disclose these amounts to Plaintiff; and (ii) continuing accumulation of improper fees and interest resulting from Defendants' repeated refusal to provide Plaintiff with the requested account information, causing increased debt and financial burden on an ongoing basis. *See* ECF Doc. No. 1 (Complaint at ¶¶ 1, 18-19, 47-49, 62-63). Defendants' position that Plaintiff's allegations are in any way speculative or lacking specificity is particularly ironic, given Defendants' own reliance on speculative, manufactured "facts," and the Defendants' deliberate withholding and concealing of Plaintiff's account information.

Nonetheless, Defendants fail to recognize that at this initial pleading stage, Plaintiff does not need to prove her case. Plaintiff's burden on a Rule 12(b)(6) motion is only to sufficiently allege her claims which, if accepted as true (as they must be), state plausible claims for relief against the Defendants. Plaintiff's allegations do just that. For these reasons, dismissal of any claims at this stage is premature and inappropriate, and the Defendants' request should be denied.

Respectfully submitted,

*/s/ Steven Amshen*
Steven Amshen

cc: *All Counsel of Record* (via CM/ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERRY ANN MURRAY,<br><br>Plaintiff,<br><br>-against-<br><br>NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING; and PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES,<br><br>Defendants. | Civil Action<br>Case No.: 1:24-cv-6160-ARR-TAM<br>**Date of Service: January 13, 2025** |

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Sherry Ann Murray

*On the Brief:*
Steven Amshen, Esq.
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: samshen@petroffamshen.com

PETROFF AMSHEN

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 2

PROCEDURAL HISTORY ........ 5

LEGAL ARGUMENT ........ 6

I. LEGAL STANDARDS – RULES 12(b)(1) AND 12(b)(6). ........ 6

II. DEFENDANTS FAIL TO PRESENT A VALID BASIS FOR DISMISSAL OF THE AMENDED COMPLAINT UNDER RULE 12. ........ 9

A. Plaintiff's Amended Complaint Alleges Sufficient Facts Demonstrating Specific And Concrete Injury, Resulting From Defendants' Actions, To Establish Article III Standing. ........ 14

B. Plaintiff's Amended Complaint Alleges Plausible Claims For Relief Against Defendants, Precluding Rule 12(b)(6) Dismissal. ........ 16

i. Counts I and II – Violations of RESPA and Regulation X. ........ 16

ii. Count III – Deceptive Acts in Violation of GBL § 349. ........ 24

iii. Count IV – Accounting. ........ 25

CONCLUSION ........ 27

## TABLE OF AUTHORITIES

CASES

*138-77 Queens Blvd LLC v. Silver*,
682 F. Supp. 3d 271 (E.D.N.Y. 2023) ........ 8, 9

*Anderson News, L.L.C. v. Am. Media, Inc.*,
680 F.3d 162 (2d Cir. 2012)........ 9

*Arar v. Ashcroft*,
585 F.3d 559 (2d Cir. 2009)........ 8

*Arrow Comm. Labs., Inc. v. Pico Prods., Inc.*,
219 A.D.2d 859 (App. Div. 4th Dep't 1995) ........ 26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........ 8

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016)........ 6, 7

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)........ 13

*Concord Assocs., L.P. v. Entertainment Props. Tr.*,
817 F.3d 46 (2d Cir. 2016)........ 12

*Conyers v. Rossides*,
558 F.3d 137 (2d Cir. 2009)........ 7

*Global Network Commc'ns, Inc. v. City of N.Y.*,
458 F.3d 150 (2d Cir. 2006)........ 12, 13

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016)........ 12, 13, 24

*Gorbaty v. Wells Fargo Bank, N.A.*,
No. 10-CV-3291 (NGG)(SMG), 2012 WL 1372260 (E.D.N.Y. Apr. 18, 2012)........ 20

*Hernandez v. Conriv Realty Assocs.*,
182 F.3d 121 (2d Cir. 1999)........ 6

*In re Coppola*,
596 B.R. 140 (Bankr. D.N.J. 2018) ........ 14

*In re NYSE Specialists Sec. Litig.*,
503 F.3d 89 (2d Cir. 2007)........ 9

*Jackson v. Caliber Home Loans*,
No. 18-CV-4282 (NG)(CLP), 2019 WL 3426240 (E.D.N.Y. July 30, 2019) ........ 16, 18

*Kapsis v. Am. Home Mortg. Servicing Inc.*,
923 F. Supp. 2d 430 (E.D.N.Y. 2013) ........ 20, 23

*Kilgore v. Ocwen Loan Servicing, LLC*,
89 F. Supp. 3d 526 (E.D.N.Y. 2015) ........ 20

*Krausz v. loanDepot.com, LLC*,
No. 22-CV-152(VB), 2022 WL 16960928 (S.D.N.Y. Nov. 16, 2022)........ 7

*Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*,
87 F.3d 44 (2d Cir. 1996) ........ 26

*Linda R.S. v. Richard D.*,
410 U.S. 614 (1973)........ 14

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)........ 7, 14, 15

*Lujan v. Nat'l Wildlife Federation*,
497 U.S. 871 (1990)........ 7

*Lunney v. United States*,
319 F.3d 550 (2d Cir. 2003)........ 7

*Lynch v. City of New York*,
952 F.3d 67 (2d Cir. 2020)........ 8

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007)........ 8

*Oneida Indian Nation of N.Y. v. County of Oneida*,
414 U.S. 661 (1974)........ 6

*Onfroy v. L. Offs. of Geoffrey T. Mott, P.C.*,
No. 22-CV-02314 (EK)(LB), 2024 WL 4350489 (E.D.N.Y. Sept. 30, 2024)........ 14

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000)........ 9

*Roundtree v. City of N.Y.*,
778 F. Supp. 614 (E.D.N.Y. 1991) ........ 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)........ 14

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)........ 6

*Streit v. Bushnell*,
424 F. Supp. 2d 633 (S.D.N.Y. 2006)........ 9

*Sutton v. CitiMortgage, Inc.*,
228 F. Supp. 3d 254 (S.D.N.Y. 2017)........ 14

*Sweet v. Sheahan*,
235 F.3d 80 (2d Cir. 2000)........ 9, 10

*TileBar v. Glazzio Tiles*,
723 F. Supp. 3d 164 (E.D.N.Y. 2024) ........ 9, 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 14

