MYRNA PÉREZ, *Circuit Judge*, dissenting in part:

Sherry Ann Murray asked the servicers of her mortgage for information about her loan. They ignored her. Six weeks later, having received no acknowledgment or response, Murray tried again. For this second try, she paid an attorney $225 to prepare the requests and spent $3.20 to mail them. The majority opinion concludes that neither expense is recoverable under the Real Estate Settlement Procedures Act ("RESPA"), which permits borrowers to recover losses caused by a servicer's failure to respond. The $225, it reasons, is an attorney's fee recoverable only in a successful action, and Murray has not prevailed. And the $3.20 is too small to count.

I disagree with both conclusions. Paying an attorney to obtain a servicing response is not paying an attorney to litigate. And RESPA's authorization of "any actual damages" contains no minimum dollar amount. *See* 12 U.S.C. § 2605(f)(1)(A). Murray plausibly alleges that the servicers' violations caused her to incur both expenses in seeking the response they were required to provide. Because I would permit that claim to proceed, I respectfully dissent.

* * *

RESPA pairs a duty to respond with a remedy for failing to do so. When a servicer receives a qualified written request for information relating to the

servicing of a federally related mortgage loan, the statute generally requires a written acknowledgment within five business days and a response within the prescribed period. *See* 12 U.S.C. § 2605(e)(1)(A), (2); 12 C.F.R. § 1024.36(c)–(f). A servicer cannot simply ignore the request. Congress made a servicer that fails to provide the required acknowledgment or response liable for "any actual damages to the borrower as a result of the failure." 12 U.S.C. § 2605(f)(1)(A).

Two features of that language guide the inquiry. First, the word "any" in "any actual damages" indicates breadth. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997). Congress did not limit recovery to particular categories of economic injury or impose a minimum dollar amount. The claimed expense must, of course, constitute an "actual" loss. 12 U.S.C. § 2605(f)(1)(A). But a real, out-of-pocket expense does not become any less actual because it is modest.

Second, "as a result of" requires a causal link between the violation and the expense. *See Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 719 (8th Cir. 2018); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016). The borrower must have incurred the expense because the servicer failed to comply, not merely after that failure. The connection must also be sufficiently direct; a loss too remote from the violation does not qualify. *See Lexmark Int'l, Inc. v. Static*

*Control Components, Inc.*, 572 U.S. 118, 132 (2014) ("[W]e generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute.").

Those causal requirements exclude much of what Murray seeks. I agree with the majority opinion that the interest and fees arising from her loan modification do not constitute damages resulting from the *servicing* violations alleged here. The costs of preparing and sending her first qualified written requests likewise are not recoverable because she incurred those costs before the servicers violated RESPA. The servicers' later failure to respond could not have caused expenses Murray had already incurred.

The second requests, in my view, are different. Murray alleges that the servicers' failure to acknowledge or respond to her first requests caused her to spend additional money preparing and sending the same requests again. *See* App'x at 227–28 (Second Amended Complaint). Had the servicers complied, she alleges, she would not have needed to repeat those requests. *See id.* She has thus plausibly alleged both an actual loss and a direct connection to the violations.

* * *

The majority opinion holds that Murray cannot recover the $225 preparation expense because § 2605(f)(3) specifically addresses attorney's fees. It explains that

this provision creates an exception to the American Rule—under which parties ordinarily bear their own litigation expenses—and permits recovery only in a successful RESPA action. *See* Majority Op. at 5–6. It then reasons that Murray cannot recover the $225 because she "has not prevailed in this action." *Id.* at 6. But that reasoning depends on treating Murray's follow-up requests as work performed in connection with this lawsuit. As alleged, those requests sought the servicing response she had not received.

The text of the attorney's fees provision makes that distinction important. Section 2605(f)(3) permits recovery of the "costs of the action," together with reasonable attorney's fees "incurred in connection with such action." Its scope turns on the work's connection to the action, not simply on whether an attorney performed it. Covered work may include, for example, researching a prospective RESPA lawsuit, drafting a complaint, and pursuing an appeal. A follow-up request for servicing information, by contrast, can seek compliance with the

servicer's existing duties without preparing a lawsuit. The distinction concerns the nature of the work performed, not merely whether it occurred before suit.[1]

*Key Tronic Corp. v. United States*, 511 U.S. 809 (1994), illustrates the point. There, the Supreme Court held that attorney's fees incurred in prosecuting a cost-recovery action under the Comprehensive Environmental Response, Compensation, and Liability Act were not recoverable response costs. *See id.* at 818–19. But the Court distinguished fees incurred in identifying other responsible polluters, which were recoverable. That work could have been performed by nonlawyers and was distinct from litigation expenses governed by the American Rule. *See id.* at 819–20. The Court looked to the nature of the work performed, not simply to the fact that an attorney performed the work.