*Walsh v. McGee*,
918 F. Supp. 107 (S.D.N.Y. 1996) .......... 8

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 7, 14

*Watson Labs., Inc.*,
101 F.4th 223 (2d Cir. 2024) .......... 9

*Wilson v. Northwestern Mut. Ins. Co.*,
625 F.3d 54 (2d Cir. 2010) .......... 24

STATUTES

New York General Business Law § 349 .......... 24, 25

Real Estate Settlement Procedures Act .......... 1, 4, 10, 15, 16, 17, 18, 20, 22, 23

RULES

Fed. R. Civ. P. 12 .......... 1, 9, 21

Fed. R. Civ. P. 12(b)(1) .......... 1, 6

Fed. R. Civ. P. 12(b)(6) .......... 1, 2, 6, 7, 12, 16

Fed. R. Civ. P. 56 .......... 21

CONSTITUTIONAL PROVISIONS

Article III .......... 6, 14, 15

REGULATIONS

12 C.F.R. § 1024.1, *et seq.* .......... 16

12 C.F.R. § 1024.33 .......... 16, 20, 23

12 C.F.R. § 1024.33(b)(1) .......... 20

12 C.F.R. § 1024.35 .......... 16, 17, 19, 23

12 C.F.R. § 1024.35(b) .......... 17

12 C.F.R. § 1024.35(b)(11) .......... 17, 19

12 C.F.R. § 1024.36 .......... 16, 19, 23

12 C.F.R. § 1024.36(a) ........ 18, 19
12 C.F.R. § 1024.36(c) ........ 19
12 C.F.R. § 1024.36(d)(1) ........ 19
12 C.F.R. § 1024.36(f)(1)(iv) ........ 10, 11, 21
12 C.F.R. § 1024.38(b) ........ 17
Regulation X ........ 10, 15, 16, 17, 18, 20, 22

CODES

12 U.S.C. § 2605 ........ 16
12 U.S.C. § 2605(b) ........ 16, 20, 23
12 U.S.C. § 2605(b)(1) ........ 20
12 U.S.C. § 2605(c) ........ 16, 20, 23
12 U.S.C. § 2605(e) ........ 16, 18
12 U.S.C. § 2605(e)(1)(A) ........ 18, 23
12 U.S.C. § 2605(e)(1)(B) ........ 18
12 U.S.C. § 2605(e)(2) ........ 19, 23, 24
12 U.S.C. § 2605(f) ........ 14, 16
12 U.S.C. § 2605(k)(1)(E) ........ 17, 23
12 U.S.C. § 2617(a) ........ 17

TREATISES

5A Wright & Miller, § 1356 ........ 8

Plaintiff Sherry Ann Murray ("Plaintiff"), by and through her attorneys, Petroff Amshen LLP, respectfully submits the following memorandum of law in opposition to the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (the "Motion to Dismiss") (ECF Doc. Nos. 16-17), brought by defendants Newrez LLC d/b/a Shellpoint Mortgage Servicing ("Newrez") and PHH Mortgage Corporation d/b/a PHH Mortgage Services ("PHH") (collectively, "Defendants").[1]

## PRELIMINARY STATEMENT

In moving to dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6), Defendants do not provide a single legitimate basis for dismissal of any claim, and improperly seek to litigate disputed facts at the pleading stage. Defendants' arguments completely ignore the legal standard applicable to Rule 12 motions, and rely solely on their disputed and distorted version of the facts, and misrepresentation of the applicable statutes and case law. Notably, Defendants do not dispute failing to acknowledge or respond to Plaintiff's multiple QWRs, which, on its own, demonstrates servicing errors and RESPA statutory violations supporting Plaintiff's claims. Further, Defendants' disingenuous implication that Plaintiff having prior attorney representation somehow absolves Defendants of any wrongdoing in capitalizing improper and undisclosed fees into the loan balance, is belied by the facts forming the very basis of this action – Defendants' deliberate and ongoing withholding of critical account information from Plaintiff.

Like Plaintiff, Defendants' predecessors were also represented by counsel in the prior foreclosure action Defendants repeatedly reference in the Motion to Dismiss, but that did not stop them from knowingly concealing information regarding the fees and other amounts capitalized

[1] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed in Plaintiff's amended complaint filed November 22, 2024 (ECF Doc. No. 14) (the "Amended Complaint").

into the loan balance in connection with the Modification, which information Defendants still refuse to disclose despite Plaintiff's multiple requests. Finally, Defendants improperly rely on additional "facts" and interpretations exceeding the scope of the Amended Complaint, which (i) do not appear in the purported "court records" cited by Defendants; (ii) are unproven allegations in a dismissed foreclosure action that was never adjudicated on the merits; and/or (iii) are simply made up and/or inappropriately speculative.

Defendants fail to recognize that at this initial pleading stage, Plaintiff does not need to prove her case. Plaintiff's burden on a Rule 12(b)(6) motion is only to sufficiently allege her claims which, if accepted as true (as they must be), state plausible claims for relief against the Defendants. Plaintiff's allegations do just that. For these reasons, dismissal of any claims at this stage is premature and inappropriate, and the Motion to Dismiss should be denied in its entirety.

## STATEMENT OF FACTS

Plaintiff is the owner of real property situated in Kings County and located at 87 Blake Avenue, Brooklyn, New York 11212 (the "Property"), and the obligor on a mortgage dated February 9, 2005, securing repayment of a loan in the original principal amount of $440,325.00, executed in favor of Professional Mortgage Bankers Corp. (the "Mortgage"). *See* Amshen Declaration dated January 13, 2025 (the "Amshen Dec."), Ex. E (Amended Complaint ¶¶ 10-11, Ex. 1). The Mortgage was recorded as a lien against the Property on March 2, 2005, under CRFN 2005000124847. *See id.*

The Mortgage was subsequently modified via a loan modification agreement between Plaintiff and GMAC Mortgage, LLC ("GMAC") dated October 1, 2011 (the "Modification"), effectively increasing the total principal owed on the loan to $510,602.15, $131,717.67 of which is a balloon payment due in full at maturity. *See* Amshen Dec., Ex. E (Amended Complaint ¶¶ 12-

13, Ex. 2). The Modification was recorded on November 14, 2011, under CRFN 2011000395248. *See id.* (Amended Complaint, Ex. 2). The Modification includes a balloon payment disclosure advising that a balloon payment in the amount of $131,717.67, representing the "Deferred Principal Balance" of the loan, will be due at maturity. *See id.*

Notably, while the Modification purports to defer $131,717.67 of the "old principal balance (the balance due prior to the date of th[e] loan modification)" of $510,602.15, leaving a "New Principal Balance" of $378,884.48, it provides no information regarding the amounts included in either the "Deferred Principal Balance," or the "New Principal Balance," of Plaintiff's loan. *See* Amshen Dec., Ex. E (Amended Complaint ¶ 15, Ex. 2). Given that the "old principal balance" identified in the Modification represents a $70,277.15 <u>increase</u> in the original principal owed on the loan, nearly seven years into the loan term, no less than $70,277.15 in undisclosed and unidentified fees, interest, advances, and other charges and amounts (collectively, the "Capitalized Sums") were added to Plaintiff's loan balance. *See id.* (Amended Complaint ¶ 16, Ex. 2).