The same distinction applies here, where Murray alleges that she paid an attorney to repeat unanswered servicing requests in an effort to obtain a response. That cost, as alleged, is distinct from costs incurred for legal work in preparing this lawsuit. And the statutory scheme permits compensation for both types of losses.

---

[1] Suppose Borrower A pays a housing counselor to prepare a follow-up request after her servicer ignores the first one. Borrower B pays an attorney the same amount to prepare the same request for the same purpose. Assuming the expenses resulted from the violations and otherwise qualify as actual damages, the majority opinion's reasoning would distinguish the two expenses solely because the second borrower paid an attorney. I see no basis in RESPA for that distinction. It is the nature of the work performed, rather than the attorney's involvement, that determines whether the borrower suffered a compensable loss.

Section 2605(f)(1)(A) compensates losses caused by a servicer's noncompliance; § 2605(f)(3) shifts the reasonable expenses of successfully litigating that noncompliance. Congress expressly made the latter recovery available "[i]n addition to" the former. 12 U.S.C. § 2605(f)(3). The provisions can operate together without permitting litigation expenses to be repackaged as damages or recovered twice.

The specific-over-general canon, on which the majority opinion relies, does not require a different result. *See* Majority Op. at 5; *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). That canon gives a specific provision priority when two provisions cover the matter at issue; it does not expand what the specific provision covers. *See Nat'l Cable & Telecomms. Ass'n v. Gulf Power Co.*, 534 U.S. 327, 336 (2002) ("The specific controls but only within its self-described scope."). Section 2605(f)(3) addresses fees incurred in connection with litigation. Expenses for work independent of litigation fall squarely outside that provision's reach.

Of course, describing an expense as an effort to obtain compliance does not automatically make it recoverable. The expense must actually result from the violation and remain distinct from litigation costs. Had this case been allowed to

proceed, the servicers could have contested whether Murray incurred the claimed expense and whether the work was in fact directed toward obtaining a servicing response rather than preparing litigation. Those questions do not justify categorically excluding the expense merely because Murray paid an attorney.

* * *

Even accepting the majority opinion's treatment of the $225 preparation expense, the $3.20 postage expense should independently defeat dismissal.[2]

The majority opinion invokes the de minimis doctrine, under which the law disregards trifles. Majority Op. at 6. But Congress authorized "any actual damages," not only losses above a judicially selected minimum. *See* 12 U.S.C. § 2605(f)(1)(A). The neighboring provision caps additional damages for a pattern or practice of noncompliance at $2,000. *Id.* § 2605(f)(1)(B). That modest cap shows both that Congress knew how to specify a monetary limit and that it contemplated private actions involving comparatively small sums. It supplied no minimum for actual damages.

Nor does *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220 (2014), support disregarding this expense. There, the Supreme Court doubted that the de minimis

[2] A lawsuit over $3.20 alone is unlikely given the expense of litigation. That narrow issue arises here because the majority opinion excludes the preparation expense; in my view, RESPA permits recovery of the full $228.20.

doctrine fit a statutory provision that was "all about trifles." *Id.* at 233–34 (emphasis omitted). The statute's text and subject matter constrained the doctrine's application. Here, too, the governing text encompasses small losses: RESPA authorizes recovery of "any actual damages" caused by noncompliance. 12 U.S.C. § 2605(f)(1)(A). A $3.20 postage expense remains an actual loss if it otherwise satisfies the statutory requirements.

* * *

Murray plausibly alleged that the servicers' failure to acknowledge or respond to her first qualified written requests caused her to incur $228.20 preparing and sending a second set. If proven, those losses are what Congress authorized borrowers to recover. Neither the attorney's involvement nor the modesty of the postage expense provides a basis for dismissing Murray's claim.

Because I would vacate the District Court's judgment and remand for further proceedings, I respectfully dissent.