The Capitalized Sums added to Plaintiff's loan balance before the Modification likely well exceeded $70,277.15, as Plaintiff's actual unpaid principal had been reduced from the original amount by years of monthly principal and interest payments Plaintiff made under the Mortgage. *See* Amshen Dec., Ex. E (Amended Complaint ¶¶ 17-19). However, the nature of these fees and other capitalized amounts included in the Capitalized Sums was not fully or properly disclosed to Plaintiff or her attorneys in connection with the Modification, nor were they fully or properly identified or disclosed to Plaintiff when they were added to her account or loan balance. *See id.*

GMAC was liquidated in bankruptcy shortly after the Modification was executed, and Plaintiff never received notice of any servicing transfers following the Modification with GMAC, leaving Plaintiff with nowhere to turn for answers or information related to her Mortgage account.

*See* Amshen Dec., Ex. E (Amended Complaint ¶¶ 24-28). Accordingly, Plaintiff again sought the assistance of her attorneys to investigate the potential servicer(s) of her Mortgage loan, who determined, upon information and belief, that PHH has been the servicer or subservicer of Plaintiff's Mortgage loan account since in or about 2018, and Newrez has been the master servicer of Plaintiff's Mortgage since on or about April 4, 2019. *See id.* (Amended Complaint ¶¶ 29-33).

Plaintiff's attorneys then sent a total of four (4) QWRs on Plaintiff's behalf to Newrez and PHH, seeking information about the servicing of Plaintiff's Mortgage loan account, and clarity regarding the amounts included in the modified loan balance. *See* Amshen Dec., Ex. E (Amended Complaint ¶¶ 34-36, Exs. 3-4). As Defendants readily admit, neither responded to Plaintiff's QWR, nor did they even acknowledge their receipt. *See* Amshen Dec., Exs. C, D, and E (Amended Complaint ¶¶ 37-38); *see also* Motion to Dismiss (ECF Doc. Nos. 16-17). When Defendants failed to respond to Plaintiff's first QWR, Plaintiff's attorneys then sent a second set of QWRs to Defendants, which they also admittedly failed to acknowledge or respond to. *See* Amshen Dec., Exs. C, D, and E (Amended Complaint ¶¶ 39-41, Exs. 5-6); *see also* Motion to Dismiss (ECF Doc. Nos. 16-17).

Now, faced with the indisputable fact that Defendants committed servicing errors by wholly failing to acknowledge or respond to Plaintiff's multiple QWRs, and in an attempt to deflect from their blatant failure to comply with statutory obligations under RESPA and its accompanying CFPB regulations, Defendants improperly present their own disputed, misrepresented, and largely irrelevant version of facts, as the sole basis for their Motion to Dismiss. Although neither Newrez nor PHH ever objected to, or disputed the type or scope of information sought in Plaintiff's QWRs (indeed, they never even bothered to acknowledge receipt of the QWRs), their counsel now claims in the Motion to Dismiss that the QWRs were "overbroad requests for information" to which "no

response was required." *See* ECF Doc. No. 17 (Defendants' Memorandum of Law in Support of Motion to Dismiss ("MOL in Support") at 3-5).

Defendants' presentation of disputed facts – including speculation and conjecture by their counsel, along with legal and factual misrepresentations, and irrelevant information regarding a prior foreclosure action that was dismissed and never adjudicated, provides no basis for this Court to grant Defendants' Motion to Dismiss. Accordingly, the Motion to Dismiss should be denied.

## PROCEDURAL HISTORY

Plaintiff commenced this action against Defendants on September 4, 2024 (ECF Doc. No. 1). *See* Amshen Dec., Exs. A, B. On September 24, 2024, PHH filed a motion for extension of time to answer, which was granted on consent to October 31, 2024. *See id.*, Ex. A. On October 3, 2024, Judge Merkl issued an order noting that Newrez had not answered or appeared by its answer deadline of October 1, 2024, and extended the answer deadline for Newrez, *sua sponte*, to October 24, 2024. *See id.* On October 16, 2024, Newrez appeared and filed a motion for extension of time to answer, which was also granted on consent to October 31, 2024. *See id.*

On October 31, 2024, Defendants filed a joint letter requesting a pre-motion conference regarding an anticipated motion to dismiss. *See* Amshen Dec., Ex. C. Plaintiff filed a response to Defendants' request for a pre-motion conference and, on November 8, 2024, the Court "determined that a pre-motion conference is not necessary," and granted Plaintiff leave to amend the complaint by November 22, 2024. *See id.*, Exs. A, D. On November 22, 2024, Plaintiff filed the Amended Complaint. *See id.*, Ex. E. Thereafter, on November 27, 2024, the Court issued an amended scheduling order regarding Defendants' anticipated motion to dismiss, and the Motion to Dismiss was filed on December 20, 2024. *See id.*, Ex. A.

## LEGAL ARGUMENT

### I. LEGAL STANDARDS – RULES 12(b)(1) AND 12(b)(6).

Defendants seek dismissal of Plaintiff's Amended Complaint in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), alleging that Plaintiff lacks Article III standing, and that the Amended Complaint fails to state a cause of action against Defendants. *See* Motion to Dismiss (ECF Doc. No. 17) (MOL in Support at 1). As an initial matter, even if Defendants' request for dismissal based on lack of Article III standing had merit, which it does not, Defendants' further request for dismissal with prejudice on that basis is wholly improper:

> [W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice. Such a dismissal is one for lack of subject matter jurisdiction; and without jurisdiction, the district court lacks the power to adjudicate the merits of the case. Accordingly, where there is a lack of Article III standing, "Article III deprives federal courts of the power to dismiss a case with prejudice."

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016) (internal citations omitted) (emphasis added) (quoting *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999)); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case." (emphasis in original)).

Also inapplicable to Plaintiff's detailed and well-pleaded Amended Complaint, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co.*, 523 U.S. at 89 (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974). Notably, "[a]t the pleading stage, general factual allegations of injury resulting from the

defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (emphasis added) (quoting *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 889 (1990)).

> The actual or threatened injury required by Art. III may exist solely by virtue of "statutes creating legal rights, the invasion of which creates standing . . . ." Moreover, the source of the plaintiff's claim to relief assumes critical importance with respect to the prudential rules of standing that, apart from Art. III's minimum requirements, serve to limit the role of the courts in resolving public disputes. Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.

*Warth v. Seldin*, 422 U.S. 490, 500 (1975) (internal citations omitted).

> A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based. When the Rule 12(b)(1) motion is facial, *i.e.,* based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the "Pleading"), the plaintiff has no evidentiary burden. The task of the district court is to determine whether the Pleading "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue."

*Carter*, 822 F.3d at 56 (internal citations omitted).

"When . . . a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) is addressed to the complaint, a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003); *see also Krausz v. loanDepot.com, LLC*, No. 22-CV-152(VB), 2022 WL 16960928, at *2 (S.D.N.Y. Nov. 16, 2022) ("In deciding a motion to dismiss under Rule 12(b)(1) at the pleading stage, the court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" (quoting *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009))).

Likewise, in deciding a Rule 12(b)(6) motion, the court must also "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving

party." *138-77 Queens Blvd LLC v. Silver*, 682 F. Supp. 3d 271, 279 (E.D.N.Y. 2023) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)). Thus, "<u>a motion under Rule 12(b)(6) cannot present any question of fact</u>; rather, such a motion presents only the question of whether or not the complaint has set forth a legally cognizable claim." *Roundtree v. City of N.Y.*, 778 F. Supp. 614, 617 (E.D.N.Y. 1991) (emphasis added).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *See Walsh v. McGee*, 918 F. Supp. 107, 112 (S.D.N.Y. 1996) (quoting 5A Wright & Miller, § 1356, at 294).

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
>
> * * *
>
> The court, in deciding a Rule 12(b)(6) motion to dismiss a complaint, is required to accept all "well-pleaded factual allegations" in the complaint as true. Although allegations that are "conclusory" are "not entitled to be assumed true," "*[w]hen there are well-pleaded factual allegations, a court should assume their veracity* and then determine whether they plausibly give rise to an entitlement to relief." The court must also "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff."

*Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020) (internal citations omitted) (emphasis in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009)); *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009)).

"Thus, the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch*, 952 F.3d at 75. "[C]ourts 'may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible,' since '[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a

Rule 12(b)(6) motion." *Watson Labs., Inc.*, 101 F.4th 223, 235 (2d Cir. 2024) (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012)).

Accordingly, "[d]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 188 (E.D.N.Y. 2024) (emphasis added) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)); *see also 138-77 Queens Blvd LLC*, 682 F. Supp. 3d at 279 ("A court shall not dismiss a case on such a motion unless it is 'satisfied that the complaint cannot state any set of facts that would entitle the plaintiff to relief.'" (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007))). Further, "[t]o inform its ruling in this regard, a court may review documents integral to the complaint upon which the plaintiff relied in drafting the pleadings, as well as 'any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Streit v. Bushnell*, 424 F. Supp. 2d 633, 638-639 (S.D.N.Y. 2006); *see also Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference, . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.").

## II. DEFENDANTS FAIL TO PRESENT A VALID BASIS FOR DISMISSAL OF THE AMENDED COMPLAINT UNDER RULE 12.

Defendants' only arguments in support of dismissal are based solely on disputed facts, and outright omissions and misrepresentations of law and fact, which can never justify the harsh remedy of granting a pre-answer motion to dismiss, and depriving Plaintiff of her day in court to redress the wrongs she suffered at the hands of the Defendants. *See Watson Labs., Inc.*, 101 F.4th at 235 (noting that choosing between two plausible inferences or versions of the facts is not an appropriate function of the court on a motion to dismiss). Indeed, Defendants would prefer if the

Court ignored all well-established standards governing disposal of Rule 12 motions, skipped all procedural formalities, and simply adopted Defendants' contradictory and speculative version of the facts, and their warped interpretation of the law. Fully acknowledging that they did not provide Plaintiff with any of the Mortgage account information she requested and to which she is expressly entitled, Defendants ask the Court to dismiss Plaintiff's Amended Complaint at the pleading stage, which would effectively "rubber stamp" Defendants' misconduct and further prevent Plaintiff from obtaining the necessary evidence to prove her legitimate claims herein. *See TileBar*, 723 F. Supp. 3d at 188 ("Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." (quoting *Sweet*, 235 F.3d at 83)).

Specifically, Defendants make the following misrepresentations of law and fact:

(i) "Murray fails to plead that Defendants violated the QWR rules." *See* ECF Doc. No. 17 (MOL in Support at 5).

(ii) "Murray fails to plead actual damages as required by RESPA." *See id.*

(iii) "12 C.F.R. § 1024.36(f)(1)(iv) explicitly provides that a servicer is not required to respond where the 'information request[ed] is overbroad or unduly burdensome.'" *See* ECF Doc. No. 17 (MOL in Support at 6).

(iv) "Her QWRs are, by definition, 'overbroad' and 'unduly burdensome' pursuant to § 1024.36(f)(1)(iv), and no response was required from the Defendants." *See* ECF Doc. No. 17 (MOL in Support at 7).

As further detailed herein, Plaintiff's Amended Complaint clearly and specifically alleges how Defendants' actions – or lack thereof, by wholly failing to respond to Plaintiff's QWRs and failing to serve required servicing transfer notices – violated the QWR requirements of RESPA and Regulation X, and the particular types of actual damages she suffered as a result of Defendants' unlawful conduct. *See* Amshen Dec., Ex. E (Amended Complaint at ¶¶ 45-82). Additionally, Defendants should be admonished for their disingenuous attempt to misrepresent the language and requirements of Regulation X. By deliberately omitting language from 12 C.F.R. §

1024.36(f)(1)(iv), Defendants attempt to make it appear as if they had absolutely no obligation whatsoever to respond to Plaintiff's QWRs, if they determined Plaintiff's requests to be "overbroad" or "unduly burdensome." *See* ECF Doc. No. 17 (MOL in Support at 6-7). That is not, however, what the regulation provides. Specifically, Defendants deliberately omitted the critical last sentence of § 1024.36(f)(1)(iv), which states: "To the extent a servicer can reasonably identify a valid information request in a submission that is otherwise overbroad or unduly burdensome, the servicer <u>shall</u> comply with the requirements of paragraphs (c) and (d) of this section with respect to that requested information." (emphasis added). Unfortunately for Defendants, simply ignoring a portion of a statute or regulation because it does not serve your agenda, does not make it disappear.

Further, relying only upon a declaration of Defendants' counsel, Defendants improperly present invented/disputed/contradictory facts and unsupported conjecture, not alleged in the Amended Complaint, and of which counsel has no personal knowledge. These contested "facts," which are not otherwise accompanied by admissible supporting evidence, include:

(i) Allegations regarding a 2009 default and the amount of Plaintiff's "principal balance" when a prior foreclosure action was filed. *See* ECF Doc. No. 16-1 (Xia Declaration ¶ 3).

(ii) Speculation regarding "discussions of the Modification and terms" during "court mandated foreclosure settlement conferences." *See* ECF Doc. No. 17 (MOL in Support at n.2).

(iii) "The Modification was the result of those court mediated settlement conferences, Murray and her counsel could have discerned from the face of the Modification whether it contained questionable figures, as she alleges here at paragraphs 15-18 of the amended complaint." *See* ECF Doc. No. 17 (MOL in Support at 8-9).

(iv) "Murray accepted the Modification – on the advice of counsel," and was "advised by same counsel to sign the Modification . . . ." *See* ECF Doc. Nos. 16-1 (Xia Declaration ¶ 4), 17 (MOL in Support at 2).

(v) "This amount of arrears is reasonable for a loan that had been in default for 2 years . . . ." *See* ECF Doc. No. 17 (MOL in Support at n.3).

(vi) "She would have missed payments of taxes and insurance during this time as well." *See id.*

(vii) "Murray alleges that the balance due prior to the Modification . . . was $70,277.15 higher than the original loan balance of $440,325, and thus, the $70,277.15 represents 'undisclosed and unidentified fees, interest, advances' that were added to the Plaintiff's loan balance. This is not true; as explained in footnote 3, Murray was two years behind on her mortgage obligations. Hence why her property was in foreclosure. Thus, Murray's allegation that $70,277.15 as constituting only fees, interests [sic] and advances is fundamentally wrong, when it mainly represents two years of unpaid monthly mortgage payment arrears. Further, the $70,277.15 is necessarily subsumed in the greater number of $131,717.67, which was deferred and interest-free." *See* ECF Doc. No. 17 (MOL in Support at n.4).

Counsel's repeated improper attempts to unilaterally reframe and contradict the facts as alleged in the Amended Complaint, with no personal knowledge thereof and no other admissible support therefor, on its own, demonstrates there is no basis for dismissal under Rule 12(b)(6):

> A motion brought under Rule 12(b)(6) challenges only the "legal feasibility" of a complaint. The test of a claim's "substantive merits" is "reserved for the summary judgment procedure, governed by [Federal Rule of Civil Procedure] 56, where both parties may conduct appropriate discovery and submit the additional supporting material contemplated by that rule." Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken."

*Goel v. Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016) (internal citations omitted) (quoting *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006); *Concord Assocs., L.P. v. Entertainment Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

Additionally, the majority of counsel's speculative and unsupported statements stem from a prior foreclosure action, which was not mentioned in, or in any way relevant to the Amended Complaint. Notably, that action was dismissed and never adjudicated on the merits, and this Court may not consider it substantively in connection with the Motion to Dismiss because the documents filed in that action cannot be considered "integral to the complaint."

> [I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless "integral" to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint "where the complaint relies heavily upon its terms and effect." Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering "limited quotation[s]" from the document is not enough. "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint."

*Goel*, 820 F.3d at 559 (internal citations omitted) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Global Network Commc'ns, Inc.*, 458 F.3d at 156-157). Here, the existence of the prior foreclosure action, and the related documents appended to counsel's declaration, have no bearing on Plaintiff's claims, which relate solely to Defendants' servicing errors occurring <u>after</u> the prior foreclosure was dismissed, including failure to serve required service transfer notices and failure to acknowledge or respond to Plaintiff's QWRs.

Thus, with respect to counsel's repeated improper reference to, and reliance upon, unadjudicated allegations in a prior foreclosure action, while the Court may take judicial notice of the existence, pendency, and dismissal of the action reflected in court records, it may not also take judicial notice of the unsubstantiated and unadjudicated allegations in the action:

> A complaint that alleges facts related to or gathered during a separate litigation does not open the door to consideration, on a motion to dismiss, of any and all documents filed in connection with that litigation. A contrary rule would permit the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding—one featuring a bespoke factual record, tailor-made to suit the needs of defendants.

*Goel*, 820 F.3d at 560 (internal citations omitted). Accordingly, the entire foundation upon which the Motion to Dismiss rests is a house of cards.

**A. Plaintiff's Amended Complaint Alleges Sufficient Facts Demonstrating Specific And Concrete Injury, Resulting From Defendants' Actions, To Establish Article III Standing.**

"To establish [Article III] standing, a plaintiff must allege (i) that she suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Onfroy v. L. Offs. of Geoffrey T. Mott, P.C.*, No. 22-CV-02314 (EK)(LB), 2024 WL 4350489, at *3 (E.D.N.Y. Sept. 30, 2024). "Article III require[s] that the plaintiff's injury in fact be 'concrete'—that is, 'real, and not abstract.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.

The Supreme Court has explained that "certain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Id.* at 425 (emphasis added) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). However, "[t]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'" *Warth*, 422 U.S. at 500 (internal citations omitted) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)). "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500.

Section 2605(f) provides a private right of action for "violations of the regulations under RESPA including 12 C.F.R. §§ 1024.35, 1024.36 and 1024.41, even if the underlying regulation does not specifically reference 12 U.S.C. § 2605(f)." *In re Coppola*, 596 B.R. 140, 153 (Bankr. D.N.J. 2018) (citing *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 271 (S.D.N.Y. 2017)).

Accordingly, Plaintiff can maintain a private right of action for Defendants' violations of RESPA and Regulation X, as alleged in Counts I and II of the Amended Complaint.

Plaintiff has also alleged sufficient factual allegations of injury resulting from Defendants' conduct in violation of RESPA and Regulation X, to establish Article III standing. *See Lujan*, 504 U.S. at 561. Specifically, Plaintiff alleges that (i) the Capitalized Sums added to her loan balance in connection with the Modification included "unidentified fees, interest, advances, and other charges and amounts" which were "excessive, illegal, and/or improper"; (ii) "following the Modification and continuing to date, Defendants and their predecessors-in-interest continued adding excessive, improper, and/or illegal Capitalized Sums to Plaintiff's loan balance, which amounts continue to accrue interest on an ongoing basis"; and (iii) Defendants' failure to respond to Plaintiff's QWRs and "refusal to independently investigate Plaintiff's account to identify and correct errors in response to the QWRs, means that improper fees – and the interest accruing on the increased loan balance as a result of these fees – continue to accumulate on Plaintiff's account and cause additional harm on an ongoing basis." *See* Amshen Dec., Ex. E (Amended Complaint ¶¶ 16-20, 79). Plaintiff also alleges that she has incurred attorneys' fees and other professional retainer costs as a result of Defendants' RESPA and Regulation X violations, in order to (i) investigate the potential servicer(s) of her Mortgage loan and obtain necessary account information regarding the Capitalized Sums added to her loan; and (ii) compel responses to her QWRs and obtain the account information to which she is expressly entitled, and which Defendants have refused to provide. *See id.* (Amended Complaint ¶¶ 29-33, 80, 87-88).

**B. Plaintiff's Amended Complaint Alleges Plausible Claims For Relief Against Defendants, Precluding Rule 12(b)(6) Dismissal.**

Plaintiff's Amended Complaint alleges sufficient facts to state plausible claims for relief for each cause of action as to the Defendants. Accordingly, the Motion to Dismiss pursuant to Rule 12(b)(6) should be denied.

***i. Counts I and II – Violations of RESPA and Regulation X.***

Counts I and II allege that Defendants violated provisions of RESPA and Regulation X, causing Plaintiff damage. Specifically, Count I alleges damages under 12 U.S.C. § 2605(f), arising from Defendants' failure to investigate or respond to Plaintiff's QWRs, in violation of 12 U.S.C. § 2605(e) and 12 C.F.R. §§ 1024.35 and 1024.36. *See* Amshen Dec., Ex. E (Amended Complaint ¶¶ 45-82). Count II alleges damages under 12 U.S.C. § 2605(f), arising from Defendants' failure to provide Plaintiff with required servicing transfer notices, in violation of 12 U.S.C. §§ 2605(b) and (c), and 12 C.F.R. § 1024.33. *See id.*, Ex. E (Amended Complaint ¶¶ 45-50, 83-90).

> RESPA is a consumer protection statute that regulates the real estate settlement process, including loan servicing and assignments. Congress enacted RESPA "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." Section 2605 of RESPA requires loan servicers to disclose pertinent information to borrowers, attempt to correct errors in servicing, and respond to relevant questions from borrowers.

*Jackson v. Caliber Home Loans*, No. 18-CV-4282 (NG)(CLP), 2019 WL 3426240, at *1 (E.D.N.Y. July 30, 2019) (internal citations omitted).

<u>General Servicing Requirements and Prohibitions:</u>

Section 2605 of Title 12 details RESPA's requirements for the "[s]ervicing of mortgage loans." *See* 12 U.S.C. § 2605. Regulation X (12 C.F.R. § 1024.1, *et seq.*), issued by the CFPB, is RESPA's implementing regulation. RESPA expressly authorizes the CFPB "to prescribe such

rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter." *See* 12 U.S.C. § 2617(a). RESPA prohibits loan servicers from failing to comply with CFPB regulations intended to carry out RESPA's consumer protection purposes, including Regulation X. *See* 12 U.S.C. § 2605(k)(1)(E).

Specifically, RESPA prohibits servicers from "fail[ing] to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties," or "fail[ing] to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." *See* 12 U.S.C. §§ 2605(k)(1)(C), 2605(k)(1)(E). Regulation X, among other things, details "[e]rror resolution procedures" servicers must follow upon receipt of a written notice from the borrower asserting an error. *See* 12 C.F.R. § 1024.35. Section 1024.35(b) lists eleven categories of "covered errors" under Regulation X including, among others, failure to properly accept and apply payments, failure to accurately credit payments on the date received, imposing improper fees or charges, and providing inaccurate information regarding loss mitigation options and foreclosure. *See* 12 C.F.R. § 1024.35(b). Section 1024.35 also contains a "catch-all provision" covering "[a]ny other error relating to the servicing of a borrower's mortgage loan." *See* 12 C.F.R. § 1024.35(b)(11). Regulation X also outlines "[g]eneral servicing policies, procedures, and requirements" for servicers, which include maintaining policies and procedures "reasonably designed to ensure that the servicer can . . . [i]nvestigate, respond to, and, as appropriate, make corrections in response to complaints asserted by a borrower." *See* 12 C.F.R. § 1024.38(b).

QWR Requirements:

Pursuant to 12 U.S.C. § 2605(e), loan servicers have a duty to respond to inquiries received from a borrower or his agent, meeting the criteria of a QWR. A QWR is defined as "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). For purposes of Regulation X, "[a] qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request." 12 C.F.R. § 1024.36(a).

> Qualified written requests can be classified as requests for information or notices of error. A qualified written request that requests information relating to the servicing of a mortgage loan is a request for information, 12 C.F.R. § 1024.36(a), and a qualified written request that "asserts an error relating to the servicing of a mortgage loan is a notice of error . . . ." 12 C.F.R. § 1024.35(a).

*Jackson*, 2019 WL 3426240, at *2.

RESPA requires a servicer who receives a QWR to "provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested it taken within such period." 12 U.S.C. § 2605(e)(1)(A). In addition to providing written acknowledgment of receipt, within thirty (30) days of receipt of a QWR from a borrower or his agent, a servicer must also (i) conduct an investigation, (ii) make any necessary corrections to the borrower's account and provide written notice of any such corrections, and (iii) provide a written explanation that includes the "information requested

by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." *See* 12 U.S.C. § 2605(e)(2).

Regulation X also details specific actions a loan servicer must take upon receipt of a request for information, including acknowledging receipt, conducting an investigation, correcting any errors identified by the borrower or otherwise discovered during the investigation, and providing the borrower with a written response and explanation. *See* 12 C.F.R. §§ 1024.35, 1024.36. Failure to acknowledge or respond to a QWR, including a borrower's request for account and payment information, is a covered "error relating to the servicing of a borrower's mortgage loan." *See* 12 C.F.R. § 1024.35(b)(11). With respect to requests for information, 12 C.F.R. § 1024.36(a) provides:

> A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan. . . . A qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request.

These requirements include a written response acknowledging receipt "[w]ithin five days . . . of a servicer receiving an information request from a borrower," and an investigation and further response by:

> [c]onducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

*See* 12 C.F.R. §§ 1024.36(c), 1024.36(d)(1).

Servicing Transfer Notice Requirements:

Additionally, RESPA and Regulation X each require a servicer to "notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1); *see also* 12 C.F.R. § 1024.33(b)(1). RESPA and Regulation X also detail specific requirements concerning the timing and content of servicing transfer notices. *See* 12 U.S.C. §§ 2605(b), (c); 12 C.F.R. § 1024.33.

Plaintiff's RESPA Violation Claims:

With respect to claims alleging RESPA violations in connection with a QWR:

> Borrowers have a private right of action arising from a servicer's failure to comply with the[] provisions of § 2605. "To plead a claim under the RESPA, plaintiff must offer proof either by attaching the letter or pleading with specificity such facts—such as when the letter was sent and to whom it was directed, why it was sent, and the contents of the letter—that the Court may determine if the letter qualifies as a [request for information] or notice of error."

*Jackson*, 2019 WL 3426240, at *2 (internal citations omitted) (quoting *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015)).

> To assert a claim under RESPA, a plaintiff "must sufficiently allege one of two types of damages: (1) 'actual damages to the borrower as a result of the failure' to comply with § 2605; or (2) statutory damages 'in the case of a pattern or practice of noncompliance with the requirements' of § 2605."

*Jackson*, 2019 WL 3426240, at *7 (internal citations omitted) (quoting *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-3291 (NGG)(SMG), 2012 WL 1372260, at *3 (E.D.N.Y. Apr. 18, 2012)). To state a plausible claim for statutory damages under RESPA, a plaintiff must allege more than two violations of RESPA by the defendants. *See Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 449 (E.D.N.Y. 2013) ("[P]laintiff has alleged more than two violations of RESPA by AHMSI and, as such, he has stated a plausible claim for statutory damages under RESPA.").

Here, Defendants do not dispute receipt of Plaintiff's multiple QWRs, nor do they dispute that they meet the definition of a QWR. *See* ECF Doc. No. 17 (MOL in Support at 5-7). Instead,

Defendants argue that the QWRs "are not notices of error," while acknowledging that they are "instead requests for information subject to 12 C.F.R. § 1024.36." *See id.* (MOL in Support at 5). This is exactly what Plaintiff alleges in the Amended Complaint; accordingly, Defendants acknowledge that Plaintiff has pled the initial elements of its RESPA claim in Count I. *See Jackson*, 2019 WL 3426240, at *2.

Defendants further argue – disingenuously and incorrectly – that Plaintiff's QWRs are "overbroad and unduly burdensome," and therefore did not require any response at all. *See id.* Citing 12 C.F.R. § 1024.36(f)(1)(iv) as authority that "explicitly provides that a servicer is not required to respond where the 'information request[ed] is overbroad or unduly burdensome,'"[2] Defendants deliberately omit a critical portion of the regulation, which states: "To the extent a servicer can reasonably identify a valid information request in a submission that is otherwise overbroad or unduly burdensome, the servicer shall comply with the requirements of paragraphs (c) and (d) of this section with respect to that requested information." *See* 12 C.F.R. § 1024.36(f)(1)(iv) (emphasis added).

While this argument is improper on a Rule 12 motion to dismiss, as it necessarily involves a factual dispute and substantive inquiry generally reserved for summary judgment motions under Rule 56, it is also clearly precluded by a simple review of the applicable regulation in its entirety. Indeed, Defendants' Motion to Dismiss includes a bulleted, summarized list of the items and information requested in Plaintiff's QWRs, demonstrating that Defendants absolutely could identify a "valid information request" in the QWRs, even if they could otherwise be considered "overbroad or unduly burdensome." *See* ECF Doc. No. 17 (MOL in Support at 3-4); *see also* 12 C.F.R. § 1024.36(f)(1)(iv). Notably, Defendants object to providing even the most basic loan and

---

[2] *See* ECF Doc. No. 17 (MOL in Support at 6).

account information specifically pertaining to Plaintiff's claims herein, like an account transaction history, identification of servicers, escrow information, and copies of the loan documents. *See id.* Additionally, even if Defendants did find Plaintiff's QWRs objectionable, they still failed to acknowledge or respond to them in any way as required under RESPA and Regulation X, even if only to provide Plaintiff with the basis for their objections to the requested information. Accordingly, Defendants' contentions in the Motion to Dismiss further support Plaintiff's claims, rather than Defendants' request for dismissal.

<u>Plaintiff's Actual and Statutory Damages Under RESPA:</u>

The remainder of Defendants' arguments regarding Counts I and II relate to Plaintiff's alleged failure to plead necessary damages. To the extent Defendants infer that Plaintiff has not presented evidence or specific enough allegations of the damages incurred as a result of fees and accrued interest added to her loan account, Defendants cannot disclaim liability in this manner when they are the parties who are deliberately withholding the necessary information to demonstrate and prove those damages.

As detailed in Section II.A. above, Plaintiff has alleged sufficient factual allegations of actual damages proximately caused by Defendants' conduct in violation of RESPA and Regulation X, including (i) "excessive, illegal, and/or improper" "fees, interest, advances, and other charges and amounts" added to her loan balance in connection with the Modification and thereafter by Defendants and their predecessors-in-interest, which fees and the interest accruing thereon "continue to accumulate on Plaintiff's account and cause additional harm on an ongoing basis" as a result of Defendants' failure to respond to Plaintiff's QWRs and "refusal to independently investigate Plaintiff's account to identify and correct errors in response to the QWRs"; and (ii) attorneys' fees and other professional retainer costs incurred in order to (a) investigate the potential

servicer(s) of her Mortgage loan and obtain necessary account information regarding the Capitalized Sums added to her loan; and (b) compel responses to her QWRs and obtain the account information to which she is expressly entitled, and which Defendants have refused to provide. *See* Amshen Dec., Ex. E (Amended Complaint ¶¶ 16-20, 29-33, 79-80, 87-88).

Plaintiff has also alleged more than two violations of RESPA by each defendant, sufficient to demonstrate a "pattern or practice of noncompliance" and state a plausible claim for statutory damages under RESPA. *See Kapsis*, 923 F. Supp. 2d at 449. Specifically, Plaintiff's Amended Complaint alleges the following RESPA violations as to Newrez:

- Failure to acknowledge receipt of the Newrez QWR, in violation of 12 U.S.C. §§ 2605(e)(1)(A), 2605(k)(1)(E), and 12 C.F.R. §§ 1024.35, 1024.36.
- Failure to conduct an investigation or provide Plaintiff with a written response to the Newrez QWR, in violation of 12 U.S.C. § 2605(e)(2), 2605(k)(1)(E), and 12 C.F.R. §§ 1024.35, 1024.36.
- Failure to acknowledge receipt of the Second Newrez QWR, in violation of 12 U.S.C. §§ 2605(e)(1)(A), 2605(k)(1)(E), and 12 C.F.R. §§ 1024.35, 1024.36.
- Failure to conduct an investigation or provide Plaintiff with a written response to the Second Newrez QWR, in violation of 12 U.S.C. § 2605(e)(2), 2605(k)(1)(E), and 12 C.F.R. §§ 1024.35, 1024.36.
- Failure to provide Plaintiff with required notice of servicing transfers in violation of 12 U.S.C. §§ 2605(b), 2605(c), and 12 C.F.R. § 1024.33.

Plaintiff's Amended Complaint alleges the following RESPA violations as to PHH:

- Failure to acknowledge receipt of the PHH QWR, in violation of 12 U.S.C. §§ 2605(e)(1)(A), 2605(k)(1)(E), and 12 C.F.R. §§ 1024.35, 1024.36.
- Failure to conduct an investigation or provide Plaintiff with a written response to the PHH QWR, in violation of 12 U.S.C. § 2605(e)(2), 2605(k)(1)(E), and 12 C.F.R. §§ 1024.35, 1024.36.
- Failure to acknowledge receipt of the Second PHH QWR, in violation of 12 U.S.C. §§ 2605(e)(1)(A), 2605(k)(1)(E), and 12 C.F.R. §§ 1024.35, 1024.36.

- Failure to conduct an investigation or provide Plaintiff with a written response to the Second PHH QWR, in violation of 12 U.S.C. § 2605(e)(2), 2605(k)(1)(E), and 12 C.F.R. §§ 1024.35, 1024.36.
- Failure to provide Plaintiff with required notice of servicing transfers in violation of 12 U.S.C. §§ 2605(b), 2605(c), and 12 C.F.R. § 1024.33.

Thus, Plaintiff has alleged sufficient facts demonstrating an entitlement to actual and statutory damages for Defendants' multiple RESPA violations, and the Motion to Dismiss must be denied.

***ii. Count III – Deceptive Acts in Violation of GBL § 349.***

Defendants' attempt to challenge Plaintiff's GBL § 349 claim raises yet another improper factual dispute and substantive inquiry that cannot be a basis for dismissal under Rule 12. *See Goel*, 820 F.3d at 558-559. Nonetheless, Plaintiff has alleged sufficient facts supporting a plausible cause of action under GBL § 349.

New York law provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." GBL § 349. "To maintain a cause of action under § 349, a plaintiff must show: (1) that the defendant's conduct is 'consumer-oriented'; (2) that the defendant is engaged in a 'deceptive act or practice'; and (3) that the plaintiff was injured by this practice." *See Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010). "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers.'" *Id.*

Here, Plaintiff alleges that

> Defendants have engaged in deceptive acts and practices in the servicing of Plaintiff's loan including (i) charging improper, excessive, and/or duplicative fees, interest, service charges, and other amounts not permitted by the loan documents or applicable law; (ii) failing to provide required notices and disclosures required by the loan documents and applicable law; and (iii) deliberately concealing

> servicing errors and statutory violations by withholding and refusing to disclose Plaintiff's account information in response to the QWRs.

*See* Amshen Dec., Ex. E (Amended Complaint ¶ 97). Plaintiff further alleges that Defendants' deceptive conduct is "consumer-oriented" because "Defendants and their affiliated entities have each been sanctioned by state and federal authorities for deceptive acts and practices, including those imposed upon Plaintiff, in servicing national portfolios of residential home loans like Plaintiff's loan" and, "[g]iven Defendants' status as national loan servicers with servicing portfolios in the hundreds of billions of dollars, and their documented history of state and federal consumer protection violations, these deceptive acts and practices will impact not only Plaintiff, but will also have a broader impact on consumers at large." *See id.* (Amended Complaint ¶¶ 99-100). Finally, Plaintiff alleges that she has suffered damages as a result of Defendants' conduct "including increased debt and financial burden resulting from improperly imposed fees, interest, and other charges added to her loan balance, which Defendants have failed and refused to investigate or rectify." *See id.* (Amended Complaint ¶ 98).

Thus, Plaintiff has alleged facts satisfying each element of a cause of action against Defendants under GBL § 349.

***iii. Count IV – Accounting.***

With respect to Plaintiff's claim for an accounting, in light of Plaintiff's inability to obtain even the most basic account information related to her Mortgage loan, due to Defendants' refusal to respond to her QWRs, an accounting appears to be the only mechanism by which Plaintiff can conclusively determine the extent of any improper fees and other charges capitalized into her loan balance, and any additional interest that continues to accrue thereon.

Additionally, Plaintiff need not allege a fiduciary or confidential relationship with the Defendants. "In some cases, the New York courts have held that a fiduciary or confidential

relationship is not necessary to obtain judicial relief . . . by treating the action for accounting as an action at law for monetary relief, and not as an equitable action for accounting." *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996). "Where a party seeks an accounting, but the primary demand is for monetary damages, '[t]he accounting is merely a method to determine the amount of the monetary damages. The action therefore sounds in law and not in equity.'" *Arrow Comm. Labs., Inc. v. Pico Prods., Inc.*, 219 A.D.2d 859, 860 (App. Div. 4th Dep't 1995).

Given that the majority of Plaintiff's claims at least partially involve the Defendants' deliberate withholding and concealing of information concerning Plaintiff's loan account, an accounting is necessary to allow Plaintiff to determine the full extent of the damages. Further, because the most reliable information necessary to make this determination (i) is uniquely in the possession of each defendant who created the various account records during the time it serviced the subject loan, (ii) may not have fully or accurately transferred to subsequent servicers and/or owners, and (iii) is not otherwise available to or discoverable by Plaintiff, and has not been disclosed to Plaintiff despite requests for same, an accounting is Plaintiff's only effective remedy.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss in its entirety.

Dated: Brooklyn, New York
January 13, 2025

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Sherry Ann Murray

*/s/ Steven Amshen*
Steven Amshen, Esq. (SA2569)
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: samshen@petroffamshen.com